FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
NABILAH A. HOSSAIN (SBN 329689)
nhossain@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
ANDREW W. BRITTON (SBN 340052)
abritton@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

JACK W. WEAVER (SBN 278469)
jack@weltyweaver.com
RACHAEL M. MACHE (SBN 318461)
rachael@weltyweaver.com
**WELTY, WEAVER & CURRIE, P.C.**
3554 Round Barn Boulevard, Suite 300
Santa Rosa, CA 95403
Telephone: (707) 433-4842
Fax: (707) 473-9778

STEPHEN B. MURRAY, JR. (*pro hac vice*)
smurrayjr@murray-lawfirm.com
ARTHUR M. MURRAY*
amurray@murray-lawfirm.com
JESSICA W. HAYES*
jhayes@murray-lawfirm.com
THOMAS M. BEH (*pro hac vice*)
tbeh@murray-lawfirm.com
**MURRAY LAW FIRM**
Hancock Whitney Center
701 Poydras Street, Suite 4250
New Orleans, LA 70139
Telephone: (504) 525-8100
Fax: (504) 584-5249

WILLIAM H. HEDDEN (SBN 88608)
adjustbill@aol.com
1838 15th Street
San Francisco, CA 94103
Telephone: (415) 850-0042

* *Pro Hac Vice application forthcoming*

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MELISSA PITKIN and DAN GROUT, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation, and STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Corporation, <br><br> Defendants. | Case No. 3:23-cv-00924-WHO <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PORTIONS OF THE COMPLAINT** <br><br> Judge:    Hon. William H. Orrick <br> Date:     May 31, 2023 <br> Time:     2:00 p.m. <br> Courtroom: 2, 17th Floor |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III.   FACTUAL ALLEGATIONS AND BACKGROUND.......................................... 2

    A.     California Insurance Code § 2051(b) ..................................................... 2

    B.     Section 2051(b) Case Law ...................................................................... 3

    C.     Plaintiffs Melissa Pitkin and Dan Grout .............................................. 4

    D.     Defendants' Common Practice of Systematically Violating § 2051(b)...................... 5

IV.    LEGAL STANDARDS ....................................................................................... 5

    A.     Rule 12(b)(1) .......................................................................................... 5

    B.     Rule 12(b)(6) .......................................................................................... 6

V.     ARGUMENT ...................................................................................................... 6

    A.     Plaintiffs Adequately Plead Their Claim for Declaratory Relief. ................ 6

    B.     Plaintiffs Are Entitled to Seek Injunctive Relief and Restitution. ............. 10

        1.     Plaintiffs Lack an Adequate Legal Remedy...................................... 11

        2.     Plaintiffs Are Entitled to Seek the Requested Injunctive Relief. ..................... 13

        3.     Plaintiffs' Request for Restitution of Insurance Payments Unlawfully Withheld, and Policy Premiums Wrongfully Obtained, Is Legally Cognizable. ........................................ 14

    C.     Plaintiffs State Cognizable Claims Against State Farm Fire. ....................... 17

VI.    CONCLUSION .................................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alta Devices, Inc. v. LG Elecs., Inc.*,
5
    343 F.Supp.3d 868 (N.D. Cal. 2018) ................................................................... 9

6

*Am. Gen. Life Ins. Co. v. Khachatourians*,
    2012 WL 5267683 (C.D. Cal. Oct. 24, 2012) ..................................................... 17
7

*Anaya v. Marin County Sheriff*,
8
    2014 WL 4631227 (N.D. Cal. Sep. 16, 2014) ..................................................... 18

9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 6
10

11

*Baugh v. Columbia Broadcasting Sys., Inc.*,
    828 F. Supp. 745 (N.D. Cal. 1993) ..................................................................... 16
12

*Bell Atl. Corp. v. Twombly*,
13
    550 U.S. 544 (2007) ........................................................................................ 6, 18

14

*Benn v. Allstate Ins. Co.*,
15
    569 F. Supp.3d 1029 ........................................................................................... 16

16

*Brooks v. Thomson Reuters Corp.*,
    2021 WL 3621837 (N.D Cal. Aug. 16, 2021) ..................................................... 11
17

*Byton N. Am. Co. v. Breitfeld*,
18
    2020 WL 3802700 (C.D. Cal. Apr. 28, 2020) ..................................................... 12

19

*Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*,
20
    2019 WL 4450842 (N.D. Cal. Sept. 17, 2019) ..................................................... 9

21

*California Fair Plan Ass'n v. Garnes*,
    11 Cal.App.5th 1276, *as modified on denial of reh'g* (June 14, 2017),
22
    *rev. denied* (Aug. 9, 2017) .............................................................................. 3, 4

23

*Cisco Sys., Inc. v. STMicroelectronics, Inc.*,
    77 F.Supp.3d 887 (N.D. Cal. 2014) ................................................................... 17
24

*Cook v. State Farm Gen. Ins. Co.*,
25
    2022 WL 16839495 (N.D. Cal. Nov. 9, 2022) ................................................... 13

26

*Cortez v. Purolator Air Filtration Prod. Co.*,
27
    23 Cal.4th 163 (2000) .............................................................................. 14, 15, 16

28

*Culinary Studios, Inc. v. Newsom,*
    517 F.Supp.3d 1042 (E.D. Cal. Feb. 8, 2021) ........................................................... 19

*Doan v. State Farm Gen. Ins. Co.,*
    195 Cal.App.4th 1082 (2011) ................................................................................... 3

*Edelson v. Travel Ins. Int'l, Inc.,*
    2021 WL 4334075 (S.D. Cal. Sept. 23, 2021) .......................................................... 9

*Elec. Indus. Serv. Bureau, Inc. v. Philadelphia Indem. Co.,*
    2018 WL 7286502 (N.D. Cal. July 11, 2018) ........................................................ 15

*Evans v. DSW, Inc.,*
    2017 WL 7058232 (C.D. Cal. Sept. 14, 2017).................................................... 15, 16

*Flores v. EMC Mortgage Co.,*
    997 F.Supp.2d 1088 ................................................................................................ 19

*Freedom Transp., Inc. v. Travelers Cos., Inc.,*
    2017 WL 540945 (C.D. Cal. Feb. 8, 2017) ............................................................ 19

*Gauvin v. Trombatore,*
    682 F. Supp. 1067 (N.D. Cal. 1988) ....................................................................... 19

*Graham v. Cent. Garden & Pet Co.,*
    2023 WL 2744391 (N.D. Cal. Mar. 30, 2023) .................................................. 11, 13

*Guerra v. Sutton,*
    783 F.2d 1371 (9th Cir. 1986) .................................................................................. 6

*Guzman v. Polaris Indus., Inc.*
    49 F.4th 1308 (9th Cir. 2022)................................................................................... 13

*Huynh v. Jabil Inc.,*
    2023 WL 1802417 (N.D. Cal. Feb. 7, 2023)..................................................... 12, 13

*Irwin v. Mascott,*
    112 F.Supp.2d 937 (N.D. Cal. 2000) ........................................................................ 6

*Jeong v. Nexo Fin. LLC,*
    2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ........................................................... 12

*Johnson v. Hartford Cas. Ins. Co.,*
    2017 WL 2224828 (N.D. Cal. May 22, 2017) ................................................ 1, 4, 9

*Johnson v. Trumpet Behavioral Health, LLC,*
    2022 WL 74163 (N.D. Cal. Jan. 7, 2022) ........................................................ 12, 13

*Jung v. Ass'n of Am. Med. Coll.,*
    300 F.Supp.2d 119 (D.D.C. 2004) .......................................................................... 20

*In re JUUL Labs, Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    497 F.Supp.3d 552 (N.D. Cal. 2020) ............................................................... 12

*Kidron v. Movie Acquisition Corp.*,
    40 Cal.App.4th 1571 ............................................................................................ 18

*Kirkwood v. California State Auto. Ass'n Inter-Ins. Bureau*,
    193 Cal.App.4th 49 (2011) .................................................................................... 3

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ................................................................................. 14, 16

*Kundanmal v. Safeco Ins. Co. of Am.*,
    2017 WL 6942758 (C.D. Cal. Dec. 13, 2017) .................................................. 16

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ............................................................................... 6

*M&F Fishing, Inc. v. Sea-Pac Ins. Mgrs.*,
    202 Cal.App.4th 1509 (2012) ........................................................................... 16

*Maison D'Artiste v. Am. Int'l Grp., Inc.*,
    2020 WL 4037219 (C.D. Cal. Jan. 23, 2020) .................................................... 4

*Monaco v. Liberty Life Assur. Co.*
    2007 WL 1140460 (N.D. Cal. Apr. 17, 2007) ................................................. 19

*Nacarino v. Chobani, LLC*,
    2022 WL 344966 (N.D. Cal. Feb. 4, 2022) ..................................................... 11

*PDF Print Comm'cns, Inc. v. Federated Mut. Ins., Co.*,
    2022 WL 2189631 (C.D. Cal. May 9, 2022) .................................................... 13

*Peloza v. Capistrano Unified Sch. Dist.*,
    37 F.3d 517 (9th Cir. 1994) ................................................................................. 6

*Roberts v. Corrothers*,
    812 F.2d 1173 (9th Cir. 1987) ............................................................................. 5

*Savage v. Glendale Union High Sch. Dist. No. 205*,
    343 F.3d 1036 (9th Cir. 2003) ............................................................................. 5

*Sharma v. Volkswagen AG*,
    524 F.Supp.3d 891 (N.D. Cal. Mar. 9, 2021) .................................................. 11

*Sheahan v. State Farm Gen. Ins. Co.*,
    394 F. Supp.3d 997 (N.D. Cal. 2019) .............................................................. 16

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ....................................................................... 11, 12

*Sonora Diamon Corp. v. Superior Court*,
   83 Cal.App.4th 523 (2000) ................................................................................. 19

*Walnut Creek Manor v. Fair Emp. & Hous. Comm'n*,
   54 Cal.3d 245 (1991) ........................................................................................ 15

*Warren v. Whole Foods Mkt. Cal., Inc.*,
   2022 WL 2644103 (N.D. Cal. July 8, 2022) ........................................................ 11

*Wehlage v. EmpRes Healthcare, Inc.*
   791 F.Supp.2d 774 (N.D. Cal. May 25, 2011) ..................................................... 19

*Western Reserve Oil & Gas Co. v. New*,
   765 F.2d 1428 (9th Cir. 1985) ............................................................................. 5

*whiteCryption Corp. v. Arxan Techs., Inc.*,
   2016 WL 3275944 (N.D. Cal. June 15, 2016) ....................................................... 9

*Wildin v. FCA US LLC*,
   2018 WL 3032986 (S.D. Cal. June 19, 2018) ........................................................ 9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F.Supp.3d 1113 (N.D. Cal. 2018) .......................................................... 9, 10

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ............................................................................. 5

**Statutes**

28 U.S.C. § 2201 ....................................................................................................... 6

Cal. Ins. Code § 411 .................................................................................................. 3

Cal. Ins. Code § 2051 ........................................................................................ *passim*

**Regulations**

10 Cal. Code Regs. § 2695.9(f) .................................................................................. 4

**Rules**

Federal Rules of Civil Procedure:

   Rule 8 .......................................................................................................... 18, 19
   Rule 8(a)(3) ......................................................................................................... 12
   Rule 8(d)(3) ........................................................................................................... 9
   Rule 12(b)(1) ......................................................................................................... 5
   Rule 12(b)(6) ......................................................................................................... 6

Rule 57 ................................................................................................................... 9

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) .................................................................. 14

1    Plaintiffs Melissa Pitkin and Dan Grout ("Plaintiffs") submit this Opposition to Defendants

2 State Farm General Insurance Company's ("State Farm General") and State Farm Fire and Casualty

3 Company's (State Farm Fire") (collectively, "State Farm" or "Defendants") Motion to Dismiss

4 Portions of Plaintiffs' Complaint ("Motion") (ECF No. 16).

5 **I.    INTRODUCTION**

6    Six years ago, this Court issued the leading decision interpreting California Insurance Code

7 § 2051(b), the statute at issue in this putative class action. *See Johnson v. Hartford Cas. Ins. Co.*, *et

8 al.*, No. 15-cv-04138-WHO, 2017 WL 2224828, at *7-9, *17 (N.D. Cal. May 22, 2017) (Orrick, J.)

9 ("*Johnson*"). Indeed, the *Johnson* decision features in the Complaint as a key reason Plaintiffs bring

10 a claim for breach of the covenant of good faith and fair dealing. *See* ¶¶ 31, 33.[1] This Court in

11 *Johnson*, in the context of denying the defendant insurers' motion for summary judgment and

12 granting the policyholders' motion for class certification, rejected the insurers' argument that

13 § 2051(b)[2] permitted them to include depreciation of sales tax in their calculations of actual cash

14 value ("ACV") payments to policyholders, and thereby reduce the amounts of those payments.

15 Following the *Johnson* decision, in which this Court made clear its view on the merits, the parties

16 negotiated a modest monetary settlement that allowed the numerous insurers to exit the case

17 without any admission of wrongdoing, and without the issuance of any declaratory or injunctive

18 relief.

19    Now, here we are six years later in 2023, and it seems nothing has changed—at least not

20 with respect to the state's largest property and casualty insurer, State Farm. Despite the *Johnson*

21 decision from this Court, and at least two other judicial decisions interpreting § 2051(b) in favor of

22 policyholders, the defendant State Farm companies are still cheating their policyholders out of ACV

23 benefits by depreciating sales tax. Plaintiffs, with the help of their attorney, discovered this when

24 they reviewed their ACV payments from State Farm General for wildfire damage to their

25 Healdsburg, California home and much of its contents. They bring this class action seeking damages

26

27 ────────────

[1] "¶" refers to a paragraph in the Complaint (ECF No. 1), unless otherwise indicated.

28 [2] Section" or "§" refers to a section of the California Insurance Code, unless otherwise indicated.

1    and restitution for past amounts that State Farm unlawfully withheld or obtained in violation of

2    California insurance law and the relevant insurance policies, and further requesting that State

3    Farm's common practice of depreciating sales tax be declared unlawful and permanently enjoined.

4    **II.      STATEMENT OF ISSUES TO BE DECIDED**

5            Plaintiffs bring four claims for breach of contract, breach of the covenant of good faith and

6    fair dealing, declaratory relief, and violations of the UCL. *See* ¶¶ 56-82. State Farm's Motion "does

7    not challenge" whether Plaintiffs have adequately pled their contract claims (Mot. at 1:8-9) but

8    focuses instead on seeking dismissal of Plaintiffs' claims for declaratory relief, injunctive relief,

9    and restitution, as well as all Plaintiffs' claims against State Farm Fire.

10           State Farm makes four main arguments. ***First***, State Farm's argument that Plaintiffs lack

11    standing to seek declaratory relief because the parties already "agree" on certain legal issues grossly

12    mischaracterizes certain allegations in the Complaint, and its argument that the declaratory relief

13    sought is "duplicative" of Plaintiffs' contract claims is premature. *See infra* § V.A. ***Second***,

14    regarding equitable relief, State Farm argues that contract damages provide an adequate remedy at

15    law (which is incorrect as to injunctive relief and premature as to restitution), that Plaintiffs lack

16    standing to seek injunctive relief and that the requested injunction would require payment of

17    damages (both arguments mischaracterize the Complaint), and that Plaintiffs fail to seek a legally

18    cognizable form of restitution under the UCL (which is contrary to case law). *See* § V.B. ***Finally***,

19    Plaintiffs' argument that State Farm Fire should be dismissed because Plaintiffs make only

20    "conclusory" allegations about the Defendants' alleged long-standing common practice of cheating

21    policyholders out of ACV benefits in violation of § 2051(b) ignores key allegations and is wrong

22    the law. *See infra* § V.C. The Motion should be denied.

23    **III.     FACTUAL ALLEGATIONS AND BACKGROUND**

24           **A.      California Insurance Code § 2051(b)**

25           All insurance issued in California is governed by the California Insurance Code (the

26    "Insurance Code"), which seeks to protect consumers by prescribing minimum standards of

27    insurance. The Insurance Code provision at issue here is § 2051(b), which prescribes minimum

28    standards for calculating ACV benefits. Enacted in 2004 and effective as of January 1, 2005,

§ 2051(b) reads as follows:

> Under an open policy[3] that requires payment of actual cash value, the measure of the actual cash value recovery, in whole or partial settlement of the claim, for either a total or partial loss to the structure or its contents, shall be the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less. A deduction for physical depreciation shall apply only to components of a structure that are normally subject to repair and replacement during the useful life of that structure.

§ 2051(b) (footnote added). By its express terms, § 2051(b) provides that ACV payments must be based on a simple two-step calculation: (1) repair or replacement cost (i.e., "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured"), (2) minus *physical* depreciation (i.e., "less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury," which "deduction for physical depreciation shall apply only to [certain] components of a structure"). *Id.*

### B.   Section 2051(b) Case Law

The only relevant appellate precedent interpreting § 2051(b) appears to be *California Fair Plan Ass'n v. Garnes*, 11 Cal.App.5th 1276, *as modified on denial of reh'g* (June 14, 2017), *rev. denied* (Aug. 9, 2017) ("*Garnes*"). In *Garnes,* the question was whether § 2051(b) was mandatory or merely optional for insurers. *See id.* at 1308-09. The Court of Appeal held that § 2051(b) provides "mandatory minimum coverage" that insurers may not contract around. *Id*. In other words, property insurance contracts may provide a formula for calculating ACV benefits that is more favorable to the policyholder than the "mandatory minimum" formula required by § 2051(b), but it cannot provide a formula that is "less favorable" to the policyholder. *Id*. at 1309. If an insurance contract contains ACV provisions that are less favorable to the policyholder than required by § 2051(b), those provisions are "unenforceable," and the policy must be construed "as if its

---

[3] The typical property policy is an "open policy," defined in the Insurance Code as a policy "in which the value of the subject matter is not agreed upon [on the face of the policy], but is left to be ascertained in case of loss." Cal. Ins. Code § 411; *accord Doan v. State Farm Gen. Ins. Co.*, 195 Cal.App.4th 1082, 1093 n.7 (2011); *Kirkwood v. California State Auto. Ass'n Inter-Ins. Bureau*, 193 Cal.App.4th 49, 55 (2011).

1    indemnity terms conformed to section 2051." *Id.* at 1309.

2         The same month that *Garnes* was decided in 2017, this Court faced the question of whether

3    § 2051(b) prohibited or permitted Hartford-affiliated insurers' practice of depreciating sales tax

4    when calculating ACV payments. *Johnson*, 2017 WL 2224828, at *7-9, *17 (Orrick, J.). Based on

5    reasoning indicating the court's view that the plain meaning of § 2051(b) prohibits the depreciation

6    of sales tax, the court denied Hartford's motion for summary judgment on that issue, and granted

7    the policyholder's motion for class certification. *Id.*

8         A few years later in 2020, another federal district court rejected yet another insurer's

9    arguments, this time on a motion to dismiss, that § 2051(b) somehow permits ACV benefits

10   calculations that include depreciation of sales tax. *Maison D'Artiste v. Am. Int'l Grp., Inc.*, No. 19-

11   cv-07574-SVW-E, 2020 WL 4037219, at *3 (C.D. Cal. Jan. 23, 2020) ("*Maison D'Artiste*"). The

12   court expressly rejected the insurer's arguments: "The Court disagrees with [the insurer's] reading

13   of the statute on its face. … A plain reading of both the statute [§ 2051(b)] and the regulation[4]

14   appears to indicate that any actual cash value payment made under a property insurance policy

15   should not depreciate … expenses that are 'not a component of physical depreciation'—as sales tax

16   … appear[s] to be." *Id.* (footnote added).

17        Plaintiffs discuss these cases in their Complaint. ¶¶ 30-32. Plaintiffs further allege, on

18   information and belief, that all "case law on the merits of whether § 2051(b) permits depreciation of

19   sales tax in calculating ACV payments has held or otherwise indicated that § 2051(b) does not

20   permit such depreciation," and that "all Defendants were aware of the state of the relevant case law

21   at all times relevant to this litigation." ¶ 33.

22        **C.    Plaintiffs Melissa Pitkin and Dan Grout**

23        Plaintiffs Melissa Pitkin and Dan Grout are a couple with a California form homeowners

24   insurance policy issued by State Farm General Insurance Company, specifically Policy No. 57-C4-

25   6752-1 (the "Policy"). ¶ 34. In August 2020, Plaintiffs suffered a covered loss under their Policy

26   when their Healdsburg, California home and its contents were damaged by the Walbridge Fire. ¶¶ 3,

27

28        [4] *See* 10 Code Cal. Regs. § 2695.9(f) (providing that ACV payments must be calculated
     "as set forth in California Insurance Code Section 2051").

9-10, 36. Shortly after the fire, Plaintiff submitted a claim to State Farm General seeking coverage for the damage to their real and personal property. ¶ 36. In connection with their claim, Plaintiffs received ACV benefits payments from State Farm General in December 2022 and January 2023, both of which had been reduced due depreciation of sales tax, in violation of § 2051(b) and in breach of the Policy. ¶¶ 37-38. Since the Walbridge Fire, Plaintiffs have continued to insure their home and personal property through State Farm General on a continuous basis, and Plaintiffs have no intention of changing insurance carriers. ¶ 40.

**D.    Defendants' Common Practice of Systematically Violating § 2051(b)**

State Farm General and State Farm Fire are California property insurers that are both wholly owned subsidiaries of Illinois-based State Farm Mutual Automobile Insurance Company. ¶¶ 11-13. Plaintiffs allege that "Defendant State Farm General Insurance Company's practice of deprecating sales tax in calculating ACV benefits is part of a common and systematic policy and practice by each Defendant to deprive State Farm property insurance policyholders, including Plaintiffs and putative Class Members, of contractual benefits to which they are entitled as matter of California law and as a matter of contract." ¶ 45.

## IV.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

A complaint should be dismissed under Rule 12(b)(1) only if it fails to allege facts sufficient to establish subject matter jurisdiction. *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). However, a Rule 12(b)(1) motion is "not appropriate for determining jurisdiction … where issues of jurisdiction and substance are intertwined" because courts "may not resolve genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (cleaned up). In ruling on a Rule 12(b)(1) motion, the court must accept as true "all allegations of material fact and must construe said allegations in the light most favorable to the non-moving party." *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985); *accord In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 (9th Cir. 2018).

1    **B.    Rule 12(b)(6)**

2        To survive a Rule 12(b)(6) challenge, plaintiffs need only present "a short and plain

3    statement of the claim showing that the pleader is entitled to relief, in order to give the defendant

4    fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

5    550 U.S. 544, 555 (2007) (cleaned up). The complaint "does not need detailed factual allegations,"

6    *id.*, but only enough "factual content that allows the court to draw the reasonable inference that the

7    defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts

8    must accept allegations in the complaint as true, construing them in the light most favorable to

9    plaintiffs and drawing all reasonable inferences in plaintiffs' favor. *Lazy Y Ranch Ltd. v. Behrens*,

10    546 F.3d 580, 588 (9th Cir. 2008). Courts must further assume that all general allegations "embrace

11    whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch.*

12    *Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

13    **V.    ARGUMENT**

14        **A.    Plaintiffs Adequately Plead Their Claim for Declaratory Relief.**

15        Federal courts "may declare the rights and other legal relations of any interested party

16    seeking [a] declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

17    "Declaratory relief is appropriate when: (1) the judgment will serve a useful purpose in clarifying

18    and settling the legal relations in issue; and (2) it will terminate and afford relief from the uncertainty,

19    insecurity and controversy giving rise to the proceeding." *Irwin v. Mascott*, 112 F.Supp.2d 937, 956

20    (N.D. Cal. 2000); *see also Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir. 1986).

21        Plaintiffs' declaratory relief allegations amply meet these requirements. *See, e.g.*, ¶¶ 1, 52(b),

22    53, 56-61. Plaintiffs, who continue to insure their home through State Farm (¶ 40) and whose August

23    2020 claim for fire damage to their home and contents remains open (¶ 41), allege as follows:

24        Defendants contend that they are permitted under § 2051 to deduct depreciation for
25        sales tax in calculating ACV benefits for covered loss or damage to real and personal
         property under the Relevant Policies.[5] Plaintiffs and Class Members take the opposite
26

    _____

27        [5] The Complaint defines "Relevant Policies" as "Plaintiffs' and Class Members' property
    insurance policies issued by Defendants that provide for the payment of ACV benefits within the
    meaning of § 2051, and under which Defendants paid Plaintiffs and Class Members ACV benefits
28    that reflected a deduction for depreciation of sales tax." ¶ 57.

position—i.e., that Defendants are prohibited under § 2051 from deducting depreciation for sales tax in calculating ACV benefits for covered loss or damage to real and personal property under the Relevant Policies. Plaintiffs and Class Members further contend that Defendants' deducting of depreciation for sales tax from ACV payments not only violate[] California insurance law, but also materially breach the express and implied terms of the Relevant Policies, and [violate] California's UCL.

¶ 58 (footnote added).

To conclusively resolve the parties' dispute, Plaintiffs seek an order declaring as follows:

(1) that Cal. Ins. Code § 2051 provides mandatory minimum standards for calculating ACV payments under California insurance policies insuring real or personal property; (2) that any terms on the face of a California property insurance policy that would result in ACV payments that are less favorable to policyholders (i.e., lower in amount) than what is required under § 2051 are unenforceable as a matter of law, and that policy terms [must] be construed consistent with the requirements of § 2051; (3) that "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured" under § 2051(b) includes sales tax on goods and services that the insured would reasonably need to purchase to repair, rebuild, or replace the thing lost or injured; (4) that § 2051 prohibits the insurer from depreciating sales tax on such goods and services in calculating ACV benefits payable to an insured; (5) that deductions for depreciation of sales tax on such goods and services in calculating ACV benefits is a material breach of the appliable Relevant Policy and entitles the policyholder to an award of damages at least in the amount of the deduction; and (6) such other and further declaratory relief that the Court deems just and proper.

¶ 59.

In its Motion, State Farm argues that the first three components of the requested declaration should be dismissed for lack of standing based on State Farm mischaracterizing allegations in the Complaint, and that the fourth and fifth components should be dismissed as "duplicative" of Plaintiffs' contract claims. *See* Mot. at 10-12.[6] Both arguments are meritless.

***First***, State Farm argues that no Article III controversy exists as to the first three components of the requested relief because (according to State Farm) Plaintiffs allege that they and State Farm already "agree" on those legal issues. Mot. at 11:25-12:2 (arguing that "Plaintiffs allege that they and State Farm *agree* that Section 2051 controls actual cash value methodology for their contents payments," and "that State Farm *agrees* that [replacement cost value] under Section 2051

---

[6] State Farm makes no argument regarding, and thus waives its right to seek, dismissal of the sixth component of Plaintiffs' request for declaratory relief.

includes applicable sales tax" (emphases in original)). This is a gross mischaracterization of Plaintiffs' allegations, as the paragraphs of the Complaint to which State Farm cites (¶¶ 28-29) have nothing to do with the positions of the parties here. Rather, those paragraphs set forth a "hypothetical example for purposes of illustration" about a coverage dispute between a "hypothetical insurer and policyholder" regarding an ACV benefits payment in which sales tax had been depreciated. ¶ 28 ("Consider the following hypothetical example for purposes of illustration: …"); ¶ 29 ("However, our hypothetical insurer and policyholder disagree about one thing: …"). State Farm repurposing ¶¶ 28-29 to assert that Plaintiffs allege that *the parties here* already "agree" on certain aspects of the requested declaratory relief is patently misleading—and a potential violation of their duty of candor to the tribunal.

State Farm makes a related argument that Plaintiffs lack standing to seek the second component of the requested relief (i.e., an order declaring that the law requires all policy terms must be "construed consistent with the requirements of Section 2051") because Plaintiffs fail to "allege that State Farm made its ACV payments … based on any contract language that conflicts with Section 2051." Mot. at 11. This argument misses the point. The purpose of this case is to end State Farm's alleged practice of including depreciation of sales tax in its ACV calculations, in violation of § 2051(b). The allegation that State Farm is engaged in this practice gives rise to the reasonable inference that State Farm's legal justification for doing so is a policy construction that is unlawful under § 2051(b), which is precisely what the requested declaration targets. State Farm cannot obtain dismissal of Plaintiffs' declaratory relief claim at the pleading stage by "hiding the ball"—i.e., declining to disclose its legal justification for depreciating sales tax, and then faulting Plaintiffs' declaratory relief claim for not more precisely targeting State Farm's undisclosed contentions. Moreover, whatever State Farm's legal justifications for depreciating sales tax are currently, those justifications could evolve during the course of this litigation, and even after this case is concluded. Plaintiffs' requested declaratory relief is designed to make clear that State Farm's practice of depreciating sales tax is unlawful, regardless of its purported legal justifications. There is no basis for dismissing any aspect of Plaintiffs' requested relief at this stage for lack of standing.

**Second**, State Farm argues that the declaratory relief claim is "duplicative" of Plaintiffs' contract claims. Mot. at 12-13. At the pleading stage, courts routinely reject such arguments as premature. *See, e.g.*, *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F.Supp.3d 1113, 1139 (N.D. Cal. 2018) ("*In re Yahoo!*") (denying motion to dismiss declaratory relief claim as allegedly duplicative of breach of contract claim); *whiteCryption Corp. v. Arxan Techs., Inc.*, 2016 WL 3275944, at *11 (N.D. Cal. June 15, 2016) (Orrick, J.) (same, noting that the "safer course" was to reject this argument on a motion to dismiss). Indeed, even at later stages of litigation, courts often find that the "duplicative" argument is still premature. *See, e.g.*, *Johnson*, 2017 WL 2224828, at *9 (N.D. Cal. May 22, 2017) (Orrick, J.) (denying as premature insurers' request on summary judgment to dismiss allegedly duplicative declaratory relief claim: "I do not see how Hartford is prejudiced by these [declaratory relief] claims and I can foresee some utility if I determine at the end of the case that Hartford has violated Section 2051 on a class-wide basis").

State Farm's argument also ignores Rule 57, which expressly provides that "[t]he existence of another adequate remedy *does not preclude* a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57 (emphasis added); *accord Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.Supp.3d 868, 890 (N.D. Cal. 2018); *In re Yahoo!*, 313 F.Supp.3d at 1138. Indeed, Federal Rule 8(d)(3) "explicitly allows plaintiff[s] to plead different theories of relief in the alternative, even if those theories are inconsistent." *Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, 2019 WL 4450842, at *4 (N.D. Cal. Sept. 17, 2019). Hence the routine practice of pleading claims and relief in the alternative. *See, e.g.*, *Edelson v. Travel Ins. Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021) ("no controlling authority prevents a plaintiff from asserting alternative legal remedies at the pleading stage"); *Wildin v. FCA US LLC*, 2018 WL 3032986, at *7 & n.4 (S.D. Cal. June 19, 2018) (similar).

In the final analysis, "[t]he critical question is whether the declaratory relief 'will serve a useful purpose in clarifying and settling the legal relations in issue.'" *Alta Devices, Inc.*, 343 F.Supp.3d at 890 (quoting *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966)). Here, the clear answer is yes, as only a declaration "would govern ongoing interactions between Plaintiffs and Defendants and clarify the parties' legal rights" under the

standard form property insurance policies at issue in this action. *In re Yahoo!*, 313 F.Supp.3d at

1139. Plaintiffs' declaratory relief claim is proper and should be allowed to proceed.

**B.    Plaintiffs Are Entitled to Seek Injunctive Relief and Restitution.**

In connection with their declaratory relief and UCL claims (¶¶ 60, 80 & Prayer C), Plaintiffs

seek prospective injunctive relief to prevent future harm from State Farm's ongoing "systematic

underpayments of ACV benefits in violation of § 2051 and in breach of [its policies]." ¶¶ 44; *see*

*also id.* ¶¶ 77-79 (alleging State Farm violated the UCL through "unlawful" and "unfair" acts and

practices that "are continuing in nature and are the result of a systematic, coordinated, and ongoing

policy and practice" "to reduce ACV benefits … below the minimum amount required by

California law"). To redress this continuing injury, Plaintiffs seek the following injunctive relief

"on behalf of themselves and all Class Members," as well as "the public" (¶¶ 60, 80):

> … injunctive relief, including one or more orders (1) enjoining Defendants from
> enforcing any terms on the face of a California property insurance policy that purport
> to allow Defendants to depreciate sales tax in calculating ACV benefits payments, or
> that otherwise purport to allow Defendants to pay ACV benefits that are less favorable
> to the insured than what is required under § 2051; (2) enjoining Defendants from
> omitting sales tax on goods and services that the insured would reasonably need to
> purchase to repair, rebuild, or replace the thing lost or injured from Defendants'
> calculation of "the amount it would cost the insured to repair, rebuild, or replace the
> thing lost or injured" under § 2051(b); (3) enjoining Defendants from depreciating
> sales tax on such goods and services in calculating ACV benefits payable to the
> insured; (4) providing other injunctive relief that Plaintiffs and Class Members may
> more precisely specify at an appropriate later stage of this litigation; and (5) providing
> such other and further injunctive relief as the Court deems just and proper.

Compl., Prayer C.

Under their UCL claim, Plaintiffs also seek "in the alternative or in addition to damages …

all available restitution … including but not limited to restitution based on wrongfully withheld

policy benefits and/or Plaintiffs' and Class Members' overpayment of policy premiums based on

their reasonable understanding at the time of contracting that Defendants did not intend to cheat

them out of policy benefits required to be paid under California insurance law." ¶ 81 & Prayer E.

In its Motion, State Farm makes four arguments: (1) that the requests for injunctive relief

and restitution should be dismissed because Plaintiffs do not adequately plead their legal remedies

are inadequate, (2) that Plaintiffs lack standing to seek the first two components of the requested

1   injunction and that the third component would somehow require State Farm to pay contract

2   damages for past harms, and (3) that Plaintiffs seek restitution that is not legally cognizable under

3   the UCL. As Plaintiffs show below, each argument fails.

4               **1.  Plaintiffs Lack an Adequate Legal Remedy.**

5         Plaintiffs expressly allege that State Farm's UCL violations are "continuing in nature," and

6   that Plaintiffs "have no adequate remedy at law." ¶¶ 60-61 (declaratory relief claim); ¶¶ 79-80

7   (UCL claim). Plaintiffs further plead that their UCL claim for restitution is "in the alternative or in

8   addition to damages sought in this Complaint under other claims for relief." ¶ 81. State Farm

9   nevertheless insists that Plaintiffs have not sufficiently pled that the legal remedy of damages is

10  inadequate, relying primarily on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

11  Mot. at 3-6. State Farm's argument fails for at least two reasons.

12        ***First***, *Sonner* has no bearing Plaintiffs' request for injunctive relief because "*Sonner* applies

13  only to equitable *restitution* for *past* harm under the UCL, not to an *injunction* for *future* harm."

14  *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *10 (N.D Cal. Aug. 16, 2021) (Chen, J.)

15  (emphases in original). This is because, in *Sonner*, "[i]njunctive relief [wa]s not at issue." *Sonner*,

16  971 F.3d at 842 (stating the only issue was "whether a federal court sitting in diversity can award

17  equitable restitution under state law if an adequate legal remedy exists"); *accord Graham v. Cent.*

18  *Garden & Pet Co.*, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023) (Corley, J.); *Warren v.*

19  *Whole Foods Mkt. Cal., Inc.*, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) (Chen J.).

20        Thus, "post-*Sonner* courts have found that a plaintiff may still seek injunctive relief under

21  the UCL where damages would not protect against a future harm." *Sharma v. Volkswagen AG*, 524

22  F.Supp.3d 891, 908-09 (N.D. Cal. Mar. 9, 2021) (Tigar, J.) (citing *Integritymessageboards.com v.*

23  *Facebook, Inc.* 2020 WL 6544411, at *7 (N.D. Cal. Nov. 6, 2020) (Hamilton, J.)); *accord Graham*,

24  2023 WL 2744391, at *4; *Warren*, 2022 WL 2644103, at *9. This legal authority makes clear that

25  *Sonner* does not apply to UCL claims seeking injunctive relief to prevent future harm, which is

26  precisely what Plaintiffs seek here. State Farm's contrary argument must be rejected.

27        ***Second***, State Farm's request to dismiss Plaintiffs' request for restitution under *Sonner* is

28  "premature" at the pleading stage. *Nacarino v. Chobani, LLC*, 2022 WL 344966, at *7-10 (N.D.

---

Cal. Feb. 4, 2022) (Chen, J.) (collecting cases). The procedural posture of *Sonner* helps make clear why. In *Sonner*, the plaintiff brought class claims for damages and restitution, both of which sought "a full refund of the [same] purchase price." 971 F.3d at 844. "[O]n the eve of trial," in an attempt to obtain a bench trial instead of a jury trial, the plaintiff "strategically chose to amend her complaint … to drop her damages claim," even after the trial court warned the plaintiff that "if … she dropped the damages claim … it would be 'open season' on a motion to dismiss" the restitution claim based on her resulting inability to show her legal remedies were inadequate. *Id.* at 837-38, 844-45. After the defendants moved to dismiss, the district court granted the motion, denied plaintiffs' request for leave to amend to re-allege the damages claim, and the Ninth Circuit affirmed. *Id.* at 837, 845.

Given *Sonner*'s procedural posture, it is no surprise that courts have held that *Sonner* "has limited applicability at the pleadings stage." *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (Freeman, J.); *accord In re JUUL Labs, Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 497 F.Supp.3d 552, 638 (N.D. Cal. 2020) (Orrick, J.) (finding *Sonner* factually "inapposite" at the pleading stage). As this very Court has observed, the point in time at which *Sonner* requires a plaintiff seeking "equitable restitution for past harm under the UCL" to establish that she lacks an adequate legal remedy is not at the pleading stage, but only "before *securing* [such] equitable restitution." *Johnson v. Trumpet Behavioral Health, LLC,* 2022 WL 74163 at *3 (N.D. Cal. Jan. 7, 2022) (Orrick, J.) (quoting *Sonner*, 971 F.3d at 844-45, and adding emphasis). At the pleading stage, if "a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more." *Id.*; *accord Huynh v. Jabil Inc.*, 2023 WL 1802417, at *7 (N.D. Cal. Feb. 7, 2023) (Orrick, J.) ("all [a plaintiff] needs to plead … is an unconditional statement that his legal remedies are inadequate").

Plaintiffs satisfy that requirement, not only by expressly alleging they "have no adequate remedy at law" (¶¶ 61, 80), but also by seeking restitution only "in the alternative or in addition to damages sought" (¶ 81). Seeking such "relief in the alternative" is expressly authorized by Fed. R. Civ. P. 8(a)(3), as well as Ninth Circuit precedent. *See, e.g.*, *Byton N. Am. Co. v. Breitfeld*, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) (noting "the Ninth Circuit's general rule is that

plaintiffs may plead alternative claims, even if those claims are inconsistent"); *Nicarino*, 2022 WL 344966, at *10. Thus, State Farm's argument that damages are a fully adequate remedy for past harms is premature. After all, "it would not be surprising for a more developed record to reveal the inadequacy of legal remedies that is less apparent" at the pleading stage, making it "too early [at the pleading stage] to determine whether the plaintiffs' legal remedies will ultimately be adequate." *Trumpet Behavioral Health,* 2022 WL 74163, at *4 (Orrick, J.).[7]

### 2. Plaintiffs Are Entitled to Seek the Requested Injunctive Relief.

State Farm seeks to pick off the individual components of Plaintiffs' requested injunctive relief, but none of State Farm's arguments hold up to scrutiny.

***First***, State Farm contends that Plaintiffs lack standing to seek the first component of the requested injunction because they fail to "allege that State Farm relied on any contract language that conflicted with Section 2051" (Mot. at 10) when State Farm depreciated sales tax in calculating Plaintiffs' ACV benefits. This is a specious argument. For starters, State Farm has never disclosed to Plaintiffs it purported legal justification for depreciation sales tax in violation of § 2051(b), and its Motion assiduously avoids disclosing any legal position it might take in this litigation regarding why it thinks its depreciation practices are lawful. This is another example of State Farm seeking to obtain advantage in this litigation by "hiding the ball." *See supra* at 8. Further, insurance is contractual in nature. The only basis that State Farm could have possibly relied on when it

---

[7] Defendants' other cited cases on this issue (*see* Mot. at 4-6) are distinguishable based on the procedural posture or the relief sought. *See Guzman v. Polaris Indus., Inc.* 49 F.4th 1308, 1312 (9th Cir. 2022) (affirming ruling *on summary judgment* that damages were adequate legal remedy, and that plaintiffs' failure to bring now-time-barred claim for damages defeated court's equitable jurisdiction to award restitution); *Graham v. Cent. Garden & Pet Co.* 2023 WL 2744391, at *3-4 (N.D. Cal. Mar. 30, 2023) (plaintiff sufficiently pled legal remedies were inadequate with respect to UCL claim for prospective injunctive relief); *Cook v. State Farm Gen. Ins. Co.*, 2022 WL 16839495 (N.D. Cal. Nov. 9, 2022) (denying plaintiffs' post-Answer motion to amend complaint with UCL claim for *retrospective injunctive relief* to reopen and readjust denied insurance claims because plaintiffs' contract claims for damages sought equivalent relief). Two of State Farm's cases turned on the absence of any statement in the complaint concerning inadequacy of legal remedies, which is not true here. *See Huynh v. Jabil Inc.*, 2023 WL 1802417, at *7 (N.D. Cal. Feb. 7, 2023) (Orrick, J.) (plaintiff failed to plead "an unconditional statement that his legal remedies are inadequate"); *PDF Print Comm'cns, Inc. v. Federated Mut. Ins., Co.*, 2022 WL 2189631, at *3 (C.D. Cal. May 9, 2022) (similar).

depreciated sales tax in calculating Plaintiffs' ACV benefits is the "contract language" of Plaintiffs' Policy.

**Second**, State Farm argues that Plaintiffs lack standing to seek the second component of the requested injunction based, again, on misrepresenting Plaintiffs' "hypothetical example" allegations (¶¶ 28-29) as stating the position of the parties here. *See* Mot. at 10:19-21 ("Plaintiffs affirmatively allege that they and State Farm General 'agree that sales tax is party of the total replacement cost'" (quoting ¶ 29)). This argument fails for the same reason stated above. *See supra* at 8.

**Third**, State Farm likewise misconstrues Plaintiffs' third request for an order "enjoining Defendants from depreciating sales tax on such goods and services in calculating ACV benefits payable to the insured." Compl., Prayer C. All Plaintiffs' requested injunctive relief seeks to prevent *future* harm from State Farm's ongoing systematic violation of § 2051(b) (¶¶ 44, 79), and this third component is no exception. Yet, State Farm somehow misinterprets it as an impermissible attempt to "recover contract damages" by "effectively requiring State Farm to pay amounts Plaintiffs contend are owed under their insurance policy," or "to reopen, readjust and pay insurance claims." Mot. at 8-9. But the third request never mentions "Plaintiffs" or their "Policy" (capitalized as defined at ¶ 34), or even "Class Members." It simply seeks an order "enjoining Defendants from depreciating sales tax on such goods and services in calculating ACV benefits payable to the insured." Compl., Prayer C. State Farm's purported interpretation is divorced from, and impossible to reconcile with, the actual language of the Complaint. It must be rejected.

### 3. Plaintiffs' Request for Restitution of Insurance Payments Unlawfully Withheld, and Policy Premiums Wrongfully Obtained, Is Legally Cognizable.

Restitution under the UCL "is not limited only to the return of money or property that was once in the possession of [the plaintiff]." *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal.4th 163, 178 (2000). It also includes any "money or property in which [the plaintiff] has a vested interest," as opposed to a mere "contingent interest" requiring the occurrence of a future event. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003); *see also Black's Law Dictionary* (11th ed. 2019) (defining "vested interest" as "[a]n interest for which the right to its enjoyment … is not subject to the happening of a condition precedent").

Thus, a UCL claim for restitution permits recovery of any moneys "due and payable" to the plaintiff but that the defendant has "unlawfully withheld." *Cortez*, 23 Cal.4th at 177-78 (unpaid earned wages); *Evans v. DSW, Inc.*, 2017 WL 7058232, at *7 (C.D. Cal. Sept. 14, 2017) (money overpaid for products due to false advertising); *Elec. Indus. Serv. Bureau, Inc. v. Philadelphia Indem. Co.*, 2018 WL 7286502, at *7 (N.D. Cal. July 11, 2018) (surety bond). This includes "quantifiable sums that one private party … owes to another party who claims the sum was obtained, or not paid, in violation of a law or regulation." *Walnut Creek Manor v. Fair Emp. & Hous. Comm'n*, 54 Cal.3d 245, 263 (1991); *see also Cortez*, 23 Cal.4th at 178 ("equity regards that which ought to have been done as done, and thus recognizes equitable conversion").

Here, Plaintiffs seek restitution of two quantifiable sums that State Farm has wrongfully withheld or obtained from them in violation of § 2051(b):

> Plaintiffs and Class Members further seek, whether in the alternative or in addition to damages sought in this Complaint under other claims for relief, all available restitution in an amount to be determined at trial, including but not limited to restitution based on wrongfully withheld policy benefits and/or Plaintiffs' and Class Members' overpayment of policy premiums based on their reasonable understanding at the time of contracting that Defendants did not intend to cheat them out of policy benefits required to be paid under California insurance law ….

¶ 81.

First, Plaintiffs' request for restitution of "wrongfully withheld policy benefits" (¶ 81) is a cognizable form of restitution because the withheld benefits are "quantifiable sums" that are "due and payable" to Plaintiffs, but that State Farm withheld in violation of law, and thus in which Plaintiffs have the requisite "vested interest." *Cortez*, 23 Cal.4th at 178; *Walnut Creek Manor*, 54 Cal.3d at 263.

Second, Plaintiffs seek restitution of their "overpayment of policy premiums based on their reasonable [but mistaken] understanding at the time of contracting that Defendants did not intend to cheat them out of policy benefits required to be paid under California insurance law." ¶ 81. State Farm counters that no portion of the premiums can be restituted because "the Policy remained in force" (Mot. at 7:21), but this is contrary to Plaintiffs' allegation that State Farm instituted a pre-determined scheme to reduce benefits payments in violation of § 2051(b), thereby keeping part of

1    Plaintiffs' and Class Members' premiums without providing the legally required corresponding

2    benefit. This distinguishes State Farm's citation to *Kundanmal v. Safeco Ins. Co. of Am.*, 2017 WL

3    6942758, at *2 (C.D. Cal. Dec. 13, 2017), which merely holds that a *full* refund of *all* policy

4    premiums (which Plaintiffs here do not seek) is not available where the policyholder obtained some

5    benefit from the Policy. *Id.*, at *2. Instead, Plaintiffs' allegations here are more analogous to *Evans*

6    *v. DSW, Inc.*, 2017 WL 7058232 (C.D. Cal. Sept. 14, 2017), a false advertising class action where a

7    discount retailer was accused of misleading its customers by displaying the prices of its shoes

8    alongside grossly inflated "compare at" prices. *Id.* at *3, 7. There, the court found "the proper

9    measure of restitution" under the UCL in that scenario would be "the difference between what

10   Plaintiff paid and the value she reaped." *Id.*

11       More generally, State Farm argues that Plaintiffs' request for restitution is simply a

12   mislabeled request for "compensatory damages." Mot. at 7:1-2. Not so. Plaintiffs' request meets all

13   the criteria for restitution, as set forth in the case law summarized above. For example, unlike the

14   plaintiff in *Korea Supply*, which had a mere "expectancy" in receiving a commission that was

15   contingent on the awarding of a government contract, 29 Cal.4th at 1150, Plaintiffs here have a

16   fully vested interest in the policy benefits that are due and payable to them and should already be in

17   their possession but for State Farm having wrongfully withheld payment in violation of § 2051(b).

18   This case is analogous to *Cortez*, where the court held that unlawfully withheld wages were the

19   employee's "vested" property and so could be recovered in restitution. 23 Cal.4th at 178.[8]

20

21

22

23   [8] State Farm's other cases on this issue are inapposite. *See M&F Fishing, Inc. v. Sea-Pac Ins. Mgrs.*, 202 Cal.App.4th 1509, 1513, 1527 (2012) (holding policyholders could not seek *from their insurance broker* "restitution" of policy premiums paid to their insurers, but were limited to seeking restitution of commissions paid to broker); *Benn v. Allstate Ins. Co.*, 569 F. Supp.3d 1029, 1036-37 (individual policyholder alleging run-of-the-mill wrongful denial of insurance claim, without any allegations of systemic or ongoing wrongful conduct, could be fully remedied by damages); *Sheahan v. State Farm Gen. Ins. Co.*, 394 F. Supp.3d 997, 1006 (N.D. Cal. 2019) (holding policyholder's request to enlarge policies' coverage cap was not claim for restitution); *Baugh v. Columbia Broadcasting Sys., Inc.*, 828 F. Supp. 745, 757-58 (N.D. Cal. 1993) (compensation sought for "embarrassment and emotional distress" was claim for damages, not restitution).

**C.    Plaintiffs State Cognizable Claims Against State Farm Fire.**

Under California law, persons who conspire in a common plan or design to carry out a tort or other wrongful conduct are jointly liable for all harm done in furtherance of the conspiracy. *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F.Supp.3d 887, 894 (N.D. Cal. 2014) (citing 5 Witkin, SUMMARY OF CAL. LAW, TORTS § 45 (10th ed. 2005)). A conspiracy "may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." *Id.* (citing *117 Sales Corp. v. Olsen*, 80 Cal.App.3d 645, 649, (1978)). Likewise, a defendant is liable for aiding and abetting if he "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Am. Gen. Life Ins. Co. v. Khachatourians*, 2012 WL 5267683, at *4 (C.D. Cal. Oct. 24, 2012) (citing *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1144 (2005)); *see also id.* (noting "California law allows for joint liability of aiders and abettors").

Here, Plaintiffs bring their Complaint against the two State Farm affiliates that issue property insurance in California subject to § 2051, Defendants State Farm General and State Farm Fire. ¶¶ 11-13. Both insurers are wholly owned subsidiaries of State Farm Mutual Automobile Insurance Company. ¶¶ 11-12. Plaintiffs allege that since at least January 2005, when § 2051(b) came into effect, the two Defendants "conspired with each other and with currently unidentified co-conspirators," and acted as each other's "agents, employees, and/or joint venturers," in carrying out their common policy and practice of systematically cheating State Farm's California policyholders out of ACV benefits in violation of § 2051(b) and implementing regulations. ¶¶ 2, 14, 21, 39, 45. Plaintiffs further allege that each Defendant "took actions that aided and abetted, encouraged, and rendered substantial assistance in accomplishing th[at] wrongful conduct," and that they each did so "with full knowledge of the conspiracy's goals." ¶¶ 15-16. State Farm makes three arguments in response, all of which fail.

***First***, State Farm's argument that Plaintiffs' conspiracy allegations are "conclusory" (Mot. at 13:25-14:7) ignores the Complaint's factual allegations. Plaintiffs allege that two specific

companies, State Farm General and State Farm Fire, that are both subsidiaries of the same Illinois corporation and both issue insurance in same California market, have since January 2005 continuously depreciated sales tax when calculating ACV payments, despite knowing that this violates § 2051(b). ¶¶ 11-13, 33, 37-39. Plaintiffs allege that the two Defendants similar conduct in this regard is not the result of independent decision-making or a mere coincidence, but rather is the result of a "common and uniform corporate policy and practice." ¶ 39; *see also* ¶ 45 (similar).

   This is sufficient to allege conspiracy, as well as aiding and abetting (the latter of which State Farm does challenge). Plaintiffs plausibly allege *who* is involved in the conspiracy (the two Defendants), *when* the conspiracy began (since at least January 1, 2005), the *actions* taken in carrying out the conspiracy (Defendants' common claims adjustment practice of including depreciation of sales tax in ACV calculations), and the *harm* to Plaintiffs (they received unlawfully reduced ACV payments). These allegations are more than sufficient at the pleading stage to give State Farm Fire fair notice of the claim against it and the facts underlying the alleged conspiracy, as required by Rule 8. This is wholly unlike the situation in *Anaya v. Marin County Sheriff*, 2014 WL 4631227 (N.D. Cal. Sep. 16, 2014) (Orrick, J.), cited by State Farm, in which this Court held that a *pro se* § 1983 plaintiff had failed to adequately allege that a governmental defendant and non-government defendant had conspired to violate her civil rights because she "ple[d] *no facts that would show*" such a conspiracy. *Id.*, at *7 (emphasis added).[9]

   **Second**, State Farm's related argument that Plaintiffs' agency and alter ego allegations against State Farm Fire are also conclusory (Mot. at 14) fail for the same reason. Plaintiffs' allegations are far more detailed than "simply alleging a corporate relationship between defendants" and nothing more. Mot. at 14:18-19. Moreover, courts have found that where the facts "are presumably in Defendants' exclusive control, it would be inappropriate" to grant a motion to dismiss based on the sufficiency of plaintiff's alter ego allegations "without allowing Plaintiff an

---

[9] State Farm's other conspiracy cases (*see* Mot. at 13-14) are not on point with the alleged facts of this case. *See Twombly*, 550 U.S. at 556-57, 565, 567-68 (holding plaintiffs failed to adequately allege antitrust conspiracy *between competitors* under Sherman Act); *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1575, 1582 (upholding granting on nonsuit of conspiracy claim at conclusion of plaintiffs' case-in-chief because plaintiff's evidence showed only that defendant had "knowledge of [a] planned tort" but nothing more).

opportunity to obtain discovery." *Monaco v. Liberty Life Assur. Co.* 2007 WL 1140460 at *5 (N.D. Cal. Apr. 17, 2007) (Jenkins, J.); *see also Wehlage v. EmpRes Healthcare, Inc.* 791 F.Supp.2d 774, 782 (N.D. Cal. May 25, 2011) (Wilken, J.) (noting that, under California's "single enterprise rule," the alter ego doctrine applies "between sister or affiliated companies").[10]

**Finally**, State Farm's argument that Plaintiffs have not sufficiently alleged the basis of their claims against each Defendant but have instead engaged in impermissible "lumping" of defendants (Mot. 14:22-28) also fails. Plaintiffs "allege what role each Defendant played in the alleged harm." *Culinary Studios, Inc. v. Newsom*, 517 F.Supp.3d 1042, 1074 (E.D. Cal. Feb. 8, 2021) (quoting *Inman v. Anderson*, 294 F.Supp.3d 907, 919 (N.D. Cal. 2018)). Plaintiffs also "adequately distinguish[] claims and alleged wrongs among the defendants." *Id.* (citing *Inman*, 294 F.Supp.3d at 919). Here, Plaintiffs adequately allege the separate bases for their claims against State Farm General and State Farm Fire, in part, by appropriately alleging that only State Farm General issued Plaintiffs' Policy and interacted with Plaintiffs in adjusting their August 2020 insurance claim. *See* ¶¶ 3, 9-10, 34-39. By contrast, Plaintiffs allege that the underpayment of their ACV benefits that harmed Plaintiffs is the result of a "common and uniform corporate policy and practice by [both] Defendants," including State Farm Fire. ¶ 39; *see also* ¶¶ 44-45. *Cf. Flores v. EMC Mortgage Co.,* 997 F.Supp.2d 1088, 1100-11 (finding plaintiffs failed to satisfy Rule 8 where their 86-page complaint was "duplicative and lack[ed] necessary cohesion and organization to decipher claims against defendants and others" and "lack[ed] facts of defendants' specific wrongdoing to provide fair notice as to what each defendant is to defend"). Plaintiffs thus adequately distinguish their allegations against Defendants State Farm General and State Farm Fire.[11]

---

[10] State Farm's cited cases on this point are factually and procedurally distinguishable. *See Sonora Diamon Corp. v. Superior Court*, 83 Cal.App.4th 523, 555 (2000) (finding trial court erred in denying parent company's motion to quash for lack of personal jurisdiction where plaintiff's evidence failed to establish that subsidiary's contacts could be imputed to parent) *Freedom Transp., Inc. v. Travelers Cos., Inc.*, 2017 WL 540945 at *6-7 (C.D. Cal. Feb. 8, 2017) (dismissing alter ego allegations *on summary judgment* where plaintiff's only evidence of an alter ego relationship was that corporate defendants shared counsel, operated under same brand name, and were headquartered at the same address).

[11] State Farm's cases concerning group pleading are distinguishable. *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (plaintiff lumped twelve defendants

1    **VI.    CONCLUSION**

2         For the foregoing reasons, Plaintiffs respectfully request that the Court deny State Farm's

3    motion to partially dismiss the Complaint. If the Court grants any part of the motion, Plaintiffs

4    respectfully request leave to amend.

5

6                                              Respectfully submitted,

7    Dated:  May 8, 2023                       **COTCHETT, PITRE & McCARTHY, LLP**

8                                              By:    */s/ Frank M. Pitre*_____
                                                      FRANK M. PITRE
9                                                     NABILAH A. HOSSAIN
                                                      ANDREW F. KIRTLEY
10                                                    ANDREW W. BRITTON

11

12   Dated:  May 8, 2023                       **WELTY, WEAVER & CURRIE, P.C.**

13                                             By:    */s/ Jack M. Weaver*_____
                                                      JACK W. WEAVER
14                                                    RACHAEL MACHE

15   Dated:  May 8, 2023                       **MURRAY LAW FIRM**

16                                             By:    */s/ Stephen B. Murray, Jr.*_____
                                                      STEPHEN B. MURRAY, JR.
17                                                    ARTHUR M. MURRAY
                                                      JESSICA W. HAYES
18                                                    THOMAS M. BEH

19

20   Dated:  May 8, 2023                       By:    */s/ William H. Hedden*_____
                                                      WILLIAM H. HEDDEN
21

22                                             ***Attorneys for Plaintiffs and the Proposed Class***

23

24

25

26   _____

27   together "in a single, broad allegation" in a single paragraph of his complaint); *Jung v. Ass'n of Am. Med. Coll.,* 300 F.Supp.2d 119, 163 (D.D.C. 2004) (dismissing claims against one defendant
28   where complaint alleging antitrust conspiracy against 22 defendants contained no specific factual allegations as to that one defendant).

## ATTORNEY ATTESTATION

I, Frank M. Pitre, am the ECF User whose ID and password are being used to file the foregoing Opposition to Motion to Dismiss Portions of Plaintiffs' Complaint. In compliance with Local Civil Rule 5-l(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each signatory.

Dated:  May 8, 2023                    By:    */s/ Frank M. Pitre*_____
                                                    Frank M. Pitre