FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
NABILAH A. HOSSAIN (SBN 329689)
nhossain@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
ANDREW W. BRITTON (SBN 340052)
abritton@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

JACK W. WEAVER (SBN 278469)
jack@weltyweaver.com
RACHAEL M. MACHE (SBN 318461)
rachael@weltyweaver.com
**WELTY, WEAVER & CURRIE, P.C.**
3554 Round Barn Boulevard, Suite 300
Santa Rosa, CA 95403
Telephone: (707) 433-4842
Fax: (707) 473-9778

STEPHEN B. MURRAY, JR. (*pro hac vice*)
smurrayjr@murray-lawfirm.com
ARTHUR M. MURRAY (*pro hac vice*)
amurray@murray-lawfirm.com
JESSICA W. HAYES (*pro hac vice*)
jhayes@murray-lawfirm.com
THOMAS M. BEH (*pro hac vice*)
tbeh@murray-lawfirm.com
**MURRAY LAW FIRM**
Hancock Whitney Center
701 Poydras Street, Suite 4250
New Orleans, LA 70139
Telephone: (504) 525-8100
Fax: (504) 584-5249

WILLIAM H. HEDDEN (SBN 88608)
adjustbill@aol.com
1838 15th Street
San Francisco, CA 94103
Telephone: (415) 850-0042

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MELISSA PITKIN and DAN GROUT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation,<br><br>Defendant. | Case No. 3:23-cv-00924-WHO<br><br>**CLASS ACTION**<br><br>**AMENDED COMPLAINT FOR:**<br><br>1. **Declaratory Relief**<br>2. **Breach of Contract**<br>3. **Breach of the Implied Covenant of Good Faith and Fair Dealing**<br>4. **Violations of California's Unfair Competition Law**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## TABLE OF CONTENTS

**I.    INTRODUCTION** ................................................................. **2**

**II.   JURISDICTION AND VENUE** ........................................ **3**

**III.  PARTIES** ....................................................................... **4**

    A.   Plaintiffs ........................................................................ 4

    B.   Defendant ...................................................................... 4

**IV.   AGENCY, JOINT VENTURE, AIDING AND ABETTING, AND CONSPIRACY** .... **5**

**V.    FACTUAL ALLEGATIONS** ............................................. **6**

    A.   California Insurance Code § 2051 ................................ 6

    B.   Section 2051 Case Law ................................................ 8

    C.   Plaintiffs Melissa Pitkin and Dan Grout .................... 9

    D.   Defendant's Systematic Violation of § 2051 ............. 12

**VI.   CLASS ACTION ALLEGATIONS** .................................. **12**

**VII.  TOLLING OF STATUTES OF LIMITATIONS** ................ **17**

**VIII. CLAIMS FOR RELIEF** ................................................... **17**

    **FIRST CLAIM FOR RELIEF** ....................................... 17
    Declaratory Relief

    **SECOND CLAIM FOR RELIEF** ................................... 19
    Breach of Contract

    **THIRD CLAIM FOR RELIEF** ...................................... 19
    Breach of the Covenant of Good Faith and Fair Dealing

    **FOURTH CLAIM FOR RELIEF** ................................... 22
    Violations of the Unfair Competition Law
    Cal. Bus. & Prof. Code § 17200, *et seq.*

**IX.   PRAYER FOR RELIEF** ................................................. **23**

**X.    DEMAND FOR JURY TRIAL** ........................................ **25**

Plaintiffs Melissa Pitkin and Dan Grout (collectively, "Plaintiffs") bring this Amended Complaint, on behalf of themselves and a class of similarly situated California insureds (as defined below), against Defendant State Farm General Insurance Company ("Defendant" or "State Farm"), and allege as follows:[1]

## I.   **INTRODUCTION**

1.      This is an insurance class action brought by California policyholders with State Farm property insurance. Plaintiffs seek declaratory and injunctive relief ordering State Farm to cease its common unlawful policy and practice of calculating actual cash value ("ACV") benefits in a manner that has been prohibited by California law for nearly two decades, and that results in underpayments to policyholders that likely amount to many millions of dollars every year. In addition to declaratory and injunctive relief, this Complaint also seeks damages for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as restitution arising from State Farm's violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

2.      The specific issue in this case is State Farm's policy and practice of unlawfully depreciating sales tax when calculating ACV benefits payments to policyholders. In 2004, the California Legislature prohibited this practice by amending California Insurance Code § 2051, which amendment took effect on January 1, 2005. Since then, California courts have uniformly found that insurers depreciating sales tax when calculating ACV payments violates § 2051.[2] Despite this statutory prohibition and the subsequent case law, State Farm has continued to depreciate sales

_____

[1] On July 25, 2023, this Court entered an Order Granting in Part and Denying in Part Motion to Dismiss ("Order") (Dkt. 40), which denied Defendants' motion to dismiss except in two limited respects. First, the Court granted, with leave to amend, Defendants' request "to dismiss State Farm Fire [and Casualty Company] as a defendant." *Id.* at 1:17-19, 18:2-4. Second, the Court ruled that Plaintiffs' "fifth request for declaratory relief is duplicative of the breach of contract claim." *Id.* at 13:17-22 (referencing Compl., Dkt. 1, ¶ 59(5) & Prayer B(5)). Plaintiffs have opted not to amend allegations on either issue. Instead, the amendments in this Amended Complaint are limited to removing those two issues from the case by removing State Farm Fire and Casualty Company as a defendant, and removing the duplicative request for declaratory relief. A redline version of the Amended Complaint is attached hereto as **Exhibit A**.

[2] "Section" or "§" refers to a section of the California Insurance Code, unless otherwise indicated.

tax on a systematic basis without any lawful justification. In doing so, State Farm is flouting the law and cheating its policyholders, many of whom have just gone through the traumatic experience of losing their home and personal property to fire and other disasters, out of benefits to which they are entitled by law. State Farm's conduct is unlawful, unreasonable, and in bad faith.

3.    Plaintiffs are named insureds under a homeowners property insurance policy issued by Defendant State Farm General Insurance Company. After suffering a covered loss to their Northern California home and its contents from a 2020 wildfire, Plaintiffs submitted a claim to State Farm. Plaintiffs have now twice received ACV benefits payments that were less than what they should have been because State Farm took deductions for depreciation of sales tax in violation of § 2051. Because § 2051 is implied into contracts of property insurance issued in California, these unlawful acts by State Farm were also breaches of Plaintiffs' insurance policy, as well as breaches of the implied covenant of good faith and fair dealing.

4.    Plaintiffs bring this action on behalf of themselves and a class of California property insurance policyholders who have received ACV payments from State Farm in which sales tax was depreciated, thus resulting in State Farm unlawfully retaining, and Plaintiffs and Class Members never being paid, ACV benefits to which Plaintiffs and Class Members are entitled as a matter of California law, and as a matter of contract. By this lawsuit, Plaintiffs seek to hold State Farm to account for its actions, and to recoup for Californians insurance benefits that are rightfully theirs but that State Farm has and continues to unlawfully withhold.

## II.    JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

5.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because some Plaintiffs and putative Class Members are citizens of states different from Defendant, and because the amount in controversy exceeds $5 million, exclusive of costs and interest.

6.    The Court has personal jurisdiction over Defendant because, at all relevant times, Defendant has directed its activities at California, regularly transacted substantial business in

California (including with Plaintiffs and thousands of putative Class Members who are California residents), otherwise maintained systematic and continuous contacts with California, and otherwise purposefully availed itself of the privileges of conducting business in California and of California law. In addition, the insurance policies at issue were entered into and breached in California, and acts and omissions giving rise to this action occurred in California.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because, at all relevant times, Defendant has maintained substantial business operations and engaged in substantial business in this District; because Defendant entered into relevant transactions and received substantial ill-gotten gains and profits from Policyholders who reside in this District; because thousands of putative Class Members either reside in or did relevant business with Defendant in this District; and because a substantial part of the events, acts, and omissions giving rise to this action occurred in this District.

8.      Assignment to the San Francisco Division is proper under this District's Local Civil Rule 3-2(c) and 3-2(d) because a substantial part of the events or omissions giving rise to the claims occurred in Sonoma County, and because a substantial part of the property that is the subject of this action is situated in Sonoma County.

## III.    **PARTIES**

### A.    **Plaintiffs**

9.      Plaintiff Melissa Pitkin is an adult resident of California. Together with her spouse (Plaintiff Daniel Grout), she is a co-owner of her home in Healdsburg, California, and a named insured on a homeowners insurance policy issued by Defendant State Farm General Insurance Company covering loss or damage to her Healdsburg home and to her personal property.

10.     Plaintiff Daniel Grout is an adult resident of California. Together with his spouse (Plaintiff Melissa Pitkin), he is a co-owner of his home in Healdsburg, California, and a named insured on a homeowners insurance policy issued by Defendant State Farm General Insurance Company covering loss or damage to his Healdsburg home and to his personal property.

### B.    **Defendant**

11.     Defendant State Farm General Insurance Company is an Illinois corporation with its principal place of business in Bloomington, Illinois. At all relevant times, this Defendant has been a

wholly owned subsidiary of State Farm Mutual Automobile Insurance Company and has issued property insurance policies in California that are subject to the requirements of § 2051.

12.    Defendant is licensed to issue, and regularly does issue, property insurance in the State of California. Defendant is also licensed to do business, and regularly does significant business, throughout the State of California.

**IV.    AGENCY, JOINT VENTURE, AIDING AND ABETTING, AND CONSPIRACY**

13.    On information and belief, Plaintiffs allege that, at all relevant times herein, Defendant conspired  with currently unidentified co-conspirators in carrying out the wrongful conduct alleged herein, and that all such co-conspirators were Defendant's agents, employees, and/or joint venturers, and were at all times acting within the course and scope of said agency, employment, and/or joint venture.

14.    Defendant and each unidentified co-conspirator took actions that aided and abetted, encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, wrongful goals, and other wrongdoing alleged herein. In taking these actions, Defendant and each unidentified co-conspirator acted with an awareness of his, her, or its (collectively, "their") primary wrongdoing and realized their conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and other wrongdoing. In addition, each act and omission comprising the aforementioned wrongful conduct, wrongful goals, and other wrongdoing was made known to, and ratified by Defendant.

15.    Defendant and each unidentified co-conspirator conspired with each other and with others to perpetrate the unlawful scheme alleged herein on Plaintiffs and Class Members. In doing so, Defendant and each unidentified co-conspirator has committed wrongful acts and omissions while acting within the scope and in furtherance of the conspiracy alleged herein, and with full knowledge of the conspiracy's goals.

16.    Plaintiffs reserve the right to amend this Complaint when they learn the identities of currently unidentified co-conspirators. Plaintiffs intend to sue Defendant and each co-conspirator as participants, alter egos, agents, and conspirators with one another in the wrongful acts, omissions, plans, schemes, and transactions alleged herein.

# V.    FACTUAL ALLEGATIONS

## A.    California Insurance Code § 2051

17.    All insurance issued in the State of California is governed by the California Insurance Code (the "Insurance Code"), which prescribes minimum standards for insurance issued in this state for the protection of policyholders. The specific Insurance Code provision at issue in this action is § 2051, which prescribes minimum standards for the protection of California policyholders as relates to ACV benefits payments under property insurance policies.

18.    Insurers are free to provide insurance in California with terms that are more favorable to policyholders than what is required under the Insurance Code, but policy terms that are less favorable to policyholders are unenforceable as a matter of law. Where California's statutory or decisional law require coverage, an insurer may not circumvent the law by employing contrary contract terms. All of these rules apply to § 2051.

19.    Section 2051 is codified in the part of Insurance Code that governs the measure of indemnity under property insurance policies that insure against loss to real and personal property caused by numerous perils, including but not limited to fire, lightning, windstorm, tornado, and earthquake.

20.    Section 2051, subsection (b), was added to the Insurance Code in 2004 and became effective on January 1, 2005. It was introduced in the state legislature as part of the Homeowners Bill of Rights following the 2003 wildfires in Southern California.

21.    Section 2051, subsection (b), provides:

> Under an open policy that requires payment of actual cash value, the measure of the actual cash value recovery, in whole or partial settlement of the claim, for either a total or partial loss to the structure or its contents, shall be the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less. A deduction for physical depreciation shall apply only to components of a structure that are normally subject to repair and replacement during the useful life of that structure.

22.    All Plaintiffs and putative Class Members suffered a covered loss to real or personal property under "an open policy that requires payment of actual cash value" within the meaning of

§ 2051(b). An "open policy" is one in which the value of the insured property is not agreed upon in advance, but is left to ascertained at time of loss. All policies at issue in this putative class action (the "Relevant Policies," as defined below) are open policies within the meaning of § 2051(b).

23.    None of the Plaintiffs or putative Class Members received payment from their insurer equal to the applicable "policy limit" within the meaning of § 2051(b).

24.    When ACV benefits payments under a property insurance policy are less than the applicable policy limit, Section 2051(b) provides that ACV payments "shall" be based on the following two-step calculation: (1) "the amount it would cost the insured to repair, rebuild, or replace" the damaged or lost property, (2) minus "a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury."

25.    At step one, "the amount it would cost the insured to repair, rebuild, or replace" includes any sales tax that the insured would have to pay to obtain goods and services necessary to repair, rebuild, or replace the damaged or lost property.

26.    At step two, insurers are limited to taking only "physical depreciation" based on the "condition" of the lost or damaged property at the time of the loss. This prohibits Defendant and other property insurers from depreciating sales tax when calculating ACV payments because sales tax is neither "physical" in nature, nor is sales tax connected to the "condition" of the lost or damaged property. Rather, sales tax is connected to the replacement property—i.e., to the goods or services necessary to repair, rebuild, or replace the lost or damaged property.

27.    Consider the following hypothetical example for purposes of illustration: A named insured with a property insurance policy, which covers loss or damage to personal property and is subject to the requirements of § 2051, owns a couch that is a few years old. The policyholder then suffers a housefire that results in the couch being destroyed. The policyholder and the insurer agree that the damage to the couch is a covered loss, and that policy entitles the policyholder to ACV benefits. Proceeding under the two-step calculation set forth in § 2051(b), the insurer and the policyholder first agree that replacing the couch would cost $1,000. Second, they further agree that the replacement cost should be depreciated by 50% to reflect the age and condition of the couch at

1    the time of the loss. Accordingly, the insurer and the policyholder thus far agree that the ACV

2    payment for the couch should be $500.

3        28.    However, our hypothetical insurer and policyholder disagree about one thing:

4    whether sales tax on the new couch can be depreciated. They both agree that sales tax is part of the

5    total replacement cost for the couch and that sales tax on couches in the policyholder's jurisdiction

6    is 10%, which means $100 in sales tax. However, the insurer takes the position that it can

7    depreciate the sales tax by the same 50% applicable to the couch (resulting in an ACV payment of

8    $500 + $50 = $550), whereas the policyholder takes the position that § 2051 prohibits the

9    depreciation of sales tax (requiring an ACV payment of $500 + $100 = $600). The question is

10   therefore whether § 2051 permits the depreciation of the sales tax—i.e., whether the policyholder in

11   the foregoing hypothetical example is entitled to an ACV payment of $550 or $600 in connection

12   with the loss of her couch. That is the central dispute in this action.

13       **B.    Section 2051 Case Law**

14       29.    In 2017, the California Court of Appeal faced the question of whether § 2051(b) was

15   mandatory or merely optional for insurers. The Court of Appeal unequivocally held, in a published

16   decision, that § 2051(b) provides "mandatory minimum coverage" that insurers may not contract

17   around. *California Fair Plan Ass'n v. Garnes*, 11 Cal.App.5th 1276, 1308-09 (May 26, 2017), *as

18   modified on denial of reh'g* (June 14, 2017), *rev. denied* (Aug. 9, 2017) ("*Garnes*"). On information

19   and belief, Defendant was aware of the *Garnes* decision, and/or the substance of the holdings and

20   reasoning of the *Garnes* decision, at all times relevant to this litigation.

21       30.    The same month that the California Court of Appeal decided *Garnes*, the United

22   States District Court for the Northern District of California, in an insurance class action, faced the

23   question of whether § 2051(b) prohibited or permitted a Hartford-affiliated insurer's practice of

24   depreciating sales tax when calculating ACV payments. Based on reasoning indicating the court's

25   firmly held view that the plain meaning of § 2051(b) prohibits the depreciation of sales tax, the

26   court denied Hartford's motion for summary judgment on that issue, and granted the policyholder's

27   motion for class certification. *Johnson v. Hartford Cas. Ins. Co.*, No. 15-cv-04138-WHO, 2017 WL

28   2224828, at *7-8, *17 (N.D. Cal. May 22, 2017) ("*Johnson*"). On information and belief,

8

AMENDED CLASS ACTION COMPLAINT

Defendant was aware of the *Johnson* decision, and/or the substance of the holdings and reasoning of the *Johnson* decision, at all times relevant to this litigation.

31.    Approximately two and half years after *Johnson*, the United States District Court for the Central District of California, in the context of ruling on a motion to dismiss a putative insurance class action, was again faced with an insurer's arguments that § 2051 and a related regulation, 10 Cal. Code Regs. § 2695.9(f), "do not make it unlawful to depreciate" sales tax in calculating ACV payments. Denying the motion to dismiss in relevant part, the court expressly rejected the insurer's arguments: "The Court disagrees with [the insurer's] reading of the statute on its face. … A plain reading of both the statute and the regulation appears to indicate that any actual cash value payment made under a property insurance policy should not depreciate … expenses that are 'not a component of physical depreciation'—as sales tax … appear[s] to be." *Maison D'Artiste v. Am. Int'l Grp., Inc.*, No. 2:19-CV-07574-SVW-E, 2020 WL 4037219, at *3 (C.D. Cal. Jan. 23, 2020) ("*Maison D'Artiste*"). On information and belief, Defendant was aware of the *Maison D'Artiste* decision, and/or the substance of the holdings and reasoning of the *Maison D'Artiste* decision, at all times relevant to this litigation.

32.    On information and belief, all post-2004 case law on the merits of whether § 2051(b) permits depreciation of sales tax in calculating ACV payments has held or otherwise indicated that § 2051(b) does not permit such depreciation. On information and belief, Defendant was aware of the state of the relevant case law at all times relevant to this litigation.

## C.    Plaintiffs Melissa Pitkin and Dan Grout

33.    Plaintiffs Melissa Pitkin and Dan Grout own a home in the community of Healdsburg in Sonoma County, California. They have long insured their home and personal property under an insurance policy issued by Defendant State Farm General Insurance Company, Policy No. 57-C4-6752-1 (the "Policy"). The Policy is a common form policy titled "State Farm Homeowners Policy" (Form No. FP-7955 CA).

34.    The Policy provides dwelling coverage that insures Plaintiffs' home against loss and damage from all risks (including fire), subject to limited exclusions. It also insures Plaintiffs' personal property "while it is anywhere in the world" against losses from a long list of named

perils, including fire, smoke, water, vandalism, and theft. Under the Policy, if Plaintiffs suffer covered loss or damage to their home or personal property, Defendant State Farm General Insurance Company must pay Plaintiffs actual cash value benefits within the meaning of § 2051.

35.    In 2019, Plaintiffs renewed their Policy for the one-year term of October 6, 2019, through October 6, 2020. During that Policy term, on August 20, 2020, Plaintiffs suffered a covered loss to their insured home and personal property when the Walbridge Fire partially destroyed their home and its contents. Shortly thereafter, in or about late August 2020, Plaintiffs submitted a claim under the Policy to Defendant State Farm General Insurance Company seeking coverage for the damage to their real and personal property (the "August 2020 claim").

36.    On or about December 16, 2022, in connection with Plaintiffs' August 2020 claim, Defendant State Farm General Insurance Company paid Plaintiffs ACV benefits for certain personal property losses and sent Plaintiffs a Loss Payment Worksheet showing that Plaintiffs' ACV benefits payments for nearly 2,000 items of personal property had been reduced due to State Farm having depreciated sales tax, in violation of § 2051.

37.    On or about January 24, 2023, in connection with Plaintiffs' August 2020 claim, Defendant State Farm General Insurance Company paid Plaintiffs additional ACV benefits for certain personal property losses and sent Plaintiffs a Loss Payment Worksheet showing that Plaintiffs' ACV benefits payments had again been reduced due to State Farm having depreciated sales tax, in violation of § 2051.

38.    On information and belief, Defendant State Farm General Insurance Company's practice of depreciating sales tax in calculating ACV benefits paid to Plaintiffs reflects a common and uniform corporate policy and practice by Defendant of depreciating sales tax in calculating ACV benefits paid to State Farm property insurance policyholders, in violation of § 2051. On information and belief, Defendant has continuously engaged in this common policy and practice from January 1, 2005, to the present, in violation of § 2051.

39.    After the Walbridge Fire, Plaintiffs continued to renew their Policy with State Farm, which remains in effect today. Plaintiffs intend to continue insuring their real and personal property with State Farm for the foreseeable future, and have no intention of changing insurance carriers.

40.     There are numerous independent ways in which Plaintiffs are realistically threatened with near-term future injury from a repetition of Defendant's conduct of unlawfully depreciating sales tax when calculating ACV payments. Most immediately, aspects of Plaintiffs' August 2020 claim remain open, such that Plaintiffs reasonably expect to receive additional payments of ACV benefits after the filing of this Complaint. To date, Plaintiffs have twice received ACV payments that reflect unlawful depreciation of sales tax, and it is thus likely that future ACV payments that Plaintiffs receive will likewise reflect unlawful depreciation of sales tax.

41.     Beyond the settlement of Plaintiffs' August 2020 claim, Plaintiffs' insured residence in Healdsburg is in an area that the Sonoma County Wildfire Hazard Index, a government-funded project developed by a team of experts with input from Sonoma County staff, classifies as having a high to very high risk of wildfire ignition. Plaintiffs' home is also surrounded by heavily wooded areas, which further increases the risk of a nearby wildfire damaging their property. Moreover, Healdsburg and Sonoma County have a recent history of numerous large and catastrophic wildfires. For example, in October 2017, the North Bay Fires—including the Atlas Fire (51,624 acres), Tubbs Fire (36,807 acres), Nuns Fire (56,556 acres), 37 Fire (1,660 acres), and Pocket Fire (17,357 acres)—burned large portions of Sonoma County. In 2019, the Kincade Fire burned over 77,000 acres in Sonoma County. In 2020, the Glass Fire (67,000 acres) and LNU Lightening Complex Fires (363,220 acres), which included the Walbridge Fire (55,209 acres) and Meyers Fire (2,360), also burned large portions of Sonoma County. Further, there is a well-established expert consensus that such wildfires in California, including in Sonoma County, are highly likely to be more frequent and more severe due to the effects of various factors, including drought and climate change. As a result, Plaintiffs are realistically threatened by wildfire and related smoke and ash further causing covered loss or damage to their insured home and personal property under the Policy in the coming years, and thus are realistically threatened with future injury from State Farm's conduct of depreciating sales tax when calculating ACV payments, in violation of California law and in breach of their Policy.

42.     Separate and apart from the threat of covered loss or damage to Plaintiffs' insured property from wildfire and related smoke and ash, Plaintiffs are likely to suffer some kind of

covered loss or damage to their home or personal property in the coming years, including because the Policy covers loss or damage from fire, smoke, water, theft, vandalism, and many other perils to personal property they own or use "while it is anywhere in the world." Plaintiffs are thus realistically threatened by a repetition of State Farm's conduct of depreciating sales tax in calculating ACV payments, in violation of California law and in breach of their Policy.

**D.      Defendant's Systematic Violation of § 2051**

43.      As a result of Defendant State Farm General Insurance Company's systematic underpayments of ACV benefits in violation of § 2051 and in breach of the Policy, Plaintiffs have not been fully indemnified for all covered loss or damage to their property and have been, and continue to be, deprived of contractual benefits to which they are entitled.

44.      On information and belief, Defendant State Farm General Insurance Company's practice of depreciating sales tax in calculating ACV benefits is part of a common and systematic policy and practice by Defendant to deprive State Farm property insurance policyholders, including Plaintiffs and putative Class Members, of contractual benefits to which they are entitled as matter of California law and as a matter of contract.

**VI.      CLASS ACTION ALLEGATIONS**

45.      This action is brought by Plaintiffs individually and as a class action pursuant to Federal Rule of Civil Procedure ("Rule") 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4), on behalf of the proposed class set forth below (the "Class").

46.      Plaintiffs seek all relief sought herein on behalf of the following Class: "All persons who, at any time during the applicable limitations period, were a named insured under a property insurance policy issued in California by Defendant, who suffered a covered loss to real or personal property for which they received payment of actual cash value (ACV) benefits that were reduced due to depreciation of sales tax, and who were paid or are reasonably certain to be paid benefits in an amount that is less than the applicable policy limits."

47.      Excluded from the Class is Defendant (together with its employees, agents, and assigns) and any members of the judiciary to whom this case is assigned, their respective court staff, and the counsel of any party to this litigation.

48.     Plaintiffs reserve the right under Rule 23 to amend or modify the Class descriptions and to add one or more subclasses based on information obtained during this litigation.

49.     All persons who are members of the proposed Class ("Class Members") have suffered injury during the applicable limitations period, or are realistically threatened with future injury, caused by Defendant's wrongful acts and omissions alleged herein.

50.     This action is properly brought and may be properly maintained as a class action against Defendant pursuant to the following provisions of Rule 23:

a.     **Numerosity (Rule 23(a)(1)):** There are tens of thousands of Class Members. Defendant has significant market share in the market for issuing property insurance in the State of California, which has a population of nearly 40 million people. Defendant pays out billions of dollars of claims to its property insurance policyholders every year, and actual cash value payments are a standard feature of property insurance policies issued in California by Defendant. Thus, the Class is sufficiently numerous that joinder of all members is impracticable. The identities and addresses of the Class Members can be readily ascertained from business records maintained by Defendant and its affiliated entities.

b.     **Commonality and Predominance (Rule 23(a)(2) and 23(b)(3)):** All Class Members entered into property insurance policies issued in California by Defendant, all such policies provide for payment of ACV benefits within the meaning of § 2051, all Class Members were actually paid ACV benefits under their respective policies for covered loss or damage to real or personal property, and the amount of such ACV benefits payments reflected a deduction for depreciation of sales tax. The claims of all Plaintiffs and Class Members thus involve common questions of law and fact, including but not limited to the following:

i.     Whether deducting depreciation for sales tax in calculating and paying ACV benefits under property insurance policies issued in California is prohibited under California insurance law;

ii.     Whether Defendant has a policy and/or practice of deducting depreciation for sales tax in calculating and paying ACV benefits under property insurance policies issued in California;

iii.   Whether Defendant has a common policy and/or practice of deducting depreciation for sales tax in calculating and paying ACV benefits under property insurance policies issued in California;

iv.   Whether Plaintiffs and Class Members are entitled to declaratory relief;

v.   Whether Defendant breached its contractual obligations to Plaintiffs and Class Members;

vi.   Whether Defendant breached its implied covenant of good faith and fair dealing to Plaintiffs and Class Members;

vii.   Whether Defendant has engaged in unlawful business acts or practices in its dealings with Plaintiffs and Class Members within the meaning California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*;

viii.   Whether Defendant has engaged in unfair business acts or practices in its dealings with Plaintiffs and Class Members within the meaning California's UCL;

ix.   Whether Plaintiffs and Class Members have been injured by Defendant's conduct complained of herein;

x.   Whether the Court should enter declaratory relief in favor of Plaintiffs and Class Members.

xi.   Whether Plaintiffs or Class Members are entitled injunctive relief;

xii.   Whether Plaintiffs and Class Members are entitled to compensatory, punitive, or other damages; and

xiii.   Whether Plaintiffs and Class Members are entitled to restitution.

c.   **Typicality (Rule 23(a)(3)):** Plaintiffs' claims are typical of the claims of Class Members. Plaintiffs, like all other Class Members, sustained economic and other injury as a result of Defendant's systematic practice of deducting depreciation for sales tax in calculating and paying ACV benefits under California property insurance policies, in violation of California law and in breach of the insurance policies. Plaintiffs and Class Members were and are similarly or identically harmed by the same wrongful conduct of Defendant.

d.      **Adequacy of Representation (Rule 23(a)(4)):** Plaintiffs will fairly and adequately represent and protect the interests of all Class Members and have retained competent and qualified counsel with extensive experience in insurance coverage disputes and class action litigation. There are no material conflicts between the claims of the Plaintiffs and the Class Members that would make class certification inappropriate. Counsel for Plaintiffs and the putative Class will vigorously prosecute the claims of all putative Class Members and are willing and prepared to serve the Court and the putative Class in a representative capacity.

51.     This action is properly brought and may be properly maintained as a class action pursuant to Rule 23(b) for the following reasons:

a.      **Class Action Status (Rule 23(b)(1)):** Class action status is appropriate under Rule 23(b)(1)(A) because prosecution of separate actions by each of the thousands of persons who are Class Members would create a risk of establishing incompatible standards of conduct for Defendant and inconsistent results for the Class Members. Class action status is also appropriate under Rule 23(b)(1)(B) because prosecution of separate actions by individual Class Members would create a risk of adjudication with respect to those individual Class Members that, as a practical matter, would be dispositive of the interests of other Class Members or would substantially impair or impede those other Class Members' ability to protect their interests.

b.      **Declaratory and Injunctive Relief (Rule 23(b)(2)):** Certification under Rule 23(b)(2) is appropriate because Defendant, on the same or substantively similar grounds, violated Class Members' rights to receive payment of ACV benefits without deduction for depreciation of sales tax, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

c.      **Predominance and Superiority (Rule 23(b)(3)):** Certification of the Class under Rule 23(b)(3) is appropriate because questions of law or fact common to Class Members, including but not limited to those questions listed above, predominate over any questions affecting only individual members of the Class, and because class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy, for the following non-exhaustive reasons:

i. Given the various legal issues involved in this action, the expense of litigating the claims, and the relatively small amounts of money at issue for each Class Member, few, if any, Class Members would decide to seek, or could afford to seek, legal redress for the wrongs that Defendant has committed against them individually, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

ii. Once Defendant's liability has been adjudicated for the wrongful conduct alleged herein, the value of all Class Members' claims can be readily determined by the Court based on Defendant's own claims settlement documents;

iii. This action will ensure an orderly and expeditious administration of Class Members' claims and foster economies of time, effort, and expense, and ensure uniformity of decisions;

iv. Without a class action, Class Members will continue to suffer injury, and Defendant's unlawful conduct will continue, such that Defendant will continue to retain and enjoy substantial benefits from its unlawful conduct at the direct expense of Class Members;

v. This action does not present any undue difficulties that would impede its management by the Court as a class action; and

vi. The injuries suffered by individual Class Members are relatively small compared to the burden and expense of individual prosecution needed to address Defendant's wrongful conduct alleged herein. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

52.     **Issue Certification (Rule 23(c)(4)):** Certification of issues of liability and declaratory, equitable, and legal relief under Rule 23(c)(4) is appropriate because these issues are common to all Class Members, including but not limited to whether deducting depreciation for sales tax in calculating and paying ACV benefits under property insurance policies issued in California is prohibited under California insurance law, whether Defendant has a policy or practice or making such deductions, and whether such deductions have harmed Class Members. Resolution of such common issues on a class-wide basis will materially advance the disposition of the litigation as a whole.

53.     The Class Members are ascertainable from Defendant's own records, and there is a well-defined community of interest in the questions of law or fact alleged herein since Defendant violated the rights of each Class Member in the same or similar fashion.

**VII.    TOLLING OF STATUTES OF LIMITATIONS**

54.     To the extent that there are any statutes of limitations applicable to Plaintiffs' and Class Members' claims, and in light of the Defendant's alleged inequitable and blameworthy conduct set forth above, the running of the limitations periods have been tolled by various doctrines and rules, including but not limited to equitable tolling, the delayed discovery rule, and tolling of statutes of limitation for civil causes of action under emergency rules related to the Covid-19 pandemic.

**VIII.   CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Declaratory Relief**

55.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 as though fully set forth herein.

56.     An actual controversy has arisen and now exists between Plaintiffs and Class Members, on the one hand, and Defendant, on the other hand, concerning their respective rights and duties under California insurance law, and under Plaintiffs' and Class Members' property insurance policies issued by Defendant that provide for the payment of ACV benefits within the meaning of §

2051, and under which Defendant paid Plaintiffs and Class Members ACV benefits that reflected a deduction for depreciation of sales tax (the "Relevant Policies").

57.    Defendant contends that it is permitted under § 2051 to deduct depreciation for sales tax in calculating ACV benefits for covered loss or damage to real and personal property under the Relevant Policies. Plaintiffs and Class Members take the opposite position—i.e., that Defendant is prohibited under § 2051 from deducting depreciation for sales tax in calculating ACV benefits for covered loss or damage to real and personal property under the Relevant Policies. Plaintiffs and Class Members further contend that Defendant's deducting of depreciation for sales tax from ACV payments not only violated California insurance law, but also materially breach the express and implied terms of the Relevant Policies, and constitute acts and practices that are unlawful and unfair within the meaning of California's UCL.

58.    So that future controversies may be avoided, Plaintiffs, on behalf of themselves and all Class Members, seek under 28 U.S.C. § 2201 a declaration of the parties' respective rights and duties under California law and under the Relevant Policies, and request that the Court issue an order declaring: (1) that Cal. Ins. Code § 2051 provides mandatory minimum standards for calculating ACV payments under California insurance policies insuring real or personal property; (2) that any terms on the face of a California property insurance policy that would result is ACV payments that are less favorable to policyholders (i.e., lower in amount) than what is required under § 2051 are unenforceable as a matter of law, and that policy terms be construed consistent with the requirements of § 2051; (3) that "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured" under § 2051(b) includes sales tax on goods and services that the insured would reasonably need to purchase to repair, rebuild, or replace the thing lost or injured; (4) that § 2051 prohibits the insurer from depreciating sales tax on such goods and services in calculating ACV benefits payable to an insured; and (5) such other and further declaratory relief that the Court deems just and proper.

59.    Plaintiffs, on behalf of themselves and all Class Members, further seek under 28 U.S.C. § 2202 preliminary and permanent injunctive relief as set forth below in the Prayer for Relief, as well as any further relief that the Court deems necessary or proper.

60.     Plaintiffs and other Class Members are entitled to injunctive and other equitable relief because they have no adequate remedy at law, because they remain State Farm insureds (most commonly under a Relevant Policy or the renewal of a Relevant Policy), because they intend to continue insuring their real and property through State Farm for the foreseeable future, and because they are realistically threatened by a repetition of State Farm's conduct of depreciating sales tax in calculating ACV payments in violation of California law and in breach of the Relevant Policies.

**SECOND CLAIM FOR RELIEF**

**Breach of Contract**

61.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 60 as though fully set forth herein.

62.     The Relevant Policies are valid contracts that exist between Plaintiffs and Class Members, on the one hand, and Defendant, on the other hand.

63.     At all relevant times, Plaintiffs and Class Members complied with all duties and conditions of the Relevant Policies, except those which are illegal, excused, waived, or inapplicable for any other legally valid reason.

64.     Defendant breached the Relevant Policies by failing to pay Plaintiffs and Class Members ACV benefits, in connection with covered loss or damage to real or personal property, without any deduction for depreciation of sales tax.

65.     As a result of Defendant's breaches, Plaintiffs and Class Members have foreseeably suffered damages in an amount to be determined at trial. Plaintiffs and Class Members seek all recoverable damages, including but not limited to actual damages (at minimum, the full amount of all deductions of depreciation of sales tax), damages for lost access to and use of money, lost time value of money, consequential damages flowing from the breach, interest on all damages, and their litigation costs and attorneys' fees.

**THIRD CLAIM FOR RELIEF**

**Breach of the Covenant of Good Faith and Fair Dealing**

66.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 65 as though fully set forth herein.

AMENDED CLASS ACTION COMPLAINT

67.     The Relevant Policies are valid contracts that exist between Plaintiffs and Class Members, on the one hand, and Defendant, on the other hand.

68.     There is a covenant of good faith and fair dealing implied in every contract, including in each of the Relevant Policies. This implied covenant requires each contracting party to refrain from doing anything to injure the right of the other party to receive the benefits of the Relevant Policy. To fulfill its covenant, Defendant must give at least as much consideration to the interests of Plaintiffs and Class Members as it gives to its own interests.

69.     Defendant's wrongful conduct alleged herein constitutes a breach of the implied covenant of good faith and fair dealing. Defendant breached that covenant by, *inter alia*, consciously, knowingly, and unreasonably refusing or failing to make prompt payment of ACV benefits owed to Plaintiffs and Class Members under the Relevant Policies without deduction for depreciation of sales tax. Defendant's breach arose from its conscious, knowing, and unreasonable policy or practice of depreciating sales tax in calculating ACV benefits under California property insurance policies, despite having actual or constructive knowledge that such depreciation of sales tax was not lawful or reasonably supportable under § 2051 or case law interpreting § 2051, and indeed was contrary to the plain meaning of § 2051, contrary to case law holding that § 2051 prohibits such depreciation of sales tax, and contrary to case law holding that § 2051's provisions are mandatory and render unenforceable any contrary policy terms that are less favorable to the insured.

70.     Defendant's wrongful conduct alleged herein was unreasonable, without proper cause, and included unfair and deceptive acts or practices and unlawful and unfair methods of competition as part of a policy and/or practice of improper insurance claims settlement administration. Such unfair and deceptive acts or practices evidencing Defendant's breaches of the implied covenant of good faith and fair dealing include, but are not limited to, violations of numerous provisions of Cal. Ins. Code § 790.03(h) (*e.g.*, "(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies," "(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear," "(6) Compelling insureds to institute

litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered," and "(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement")" and numerous provisions of California's Fair Claims Settlement Practices Regulations (*e.g.*, 10 Cal. Code. Regs. §§ 2695.1(a)(1), 2695.1(a)(2), 2695.4(a) and 2695.7(b)(1)).

71.     If Defendant's wrongful conduct continues, it will frustrate and deprive Plaintiffs and Class Members of the reasonably expected benefits of the Relevant Policies, including all present and future renewals of the Relevant Policies.

72.     As a direct and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have foreseeably suffered damages in an amount to be determined at trial. Plaintiffs and Class Members seek all recoverable damages, including but not limited to actual damages, damages for lost access to and use of money, lost time value of money, consequential damages flowing from the breach, tort damages under Cal. Civ. Code § 3333, interest on all damages, and their litigation costs and attorneys' fees.

73.     Defendant's wrongful conduct alleged herein, including its breaches of the implied covenant of good faith and fair detailing, was unreasonable, malicious, fraudulent, and oppressive. Further, contract damages alone would be inadequate to compensate Plaintiffs and Class Members for Defendant's unlawful failure or refusal to pay required ACV benefits without deduction for depreciation of sales tax, and limiting Plaintiffs' and Class Members' recovery to contract damages would not be an adequate deterrent to dissuade Defendant and other property insurers in California from systematically and unlawfully breaching their contracts of insurance by depreciating sales tax in calculating ACV payments. Plaintiffs and Class Members are thus entitled to, and seek, an award of punitive and exemplary damages under Cal. Civ. Code § 3294, in an amount to be determined at trial. Plaintiffs and Class Members further seek an order requiring Defendant to disgorge all profits that they received in connection with their wrongful conduct alleged herein, including but not

1   limited to all profits Defendant derived from interest paid or investment returns made on any

2   monies that Defendant was required but failed to pay Plaintiffs and Class Members.

3                               **FOURTH CLAIM FOR RELIEF**

4                       **Violations of the Unfair Competition Law**

5                       **Cal. Bus. & Prof. Code § 17200, *et seq.***

6          74.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 73 as though

7   fully set forth herein.

8          75.     Plaintiffs and Class Members bring claims against Defendant under California's

9   Unfair Competition Law ("UCL"), which prohibits Defendant from engaging in any "business act

10  or practice" that is "unlawful" or "unfair." Cal. Bus. & Prof. Code § 17200, *et seq.*

11         76.     Defendant's conduct alleged herein was and is "unlawful" under the UCL because it

12  (a) violates Cal. Ins. Code § 2051; (b) violates 10 Cal. Code Regs. § 2695.9(f); (c) violates Cal. Ins.

13  Code § 790.03(a) by "[m]aking, issuing, circulating, or causing to be made, issued or circulated, any

14  estimate, illustration, circular, or statement misrepresenting the terms of any policy issued … or the

15  benefits or advantages promised thereby"; (d) violates numerous provisions of Cal. Ins. Code

16  § 790.03(h), including but not limited to "(3) Failing to adopt and implement reasonable standards

17  for the prompt investigation and processing of claims arising under insurance policies," "(5) Not

18  attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which

19  liability has become reasonably clear," "(6) Compelling insureds to institute litigation to recover

20  amounts due under an insurance policy by offering substantially less than the amounts ultimately

21  recovered in actions brought by the insureds, when the insureds have made claims for amounts

22  reasonably similar to the amounts ultimately recovered," and "(13) Failing to provide promptly a

23  reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or

24  applicable law, for the denial of a claim or for the offer of a compromise settlement"; and

25  (e) violates numerous provisions of California's Fair Claims Settlement Practices Regulations,

26  including but not limited to 10 Cal. Code. Regs. §§ 2695.1(a)(1), 2695.1(a)(2), 2695.4(a), and

27  2695.7(b)(1).

28

77.     Defendant's conduct of employing a pre-determined scheme to reduce ACV benefits payments to Plaintiffs and Class Members below the minimum amount required by California law, as well as all Defendant's other wrongful conduct alleged herein, also was and is "unfair" under the UCL because it violated and continues to violate established public policy of the State of California, and because it was and is immoral, unethical, oppressive, or unscrupulous and causes injury to Plaintiffs, Class Members, and other consumers which outweighs its benefits.

78.     On information and belief, Defendant's unlawful and unfair business practices and acts under the UCL are continuing in nature and are the result of a systematic, coordinated, and ongoing policy and practice engaged in by Defendant.

79.     Plaintiffs and Class Members have no adequate remedy at law and thus, on behalf of themselves and the public, seek preliminary and permanent injunction relief against Defendant as set forth below in the Prayer for Relief.

80.     Plaintiffs and Class Members further seek, whether in the alternative or in addition to damages sought in this Complaint under other claims for relief, all available restitution in an amount to be determined at trial, including but not limited to restitution based on wrongfully withheld policy benefits and/or Plaintiffs' and Class Members' overpayment of policy premiums based on their reasonable understanding at the time of contracting that Defendant did not intend to cheat them out of policy benefits required to be paid under California insurance law, together with any money that Defendant made on such wrongfully withheld policy benefits and overpaid policy premiums, as well as all available pre- and post-judgment interest.

81.     Plaintiffs and Class Members further seek an award of their litigation costs, expert fees, and attorneys' fees under Cal. Code Civ. Proc. § 1021.5 and any other applicable law.

## IX.   **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, individually and on behalf of all Class Members, pray for the following relief against Defendant:

A.     An Order certifying this action to proceed on behalf of the Class, and appointing Plaintiffs and the counsel listed below to represent the Class;

B.     A declaratory judgment declaring (1) that Cal. Ins. Code § 2051 provides mandatory

minimum standards for calculating ACV payments under California insurance policies insuring real or personal property; (2) that any terms on the face of a California property insurance policy that would result is ACV payments that are less favorable to policyholders (i.e., lower in amount) than what is required under § 2051 are unenforceable as a matter of law, and that the policy terms must be construed consistent with the requirements of § 2051; (3) that "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured" under § 2051(b) includes sales tax on goods and services that the insured would reasonably need to purchase to repair, rebuild, or replace the thing lost or injured; (4) that § 2051 prohibits the insurer from depreciating sales tax on such goods and services in calculating ACV benefits payable to the insured; and (5) such other and further declaratory relief as the Court deems just and proper.

C.      Preliminary and permanent injunctive relief, including one or more orders (1) enjoining Defendant from enforcing any terms on the face of a California property insurance policy that purport to allow Defendant to depreciate sales tax in calculating ACV benefits payments, or that otherwise purport to allow Defendant to pay ACV benefits that are less favorable to the insured than what is required under § 2051; (2) enjoining Defendant from omitting sales tax on goods and services that the insured would reasonably need to purchase to repair, rebuild, or replace the thing lost or injured from Defendant's calculation of "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured" under § 2051(b); (3) enjoining Defendant from depreciating sales tax on such goods and services in calculating ACV benefits payable to the insured; (4) providing other injunctive relief that Plaintiffs and Class Members may more precisely specify at an appropriate later stage of this litigation; and (5) providing such other and further injunctive relief as the Court deems just and proper.

D.      All available damages, including actual, compensatory, consequential, punitive, exemplary, and any other available damages, in an amount to be determined at trial;

E.      All available restitution, in an amount to be determined at trial;

F.      Pre- and post-judgment interest on any damages, restitution, or other monetary relief awarded in Plaintiffs' and Class Members' favor;

1        G.     Plaintiffs' and Class Members' attorneys' fees, expert witness fees, and other costs

2    recoverable under Cal. Code Civ. Proc. § 1021.5 or any other applicable law; and

3        H.     Such other and further relief that the Court deems just and proper.

4    **X.**     **DEMAND FOR JURY TRIAL**

5        Plaintiffs demand trial by jury of all claims and causes of action so triable.

6

7                         Respectfully submitted,

8    Dated:  August 4, 2023          **COTCHETT, PITRE & McCARTHY, LLP**

9                         By:    _/s/ Frank M. Pitre_____

10                               FRANK M. PITRE
                                 NABILAH A. HOSSAIN

11                               ANDREW F. KIRTLEY
                                 ANDREW W. BRITTON

12

13   Dated:  August 4, 2023          **WELTY, WEAVER & CURRIE, P.C.**

14                        By:    _/s/ Jack W. Weaver_____
                                 JACK W. WEAVER

15                               RACHAEL MACHE

16   Dated:  August 4, 2023          **MURRAY LAW FIRM**

17                        By:    _/s/ Stephen B. Murray, Jr.____
                                 STEPHEN B. MURRAY, JR.

18                               ARTHUR M. MURRAY

19                               JESSICA W. HAYES
                                 THOMAS M. BEH

20

21   Dated:  August 4, 2023          By:    _/s/ William H. Hedden_____

22                               WILLIAM H. HEDDEN

23

                          ***Attorneys for Plaintiffs and the Proposed Class***

24

25

26

27

28

AMENDED CLASS ACTION COMPLAINT

**ATTORNEY ATTESTATION**

I, Frank M. Pitre, am the ECF User whose ID and password are being used to file the foregoing Amended Complaint. In compliance with Civil Local Rule 5-l(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each signatory.


Dated:  August 4, 2023                          By:    */s/ Frank M. Pitre*
                                                              Frank M. Pitre