SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JENNIFER M. HOFFMAN, Cal. Bar No. 240600
ANDRE J. CRONTHALL, Cal. Bar No. 117088
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone:    213.620.1780
E-mail:        jhoffman@sheppard.com
               acronthall@sheppard.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ANNA S. McLEAN, Cal. Bar No. 142233
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
E-mail:        amclean@sheppard.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JEFFREY S. CROWE, Cal. Bar No. 216055
KATHERINE C. SAMPLE, Cal. Bar No. 259325
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
Telephone:    714.424.8231
E-mail:        jcrowe@sheppard.com
               ksample@sheppard.com

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MELISSA PITKIN and DAN GROUT, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation,<br><br>                Defendant. | Case No. 3:23-cv-00924-WHO<br><br>**CLASS ACTION**<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTIONS IN LIMINE**<br><br>FAC Filed:    August 4, 2023<br>Trial Date:    September 8, 2026<br>Crtrm.:        2, 17th Floor<br>Judge:        Hon. William H. Orrick |

# TABLE OF CONTENTS

Page

MOTIONS IN LIMINE ...........................................................................................................1

    A.    Motion *in Limine* No. 1 To Preclude Plaintiffs from Arguing that State Farm Should Have Produced Newer or More Information Re Potential Class Member Claims ...........................................................................................1

        1.    No Duty to Volunteer the Extensive Information Plaintiffs Need Exists ......................................................................................................2

        2.    Rule 403 Independently Bars This Argument................................................2

        3.    There Is No Basis for a Missing-Evidence or Adverse-Inference Argument.......................................................................................................3

        4.    Discovery Grievances Belong to the Court, Not the Jury ............................3

    B.    Motion *in Limine* No. 2 To Exclude Evidence or Testimony Regarding The "Sales Tax Depreciation" Column in the XactContents® Portion of the Combined *Pitkin* Dataset...............................................................................4

        1.    The Combined *Pitkin* Dataset is an Estimating Artifact, *Not* the Claim Record.............................................................................................5

        2.    The "Sales Tax Depreciation" Column Is Unauthenticated and Irrelevant Because It Does Not Reflect Settlement Basis .............................6

        3.    The Column Should Be Excluded Under Rule 403 Because Its Misleading Label Invites the Jury To Assume Facts the Data Cannot Show.................................................................................................8

        4.    The Column Should Be Excluded Because It Lacks Foundation ..................9

    C.    Motion in *Limine* No. 3 to exclude Irrelevant and Prejudicial Family Photos.........10

    D.    Motion *in Limine* No. 4 to Exclude Evidence or Argument Regarding a Standalone Claim for Attorneys' Fees Under Section 1021.5 ...............................12

    E.    Motion *in Limine* No. 5 to Preclude Evidence or Argument Re Prejudgment Interest......................................................................................................15

    F.    Motion *in Limine* No. 6 to Preclude Evidence or Argument Regarding the Court's Summary Judgment Findings of Unfairness and Unlawfulness Under the UCL ...............................................................................................17

    G.    Motion *in Limine* No. 7 to Preclude Evidence or Argument Suggesting a Violation of the Fair Claims Settlement Practices Regulations ...............................18

    H.    Motion *in Limine* No. 8 To Exclude Evidence or Argument Regarding the Unrelated CDI Enforcement Proceeding and Accusation.......................................19

    I.    Motion *in Limine* No. 9 To Exclude Garza Deposition ........................................20

J.  Motion *in Limine* No. 10 To Exclude Claims Administrator, Cameron Azari ........22

K.  Motion *in Limine* No. 11 to Permit Testimony of Attorney Jack Weaver if Needed..................................................................................................................24

L.  Motion *in Limine* No. 12 to Permit Jay Thorpe to Testify Remotely ......................25

SMRH:4920-1582-9185.1                                    DEFENDANT STATE FARM GENERAL
                                                  INSURANCE COMPANY'S MOTIONS IN LIMINE

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Ake v. General Motors Corp.*
942 F. Supp. 869 (W.D.N.Y. 1996) .......................................................................... 20

*Aki v. Univ. of California Lawrence Berkeley Nat'l Lab'y*
74 F. Supp. 3d 1163 (N.D. Cal. 2014) ........................................................................ 9

*Akiona v. United States*
938 F.2d 158 (9th Cir. 1991) ...................................................................................... 3

*Angelo v. Bacharach Instrument Co.*
555 F.2d 1164 (3d Cir. 1977) ................................................................................... 21

*Arroyo v. Int'l Paper Co.*
611 F. Supp. 3d 824 (N.D. Cal. 2020) ....................................................................... 1

*In re Asacol Antitrust Litigation*
907 F.3d 42 (1st Cir. 2018) ...................................................................................... 24

*ATS Prods. v. Champion Fiberglass, Inc.*
309 F.R.D. 527 (N.D. Cal. 2015) ............................................................................. 25

*In re Bank of Am. California Unemployment Benefits Litig.*
2025 WL 2816808 (S.D. Cal. June 24, 2025) ........................................................... 17

*Banks v. R.C. Bigelow, Inc.*
2025 WL 1527373 (C.D. Cal. May 29, 2025) ........................................................... 16

*Brae Transp., Inc. v. Coopers & Lybrand*
790 F.2d 1439 (9th Cir. 1986) .................................................................................... 2

*Brom v. Bozell, Jacobs, Kenyon & Eckhardt*
867 F. Supp. 686 (N.D. Ill. 1994) ............................................................................ 20

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*
227 F.R.D. 313 (C.D. Cal. 2004) ............................................................................. 14

*Cimino v. Raymark Indus., Inc.*
151 F.3d 297 (5th Cir. 1998) .................................................................................... 24

*Clark v. City of Los Angeles*
650 F.2d 1033 (9th Cir. 1981) .................................................................................. 11

*Concept Enterprises, Inc v. Hartford Ins. Co.*
2001 WL 34050685 (C.D. Cal. 2001) ....................................................................... 16

-iii-

*Cordoba v. DIRECTV, LLC*
    942 F.3d 1259 (11th Cir. 2019)..................................................................................... 24

*Duale v. Mercedes-Benz USA, LLC*
    148 Cal. App. 4th 718 (2007)....................................................................................... 16

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt.*
    2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ................................................................. 3

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974) ...................................................................................................... 23

*Eisen v. Day*
    No. 21-CV-05349-VKD, 2024 WL 1244482
    (N.D. Cal. Mar. 21, 2024) ............................................................................................ 15

*Faigin v. Kelly*
    184 F.3d 67 (1st Cir. 1999) ........................................................................................... 18

*Glover v. BIC Corp.*
    6 F.3d 1318 (9th Cir. 1993)............................................................................................ 3

*Gospel Missions of Am. v. City of Los Angeles*
    328 F.3d 548 (9th Cir.2003)........................................................................................... 22

*Graham v. DaimlerChrysler Corp.*
    34 Cal.4th 553 (2004)................................................................................................... 15

*Hodge v. Superior Court*
    145 Cal. App. 4th 278 (2006)....................................................................................... 17

*M.H. v. Cty. of Alameda*
    2015 WL 54400 (N.D. Cal. Jan. 2, 2015) ...................................................................... 4

*Mass. Mut. Life Ins. Co. v. Cerf*
    177 F.R.D. 472 (N.D. Cal. 1998) ................................................................................. 25

*Moradi-Shalal v. Fireman's Fund Ins. Co.*
    46 Cal.3d 287 (1988)..................................................................................................... 19

*Nat'l Parks & Conservation Ass'n v. Cty. of Riverside*
    81 Cal. App. 4th 234 (2000).......................................................................................... 15

*Nationwide Biweekly Admin., Inc. v. Superior Court*
    9 Cal. 5th 279 (2020)..................................................................................................... 17

*Ngethpharat, et. al. v. State Farm Mutual Automobile Ins. Co. et. al*
    2026 WL 479105 (W.D. Wash. Feb. 20, 2026) ........................................................... 17

SMRH:4920-1582-9185.1

DEFENDANT STATE FARM GENERAL
INSURANCE COMPANY'S MOTIONS IN LIMINE

*Nipper v. Snipes*
    7 F.3d 415 (4th Cir. 1993).................................................................................... 18

*Old Chief v. United States*
    519 U.S. 172 (1997) .............................................................................. 11, 12, 22

*Orr v. Bank of America, NT & SA*
    285 F.3d 764 (9th Cir. 2002)............................................................................ 6, 9

*Pacific Group v. First State Ins. Co.*
    841 F.Supp. 922 (N.D. Cal. 1993) ..................................................................... 16

*Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*
    652 F. Supp. 3d 1098 (C.D. Cal. 2023).................................................................. 3

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*
    480 F. Supp. 3d 1000 (N.D. Cal. 2020) ......................................................... 12, 20

*R & R Sails, Inc. v. Ins. Co. of Penn.*
    673 F.3d 1240 (9th Cir. 2012)....................................................................... 13, 14

*Ramyead v. State Farm General Ins. Co.*
    Los Angeles Sup. Ct., Case No. 20STCV06274 (Complaint Filed Feb. 19, 2020) ................ 21

*Roes, 1-2 v. SFBSC*
    944 F.3d 1035 (9th Cir. 2019)............................................................................ 23

*Ryan Inv. Corp. v. Pedregal De Cabo San Lucas*
    2009 WL 248172 (N.D. Cal. Jan. 30, 2009) ......................................................... 16

*Save Our Uniquely Rural Cmty. Env't v. Cty. of San Bernardino*
    235 Cal. App. 4th 1179 (2015)........................................................................... 15

*Scott & Fetzer Co. v. Dile*
    643 F.2d 670 (9th Cir. 1981)............................................................................. 13

*Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez)*
    484 F.3d 1098 (9th Cir. 2007)........................................................................... 16

*SG Blocks, Inc. v. HOLA Cmty. Partners*
    2023 WL 3312500 (C.D. Cal. May 8, 2023)............................................................. 6

*Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.*
    783 F.2d 159 (10th Cir. 1986)........................................................................... 20

*Slottow v. American Cas. Co.*
    10 F.3d 1355 (9th Cir. 1994).......................................................................... 13, 16

*THK America, Inc. v. NSK, Ltd.*
    917 F. Supp. 563 (N.D. Ill. 1996) ...................................................................... 20

*Trope v. Katz*
  11 Cal. 4th 274 (1995)..................................................................................................... 13

*Unicolors, Inc. v. H&M*
  52 F.4th 1054 (9th Cir. 2022)........................................................................................ 23

*United States v. Ham*
  998 F.2d 1247 (4th Cir. 1993)........................................................................................ 11

*United States v. Hitt*
  981 F.2d 422 (9th Cir. 1992)...................................................................................... 8, 12

*United States v. Pac. Gas & Elec. Co.*
  178 F. Supp. 3d 927 (N.D. Cal. 2016) ..................................................................... 12, 20

*United States v. Sine*
  493 F.3d 1021 (9th Cir. 2007)........................................................................................ 18

*United States v. Sullivan*
  2022 WL 3716594 (N.D. Cal. Aug. 28, 2022)........................................................... 20, 24

*In re Vaxart, Inc. Sec. Litig.*
  824 F. Supp. 3d 971 (N.D. Cal. 2026) ........................................................................... 23

*In re Vee Vinhnee*
  336 B.R. 437 (B.A.P. 9th Cir. 2005)............................................................................... 10

*Walmart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) ....................................................................................................... 24

*Weyerhaeuser Co. v. Fireman's Fund Ins. Co.*
  2007 WL 4591918 (W.D. Wash. Dec. 18, 2007)............................................................ 16

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*
  2010 WL 11505684 (C.D. Cal. Jan. 25, 2010)................................................................. 2

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
  259 F.3d 1101 (9th Cir. 2001)............................................................................. 11, 14, 23

Statutes

California Civil Code
  § 3287 ............................................................................................................................. 16
  § 3287(a) ......................................................................................................................... 16

California Code of Civil Procedure
  § 1021 ............................................................................................................................. 13
  § 1021.5 ........................................................................................... 12, 13, 15, 16

California Insurance Code...................................................................................................... 18
   § 790.03 ............................................................................................................... 18, 19
   § 790.03(h) ............................................................................................................... 19

United States Constitution Seventh Amendment ("Rules Enabling Act") ................................ 24

Other Authorities

California Code of Regulations
   § 2695.9(f) ............................................................................................................... 18

Federal Rule of Civil Procedure
   Rule 23(c)(2) ............................................................................................................ 23
   Rule 23(c)(2)(B) ....................................................................................................... 23
   Rule 23(h) ................................................................................................................. 13
   Rule 26 ............................................................................................................... *passim*
   Rule 26(a) ............................................................................................................ 13, 14
   Rule 26(a)(1) .............................................................................................................. 2
   Rule 26(a)(1)(A) ........................................................................................................ 14
   Rule 26(a)(1)(A)(ii) ................................................................................................ 2, 10
   Rule 26(a)(1)(A)(iii) .................................................................................................. 14
   Rule 26(e) ................................................................................................................... 1
   Rule 26(e)(1)(A) ........................................................................................................ 11
   Rule 32(a)(8) ............................................................................................................. 21
   Rule 34 ....................................................................................................................... 2
   Rule 34(a) ................................................................................................................... 2
   Rule 34(b)(2) .............................................................................................................. 2
   Rule 37 ....................................................................................................................... 3
   Rule 37(a) ................................................................................................................... 3
   Rule 37(c)(1) ........................................................................................... 10, 11, 13, 14
   Rule 37(e) ................................................................................................................... 3

Federal Rule of Evidence
   Rule 401 ............................................................................................................. *passim*
   Rule 401(b) .......................................................................................................... 21, 23
   Rule 402 ............................................................................................................. *passim*
   Rule 403 ............................................................................................................. *passim*
   Rule 602 ................................................................................................................... 8, 9
   Rule 801 ................................................................................................................... 21
   Rule 801(c) ............................................................................................................... 21
   Rule 802 ................................................................................................................... 21
   Rule 803(6) .............................................................................................................. 9, 25
   Rule 803(6)(A)–(D) .................................................................................................... 9
   Rule 803(8) ............................................................................................................... 21
   Rule 803(8)(B) ......................................................................................................... 21
   Rule 804(a) ............................................................................................................... 21
   Rule 901 ................................................................................................................... 6, 9
   Rule 901(b)(1) ............................................................................................................ 9

SMRH:4920-1582-9185.1

## PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS

State Farm General Insurance Company ("State Farm") proposes these Motions in Limine as a result of the Court's class certification order, summary judgment order, and Amended Civil Pretrial Order, notwithstanding and subject to its objections that this case cannot proceed as a class action under controlling law as detailed in its Motion to Decertify (ECF 187) and Response to Plaintiffs' Trial Plan (ECF 188), all of which objections and rights are expressly reserved.

## MOTIONS IN LIMINE

**A.**     **Motion *in Limine* No. 1 To Preclude Plaintiffs from Arguing that State Farm Should Have Produced Newer or More Information Re Potential Class Member Claims**

All parties (and their experts) acknowledge in this case that potential class member claims may continue to develop. The record reflects that development. Consistent with its Rule 26(e) disclosure obligations, State Farm produced updated data from its systems regarding the potential class member claims in February 2026. That data reflected significant development across numerous claims. Plaintiffs object to expert testimony regarding that new data at trial, which State Farm opposes and briefed in its separate response to Plaintiffs' Trial Plan (ECF 188).

State Farm anticipates that Plaintiffs will nonetheless attempt to fill evidentiary gaps in their case at trial by suggesting to the jury that State Farm should have produced additional documents, such as individual claim files or underwriting materials that Plaintiffs never requested in discovery. Such argument would not only be inconsistent with class treatment in this case, but it would also invite the jury to infer discovery misconduct where there is none. A party cannot sit on its discovery rights and then ask a jury to hold the opposing party responsible for the resulting silence in the record. *Arroyo v. Int'l Paper Co.*, 611 F. Supp. 3d 824, 832 (N.D. Cal. 2020) (plaintiff's "inability to present evidence to controvert [defendant's] declaration is entirely of [plaintiff's] own making and was entirely preventable"). The Court should preclude Plaintiffs from arguing at trial that State Farm should have produced newer or more information regarding potential class member claims, or that the absence of such information in the record implies that it does not exist.

SMRH:4920-1582-9185.1

DEFENDANT STATE FARM GENERAL
INSURANCE COMPANY'S MOTIONS IN LIMINE

**1.      No Duty to Volunteer the Extensive Information Plaintiffs Need Exists**

Rule 34 obligates a responding party to produce documents only "as requested."  The obligation is thus triggered by, and coextensive with, the requests actually served.  Fed. R. Civ. P. 34(a), (b)(2).  Rule 26(a)(1) requires initial disclosure only of documents "the disclosing party has in its possession, custody, or control and may use to support *its* claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added).  Nothing in the Rules requires a defendant to anticipate the plaintiffs' theories and volunteer every document that might conceivably bear on them.

Plaintiffs need more evidence here to prove that each class member actually suffered a covered loss and settled or is "reasonably certain" to settle their claim for actual cash value as opposed to limits or replacement cost or some other basis.  They cannot blame State Farm for not volunteering that information at trial.  *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) ("the movant cannot complain if it fails to pursue discovery diligently. . . ."); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684 (C.D. Cal. Jan. 25, 2010) ("A trial is not the appropriate forum in which to air these [discovery] grievances").  That is particularly true where the information they need is approximately 40,000 claim files, each of which commonly exceeds hundreds or thousands of pages.

In addition, whether State Farm produced documents that were never the subject of any request for production does not prove or disprove any element of Plaintiffs' claims for breach of the policy or class-wide injury.  Fed. R. Evid. 401, 402.  A suggestion of "non-production" in response to non-existent requests is probative of nothing.

Nor is State Farm's discovery conduct an issue for the jury. The elements of Plaintiffs' claims concern State Farm's claims-handling conduct during the class period, not its conduct as a litigant.  Litigation conduct is not evidence of liability, and Plaintiffs should not be permitted to blur that line by suggesting State Farm had to produce documents that plaintiffs never requested.

**2.      Rule 403 Independently Bars This Argument**

Suggesting to the jury that State Farm "hid" or "withheld" documents regarding each potential class member claim when Plaintiffs never asked for them carries an obvious danger of unfair prejudice: it invites the jury to punish State Farm for imagined litigation misconduct rather

-2-

than decide the claims on the evidence.  It also invites the jury to assume (wrongly) that unproduced evidence does not exist.  It is precisely the kind of insinuation that is easy to make, difficult to rebut without a distracting mini-trial on the discovery record, and impossible to unring. Rule 403 exists to prevent exactly this. *See* Fed. R. Evid. 403.

### 3. There Is No Basis for a Missing-Evidence or Adverse-Inference Argument

Any suggestion that the jury may infer that unrequested, unproduced documents would have been unfavorable to State Farm is legally baseless.  An adverse inference from the absence of evidence requires, at minimum, a breach of an obligation to preserve or produce that evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (adverse inference from destruction of evidence available only against a party on notice of the evidence's relevance); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (rationale for adverse inference presupposes conduct evincing consciousness of a weak case); Fed. R. Civ. P. 37(e) (remedies for lost ESI require breach of a preservation duty and, for adverse-inference instructions, intent to deprive).

No evidence of any such breach exists here.  Permitting Plaintiffs to suggest otherwise or suggest that the claim-specific evidence reflecting individualized, factual questions that State Farm identified and will offer at trial are the only claims that exist with such questions, would give them a spoliation and adverse inference remedy they never sought, on a record that could never support it. *Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*, 652 F. Supp. 3d 1098, 1103 (C.D. Cal. 2023) (granting motion for new trial where plaintiff made "improper statements suggesting [defendant] had something to hide" in front of the jury).

### 4. Discovery Grievances Belong to the Court, Not the Jury

The Federal Rules channel discovery disputes to the court: a party dissatisfied with an opponent's production must meet and confer and move to compel under Rule 37(a), within the deadlines the court sets. Plaintiffs did none of that as to the categories at issue, and the time to do so has long since passed. Raising a never-litigated discovery grievance for the first time in front of the jury would be an end-run around Rule 37, this Court's scheduling orders, and the discovery cutoff. *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt.*, 2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ("the Court will not allow this discovery dispute to continue to play out in front of the

jury"); *M.H. v. Cty. of Alameda*, 2015 WL 54400, at *32 (N.D. Cal. Jan. 2, 2015) ("Pre-trial discovery conduct—as opposed to the materials actually produced in discovery—is usually irrelevant to a jury's consideration of the facts.")  If Plaintiffs believed State Farm's production was deficient, the remedy was a timely motion to this Court, not baseless accusations at trial.

For purposes of these motions in limine, State Farm simply seeks an order preventing Plaintiffs from changing tack and arguing at trial that State Farm should have produced newer, different, or more information regarding potential class member claims.  That includes barring Plaintiffs from arguing that the jury should draw an adverse inference from the fact that the ECS claims data State Farm produced is not current as of the trial, or that State Farm did not produce claim files regarding each potential class member claim.

**B.**    **Motion *in Limine* No. 2 To Exclude Evidence or Testimony Regarding The "Sales Tax Depreciation" Column in the XactContents® Portion of the Combined *Pitkin* Dataset**

The threshold questions of class membership, injury, and damages in this trial turn on whether the approximately 40,000 potential class members presented *covered* personal property claims that ultimately settled (or are reasonably certain to settle) based on actual cash value as opposed to some other basis (e.g. applicable limits or replacement cost).  Plaintiffs intend to answer those questions with a spreadsheet column.  Plaintiffs rely on a field in the "Combined *Pitkin* Dataset" labeled "Sales Tax Depreciation," as though the label alone establishes both that the claim ultimately settled based on actual cash value, and that the estimated amount was in fact ultimately withheld from every potential class member's claim.

It does not.  The "Sales Tax Depreciation" column is an estimating artifact, not a payment record.  The XactContents® estimating tool generated the number in that column in connection with an actual cash value estimate.  It is static.  It does not change as claims evolve, as State Farm makes supplemental payments, or as insureds submit receipts to recover replacement cost value (i.e. withheld depreciation) when they actually replace their property.  (ECF 127, Ex. C, 303:7–304:2 & Ex. I, 39:4–41:19; 42:3–13.)  Nothing in the Sales Tax Depreciation column, or anywhere else in the Combined *Pitkin* Dataset, identifies whether any particular settlement payment to any particular class member was actually reduced by depreciation applied to the sales tax component

of replacement cost.  The payment record in State Farm's ECS database included in the Combined *Pitkin* Dataset is limited to payment amount, date, and coverage type, and contains no depreciation information. (ECF 76-4, ¶¶ 6, 8–9, 20.)

A column that cannot show whether any insured's settlement payment was ultimately reduced by depreciated sales tax is not probative of whether State Farm actually withheld depreciation attributable to sales tax on claims.  It is irrelevant under Federal Rules of Evidence 401 and 402.  And because the column carries a label that invites the jury to assume precisely what the underlying data cannot show, its admission would mislead the jury, confuse the issues, and unfairly prejudice State Farm in violation of Rule 403.  State Farm respectfully asks the court to exclude the column and any testimony or argument premised on it.

**1.      The Combined *Pitkin* Dataset is an Estimating Artifact, *Not* the Claim Record**

State Farm produced the dataset referred to as the "Combined *Pitkin* Dataset" in August 2025.  (ECF 124-1, ¶ 2; ECF 127, Ex. A; ECF 102.).  The Dataset was assembled in two steps from two different sources.

First, third-party Verisk, which licenses the XactContents® estimating tool, created a report containing its data regarding California personal property claims during the class period that had an XactContents® actual cash value estimate. (ECF 127, Ex. H, 22:4–16; 23:7–14.)  The Verisk report included approximately 25 columns of data generated in connection with the creation of an actual cash value estimate, including estimated values labeled "RC Total," "ACV," and "Sales Tax Depreciation." (ECF 76-4, ¶¶ 11–14; ECF 127, Ex. H, 22:4–16 & Ex. A.) All of those values related to total estimated values generated in connection with a claim—that is, they were on a claim level, not an item level. (*See* ECF 127, Exs. A & C, 249:7–251:1.)  Those values were also "static," meaning they did not change based on payments actually made on claims as claims evolved.  (ECF 127, Ex. C, 303:7–304:2 & Ex. I, 39:4–41:19; 42:3–13.)  According to Verisk, the "Sales Tax Depreciation" column in particular includes both "recoverable sales tax and non-recoverable sales tax together."  (ECF 127, Ex. I, pp. 61:13-25, 41:2-5).  The Dataset did not break out those components, and Verisk had no information regarding how the values displayed in that "Sales Tax Depreciation" column were actually calculated.  (*Id.* at pp. 42:3-7, 62:22-63:19).

-5-

SMRH:4920-1582-9185.1

No one, including Plaintiffs' own experts, ever validated any figure displayed in that column to confirm that it actually reflected depreciation attributable to sales tax for a particular estimate.

Second, to complete the Combined *Pitkin* Dataset, State Farm added approximately 30 more columns of data from its own claims database, known as ECS, to the same rows in the Verisk report. (ECF 127, Ex. H, 22:4–16; 23:7–14 & Ex. A.) The State Farm/ECS portion of the Dataset did not include replacement cost estimate or depreciation information, because ECS does not generate that data. (ECF 76-4, ¶¶ 8–9, 20.) Rather, claim payment data in the ECS portion of the Dataset was limited to payment amount, date, and coverage type. (*Id.*, ¶ 6; ECF 127, Ex. H, 32:18–33:8; 53:24–54:10 & Ex. A.)

The result is a dataset in which the only actual payment information (amount, date, coverage type) says nothing about depreciation, and the only depreciation-related field ("Sales Tax Depreciation") says nothing about actual payments. No field in the Dataset links the static, claim-level "Sales Tax Depreciation" estimate value to an amount actually withheld from any class member in the ultimate settlement of their claim.

**2.      The "Sales Tax Depreciation" Column Is Unauthenticated and Irrelevant Because It Does Not Reflect Settlement Basis**

Evidence has no probative value if it is not what the proponent claims it to be. Fed. R. Evid. 901; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773, fn. 7 (9th Cir. 2002). The facts of consequence at trial are whether each potential class member presented a covered claim to State Farm which they have settled or are reasonably certain to settle on an actual cash value basis, as opposed to some other basis, and thus have settled (or are likely to settle) their claim without receiving payment of withheld depreciation attributable to sales tax. The "Sales Tax Depreciation" column has no tendency to make those facts more or less probable, for three independent reasons. *See, e.g. SG Blocks, Inc. v. HOLA Cmty. Partners*, 2023 WL 3312500, at *8 (C.D. Cal. May 8, 2023) (excluding supposed damages spreadsheet because "the Court cannot determine the origin of the numbers on the spreadsheet. As a result, the Court cannot determine if the spreadsheet provides meaningful proof of damage").

First, the column is at most an estimating artifact, not a payment value. It reflects an

amount generated by the XactContents® estimating tool in connection with a claim-level estimate. (ECF 76-4, ¶¶ 11–14; ECF 127, Ex. H, 22:4–16 & Ex. A).  An estimate is a starting point in the adjustment of a claim, not a record of what the insured was paid. The Dataset's actual payment fields—amount, date, and coverage type, drawn from ECS—contain no depreciation information whatsoever, because ECS does not generate that data. (ECF 76-4, ¶¶ 6, 8–9, 20).  A juror looking at the "Sales Tax Depreciation" value for a given row therefore cannot determine whether that amount, or any amount, was actually withheld from the payment issued on that claim.

Second, the column is static.  The value did not change as claims evolved—including when supplemental or replacement-cost payments were made after an initial ACV payment. (ECF 127, Ex. C, 303:7–304:2 & Ex. I, 39:4–41:19; 42:3–13).  And personal property claims almost always evolve.  Potential class member claims included in the Combined *Pitkin* Dataset had on average at least two separate XactContents® records corresponding to at least two separate estimate revisions and payments.  (Ex. D, p. 6; Ex. E, p. 10).  A claim paid at actual cash value one day may be settled at replacement cost the next.  Plaintiffs' own claim evolved after the close of discovery in this case, with a replacement cost claim and State Farm's payment of withheld depreciation.  But, the "Sales Tax Depreciation" column for their claim, and every other potential class member claim, remained unchanged.

Thus, even assuming that the static "Sales Tax Depreciation" figure at some point in time accurately represented the portion of withheld depreciation attributable to sales tax included in an actual cash value estimate (which the record does not support), it does *not* show whether that amount was actually withheld from a claim payment, or whether the amount was later paid as the claim evolved towards settlement.  A number frozen at the moment of estimation cannot prove the class member's ultimate claim settlement experience, which is the only experience that matters to class membership, injury, and liability.

Third, the column operates at the wrong level of generality.  The Verisk data is claim-level, not item-level; it does not display estimates or other data by item, and it does not reflect which items were estimated at actual cash value or which were ultimately settled at actual cash value as opposed to replacement cost or some other basis.  (ECF 127, Exs. A & C, 249:7–251:1.)

Because the column cannot connect a "Sales Tax Depreciation" value to any actual reduction in any actual settlement payment for any particular item in a claim, it does not make it more or less probable that the potential class member is in the class, experienced injury as a result of State Farm's ACV methodology, or can establish liability under Plaintiffs' theory.  It is inadmissible under FRE 401 and 402.  For the same reasons, no witness has personal knowledge that the column reflects amounts actually withheld from settlement payments (or excluded from actual cash value estimates), and testimony to that effect would lack foundation under FRE 602.

**3.      The Column Should Be Excluded Under Rule 403 Because Its Misleading Label Invites the Jury To Assume Facts the Data Cannot Show**

Even if the column had some marginal probative value, which it does not, that value is substantially outweighed by the certainty of jury confusion. The danger here is not speculative; it is built into the evidence itself.  The column bears the label "Sales Tax Depreciation," populated with dollar figures, row after row, for thousands of potential class claims. A lay juror will naturally and wrongly read that label as a ledger of sales tax amounts State Farm withheld from class members' payments. The record establishes the opposite: the figures are static, claim-level estimating outputs untethered to actual settlement payments. (ECF 76-4, ¶¶ 6, 8–9, 20; ECF 127, Ex. C, 303:7–304:2 & Ex. I, 39:4–41:19.)

Even relevant evidence must be excluded where "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Evidence that invites the jury to draw an inference the underlying data cannot support is a paradigmatic candidate for exclusion under Rule 403.  *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) (evidence properly excluded where "there's a substantial risk the jury will draw the wrong inference from it").  Rule 403 exists precisely for evidence that "ha[s] an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403, advisory committee's note; *see Hitt*, 981 F.2d at 424.  A spreadsheet field whose name asserts a conclusion the underlying data cannot support is the epitome of misleading evidence.

Nor can a limiting instruction cure the problem. The prejudice flows from the label itself,

-8-

SMRH:4920-1582-9185.1

which the jury would see each time the Dataset is displayed.  Third party Verisk/Xactware applied that label to its data, not State Farm.  Plaintiffs cannot shortcut their burden of proof by presenting an estimating artifact dressed up with a conclusory, prejudicial label.

### 4.    The Column Should Be Excluded Because It Lacks Foundation

A person authenticating documents must have personal knowledge that the documents are what they purport to be.  Fed. R. Evid. 602, 901; *see also Orr*, 285 F.3d at 773-74.  No trial witness has that knowledge here regarding what the values in the "Sales Tax Depreciation" column actually reflect.  Verisk generated the column.  State Farm's witnesses cannot authenticate it.  (ECF 127, Ex. H, Thorpe Dep., p. 24:14–22).  Verisk's own witness testified that she did not know how the values in the column were populated.  (Hoffman Dec., ¶ 7; ECF 172, Ex. I & ECF 123-5, Fleming Dep., pp. 62:22–63:1).  No testimony supports that the column is what plaintiffs claim it is: the amount State Farm actually deducted from actual cash value recoveries by plaintiffs.  *See Orr*, 285 F.3d at 778 ("Unauthenticated documents cannot be considered in a motion for summary judgment."); *see also* FRE 901(b)(1) (authentication may be accomplished by "[t]estimony of a witness with knowledge that an item is what it is claimed to be").

Because no witness can explain how the column's values were compiled, the column also cannot qualify for admission as a business record under FRE 803(6).  To satisfy that exception, the proponent must establish through "the testimony of the custodian or another qualified witness" that the record was made at or near the time of the events recorded, by a person with knowledge, and kept in the course of a regularly conducted business activity.  Fed. R. Evid. 803(6)(A)–(D).  A witness who does not know how a spreadsheet's data was compiled is not a "qualified witness" capable of laying that foundation.  *See, e.g. Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab'y*, 74 F. Supp. 3d 1163, 1175 (N.D. Cal. 2014) (excluding spreadsheet "[b]ecause Defendant fails to establish any of the foundational facts required for application of the business records exception").

No witness has ever verified that the "Sales Tax Depreciation" column reflects the real, current estimated depreciation attributable to sales tax for any claim.  No witness has testified as to what portion of any estimate reflects recoverable depreciation attributable to sales tax as opposed to nonrecoverable depreciation.  According to Verisk's person most knowledgeable, the column

combines both values without distinction.  (Hoffman Dec., ¶ 7; ECF 172, Ex. I & ECF 123-5, Fleming Dep., pp. p. 61:13–25). Without the ability to disaggregate recoverable from nonrecoverable depreciation, the column is not just unauthenticated.  As explained above, it is also unreliable and prejudicial, as its admission would invite the jury to speculate as to what, if any, portion of the figures is relevant to Plaintiffs' claims.  Accordingly, the "Sales Tax Depreciation" column of the Combined *Pitkin* Dataset is inadmissible hearsay, lacks the necessary foundation, and should be excluded. *In re Vee Vinhnee*, 336 B.R. 437, 447 n.9 (B.A.P. 9th Cir. 2005) (excluding evidence related to database where custodian vaguely testified that "[i]t's all what is presented to it from the electronic feeds. . . .").

**C.**     **Motion in *Limine* No. 3 to exclude Irrelevant and Prejudicial Family Photos**

On June 2, 2026, after the close of fact discovery and days before the hearing on the parties' summary judgment motions, Plaintiffs produced 26 additional photographs depicting Plaintiffs and their family enjoying the property before the 2020 fire and the burned remains of the home after the fire.  (Pl. Exs. 41-66).  Those photographs (along with Plaintiffs' Exhibits 3-40) should be excluded for three reasons.  First, they are untimely.  Rule 37(c)(1) forbids a party from using at trial evidence it failed to disclose during discovery unless the failure was substantially justified or harmless, and Plaintiffs can show neither.  Second, those photos and those marked as Plaintiffs' Ex. 3-40 are irrelevant: they prove only that the home was destroyed which no one disputes.  Third, the photographs are inflammatory and prejudicial: images of a child and a fawn serve no purpose but to invite the jury to decide this case on sympathy rather than on the evidence.

**Rule 37(c)(1) compels exclusion:**  Rule 26 requires a party to disclose all documents it "may use to support its claims," Fed. R. Civ. P. 26(a)(1)(A)(ii), and to supplement its disclosures and discovery responses "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A).  Rule 37(c)(1) supplies the enforcement mechanism: a party that fails to disclose information as required "is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to give teeth to the disclosure requirements.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The burden of proving substantial justification or harmlessness rests on the party that failed to

disclose.  *Yeti by Molly*, 259 F.3d at 1107.  Plaintiffs cannot carry that burden.  The photographs are family photographs of Plaintiffs' own property that Plaintiffs took in or around 2020, more than five years ago.  Plaintiffs offer no explanation for withholding them until June 2026, years after they served their Rule 26 disclosures and more than a year after the fact discovery cutoff.  Exclusion under Rule 37(c)(1) is warranted on this ground alone.

**The photographs are irrelevant to the issues at trial:**  Evidence is relevant only if it has "any tendency" to make a fact "of consequence in determining the action" more or less probable.  Fed. R. Evid. 401.  Irrelevant evidence is inadmissible.  Fed. R. Evid. 402.

The photographs prove, at most, two things: that Plaintiffs and their family lived at and enjoyed the property, and that the property was destroyed by fire.  Neither fact is disputed.  State Farm concedes the destruction of the property; it accepted coverage and paid benefits.  Where a fact is undisputed, evidence offered to "prove" it has essentially no probative value, because the evidentiary weight of an item is measured against the actual dispute before the jury.  *See Old Chief v. U.S.*, 519 U.S. 172, 184–5 (1997) (probative value of an item of evidence "may be calculated by comparing evidentiary alternatives," including the availability of undisputed facts).  Few subjects are as emotionally charged as harm to children and baby animals.  *See, e.g. United States v. Ham*, 998 F.2d 1247, 1253 (4th Cir. 1993); *Clark v. City of LA*, 650 F.2d 1033, 1038 (9th Cir. 1981).

**The photographs are prejudicial:**  Even relevant evidence must be excluded when its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Old Chief*, 519 U.S. at 180.  "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."  *Hitt*, 981 F.2d at 424 (reversing where admitted photo carried emotional freight unrelated to the disputed issue).

Here, the balance is not close.  On the probative side of the ledger, the photographs offer nothing: the facts they depict are conceded.  On the prejudice side, the photographs are a curated appeal to the jury's emotions—images of young children at play, a fawn on the property, and the

-11-

blackened ruins of a family home.  With the photographs, plaintiffs aim to transform a dispute over the depreciation of sales tax in an ACV estimate into a referendum on the tragedy of the fire, and to invite the jury to award damages out of sympathy rather than based on proof of what State Farm allegedly withheld.  Such evidence promotes ill will against State Farm with no probative value, creating "a serious risk that the jury would be drawn to" hold State Farm liable "based on some perceived and repeated danger to the public" and "tempt[ing] jurors to punish [State Farm] for that" rather than neutrally evaluating how much the depreciation of sales tax harmed plaintiffs. *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 966 (N.D. Cal. 2016).

The photographs also threaten to waste time and confuse the issues. Rule 403 exists to prevent exactly this kind of sideshow.  *See, e.g., Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 480 F. Supp. 3d 1000, 1010 (N.D. Cal. 2020) (Orrick, J.) (excluding evidence under Rule "403 because it will confuse the jury about the issues it needs to decide, waste a significant amount of trial time, and be prejudicial.")  Exclusion of plaintiffs' exhibits 3 through 66, and of any testimony or argument describing them, is the appropriate remedy.

**D.     Motion *in Limine* No. 4 to Exclude Evidence or Argument Regarding a Standalone Claim for Attorneys' Fees Under Section 1021.5**

State Farm also moves this Court for an order excluding any and all evidence, references to evidence, testimony or argument relating to attorneys' fees incurred by Plaintiffs in this dispute. In their Complaint, plaintiffs seek to recover attorneys' fees on their UCL claim pursuant to California Code of Civil Procedure section 1021.5.[1]  For two reasons, evidence of attorneys' fees supporting that claim is not admissible at trial in this case.[2]

First, plaintiffs failed to produce any documents in support of their section 1021.5 claim, as required under Rule 26.  Plaintiffs also failed to meet their obligation of providing a "computation" of their section 1021.5 fees claim as required under Rule 26(a).  *R & R Sails, Inc. v.*

---

[1] California applies the American Rule of attorneys' fees.  *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995) ("each party to a lawsuit must ordinarily pay his own attorney fees."); Cal. CCP § 1021.

[2] This Motion is limited to a standalone request for attorneys' fees under Section 1021.5.  It does *not* address whether Plaintiffs may later move to recover any portion of a class damages award as fees under FRCP 23(h), in the event that Plaintiffs' class claims prevail at trial.

*Ins. Co. of Penn.*, 673 F.3d 1240, 1245-46 (9th Cir. 2012).  In response to State Farm's discovery requests, plaintiffs disclosed no information related to their claim for attorneys' fees under section 1021.5.  Plaintiffs cannot conceal their damages during discovery and then assert them at trial. Fed. R. Civ. P. 37(c)(1); *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 673 (9th Cir. 1981).

Second, section 1021.5 fees are only recoverable if the action "resulted in the enforcement of an important right affecting the public interest."  Attorneys' fees spent seeking to prove plaintiffs' unmeritorious bad faith claim are not recoverable.  Because plaintiffs have produced no information regarding their fees, they have also produced no allocation of those fees between the potentially successful UCL "unlawful" theory and the failed bad-faith claim.  They cannot now seek to prove their potentially recoverable damages.  *Slottow v. American Cas. Co.*, 10 F.3d 1355, 1362 (9th Cir. 1994) ("Because the bank made no effort to segregate its litigation expenses. . ., we affirm the District Court's decision not to award fees.").

**Plaintiffs Never Produced Evidence to Support Their Fee Claim:**  The Complaint's prayer for relief includes attorneys' fees pursuant to Section 1021.5.  Yet, in their initial disclosures, plaintiffs did not disclose attorneys' fees as part of their damages:

> Based on their initial preliminary investigation of the matters asserted in the operative complaint, and in advance of formal discovery, Plaintiffs have not yet computed nor been able to compute all damages suffered as a result of the alleged conduct of the Defendants on behalf of themselves or the proposed class.

Hoffman Dec., ¶ 3, Ex. 1. Plaintiffs have never supplemented their disclosures to identify attorneys' fees or explain how such a claim was calculated if they were making such a claim. Plaintiffs were required to disclose a computation of each category of damages claimed and to make available the documents or other evidentiary material on which each computation is based. Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rule 26(a)(1)(A)(iii) further required Plaintiffs to produce all documents that they might use to support their claims. Plaintiffs never produced any documents relating to their attorneys' fees claim.  Rule 26(a)(1)(A) required Plaintiffs to produce "a computation of any category of damages claimed by [them]" and "the documents or other evidentiary material . . . on which such computation is based."  Plaintiffs never produced any computation regarding attorneys' fees, let alone documentation to support those fees.

-13-

Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a). . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). "Excluding evidence at trial as a sanction for failure to disclose under [Rule 26] in a timely fashion is 'automatic and mandatory' [under Rule 37(c)(1)]." *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 321 (C.D. Cal. 2004); see also above, § C.

The Ninth Circuit has applied this rule to attorneys' fees. *R & R Sails*, 673 F.3d at 1246-48 (excluding attorneys' fees claim because plaintiff did not serve Rule 26 disclosure). The only exceptions to Rule 37(c)(1)'s mandatory exclusion remedy are if the failure to disclose was either substantially justified or harmless. *Yeti by Molly*, 259 F.3d at 1106. The burden is on plaintiffs to establish that either of these exceptions applies. *Id.* at 1106-07. They cannot do this. There is no justification, much less substantial justification, for the plaintiffs' failure to disclose information regarding their attorneys' fees. Attorneys' fees are part of their damages claim as pleaded.

Nor is plaintiffs' failure to disclose harmless, as it deprived State Farm of any opportunity to meaningfully respond to or rebut the evidence, including with expert testimony. "The party seeking attorney fees has the burden of proving that the litigation warranted an award of attorney fees and that the hours expended and the fees sought were reasonable." *Save Our Uniquely Rural Cmty. Env't v. Cty. of San Bernardino*, 235 Cal. App. 4th 1179, 1184 (2015). Plaintiffs have not produced any information regarding what their attorneys did or how much they charged for what they did. Accordingly, State Farm cannot meaningfully challenge or otherwise assess the "reasonableness" of the fees, or what fees were incurred as part of the failed bad faith claim as opposed to what fees were incurred in relation to the surviving UCL claim. Plaintiffs should not be allowed to ambush State Farm at trial with attorneys' fees evidence previously withheld.

Plaintiffs' failure to disclose attorneys' fees during discovery was neither justified nor harmless. They have not provided any evidence that their fees were reasonable. By failing to share their time records, they have left State Farm with no way to challenge the reasonableness or the allocation of those benefits. No expert was disclosed to establish their attorneys' fee claim. Plaintiffs were supposed to produce information and evidence regarding their attorneys' fees claim

during discovery. They did not. As a result, the Federal Rules bar them from presenting evidence regarding attorneys' fees at trial to support a fee claim under Section 1021.5. *See Eisen v. Day*, No. 21-CV-05349-VKD, 2024 WL 1244482, at *6 (N.D. Cal. Mar. 21, 2024).

**Plaintiffs Never Produced Evidence to Allocate Fees:** Under section 1021.5, plaintiffs cannot recover all of their attorneys fees.  Section 1021.5 authorizes an award of attorney fees to a "successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest. . . ."  It aims to "financially reward attorneys who successfully prosecute cases in the public interest. . . ."  *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 568 (2004).  As a result, "a trial court may reduce attorney fees based on the plaintiff's degree of success," if not all of the claims succeeded.  *Save Our Uniquely Rural Cmty.*, 235 Cal. App. 4th at 1185.  Here, plaintiffs' claims for bad faith and punitive damages have failed, and they must allocate their fees between successful and failed claims.  *Nat'l Parks & Conservation Ass'n v. Cty. of Riverside*, 81 Cal. App. 4th 234, 242 (2000) (party seeking fees under section 1021.5 bears burden of showing its activities "were useful and necessary and directly contributed to the resolution of the action") (citations omitted).  To recover their fees, plaintiffs must allocate their counsel's time between recoverable and non-recoverable damages.  *Id.*

Thus, a failure to allocate bars a claim for section 1021.5 fees.  *Slottow*, 10 F.3d at 1362; *Pacific Group v. First State Ins. Co.*, 841 F.Supp. 922, 945-946 (N.D. Cal. 1993) (plaintiff's request for fees denied where plaintiff failed to produce evidence apportioning its attorneys' fees between its contractual and extra-contractual claims); *Concept Enterprises, Inc v. Hartford Ins. Co.*, 2001 WL 34050685 *8 (C.D. Cal. 2001) (plaintiff was not entitled to Brandt fees where it failed to produce records to substantiate its claim).

**E.**     **Motion *in Limine* No. 5 to Preclude Evidence or Argument Re Prejudgment Interest**

California Civil Code Section 3287 governs the recovery of prejudgment interest in diversity actions.  *Banks v. R.C. Bigelow, Inc.*, 2025 WL 1527373, at *2 (C.D. Cal. May 29, 2025); *see also Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez)*, 484 F.3d 1098, 1099-1101 (9th Cir. 2007) ("state law supplies the rate of prejudgment interest").  "[T]he test for recovery of prejudgment interest under § 3287(a) is whether the defendant actually knows the

-15-

amount owed or from reasonably available information could have computed that amount." *Duale v. Mercedes-Benz USA, LLC*, 148 Cal. App. 4th 718, 728-29 (2007). If "the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate." *Id.* (emphasis in original); *Ryan Inv. Corp. v. Pedregal De Cabo San Lucas*, 2009 WL 248172, at *2 (N.D. Cal. Jan. 30, 2009).

Any award of prejudgment interest here would require not only findings of class membership, injury and damages as to each class member, but also a determination of when each class member had provided sufficient information to support payment of the withheld depreciation attributable to sales tax. *Weyerhaeuser Co. v. Fireman's Fund Ins. Co.*, 2007 WL 4591918, at *1 (W.D. Wash. Dec. 18, 2007) (limiting award to a date where the insurer received all necessary information to process reimbursement request). Plaintiffs have not identified any such evidence that they plan to offer at trial, and did not request it during discovery in this case. The data produced does not reflect when an insured presented sufficient documentation to support payment of any withheld depreciation attributable to sales tax. Only information and documents contained in individual claim files could support that determination, and Plaintiffs did not request or receive that information during discovery for each potential class member.

In addition, Plaintiffs' damages expert, Mr. Regan, formed no opinion on the issue. *Compare In re Bank of Am. California Unemployment Benefits Litig.*, 2025 WL 2816808, at *42 (S.D. Cal. June 24, 2025) (Cotchett Pitre & McCarthy case where expert Greg Regan developed methodology to measure prejudgment interest as consequential damages to support class certification); *Ngethpharat, et. al. v. State Farm Mutual Automobile Ins. Co. et. al*, 2026 WL 479105, at **4-5 (W.D. Wash. Feb. 20, 2026) (finding class damages unliquidated as they were based on statistical assumptions and expert estimates, and declining to reopen expert discovery to allow plaintiffs to litigate the issue). Here, Mr. Regan purported to opine solely on the amount of withheld depreciation attributable to sales tax and explicitly did not attempt to determine prejudgment interest. Plaintiffs' counsel objected to questions regarding prejudgment interest and the time-value of money as "beyond the scope" of Mr. Regan's testimony. *See, e.g.* Hoffman Dec., ¶ 6, Ex. 3, pp. 196:20-197:5. Because any claim for prejudgment interest would require both

new expert opinions and new claim-specific evidence to support it, the Court should preclude any evidence or argument regarding a claim for prejudgment interest at trial.

F.      **Motion *in Limine* No. 6 to Preclude Evidence or Argument Regarding the Court's Summary Judgment Findings of Unfairness and Unlawfulness Under the UCL**

At summary judgment, the Court determined, for purposes of Plaintiffs' equitable UCL claim, that State Farm's practice of applying depreciation to the sales tax component of replacement cost was "unfair" and "unlawful" within the meaning of the UCL.  (ECF 183, pp. 22-24.)  Those determinations resolved the practice question underlying plaintiffs' UCL claims for purposes of these proceedings.  *Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 292-93 (2020); *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284-85 (2006).

The Court's unfairness and unlawfulness findings have no bearing on any question the jury will be asked to decide at trial.  Whether the practice offends the UCL is not an element of, or a defense to, breach of contract or economic injury under the UCL, and the Court's findings therefore have no tendency to make any fact of consequence to the jury's determinations more or less probable.  Fed. R. Evid. 401, 402.

Even if the findings had some marginal relevance, informing the jury that the Court has already ruled against State Farm on those issues would be extraordinarily prejudicial.  Courts recognize that juries are likely to give undue weight to a judge's findings, treating them as authoritative resolutions of the very questions the jury must decide for itself.  *United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) (judicial findings and statements carry a special danger of unfair prejudice because juries are apt to defer to them); *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (judicial findings of fact are inadmissible because a jury is likely to give them undue deference); *Faigin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999) (same).  A jury told that the Court has already found State Farm's methodology "unfair" and "unlawful" would almost inevitably treat breach and injury as a foregone conclusion, even though the Court's UCL rulings applied different legal standards to an equitable claim the jury will never decide.  No limiting instruction could cure that prejudice.  Fed. R. Evid. 403.

**G.    Motion *in Limine* No. 7 to Preclude Evidence or Argument Suggesting a Violation of the Fair Claims Settlement Practices Regulations**

State Farm respectfully moves this Court, in limine, for an order precluding Plaintiffs, their attorneys, and witnesses from arguing, asserting, contending or offering evidence that State Farm violated any provision of the California Insurance Code or the Fair Claims Settlement Practices Regulations.  The Court has already found that plaintiffs' allegations related to violations of the Fair Claims Practices Regulations are moot (ECF 183, p. 23, n. 5), and plaintiffs' claims handling expert, David Melzer, has disclosed no opinions related to whether State Farm's depreciation of sales tax violates the Fair Claims Practices Regulations.  Plaintiffs should be precluded from offering argument or testimony related to the Fair Claims Practices Regulations because such testimony is not probative of any remaining issues in the case and is needlessly prejudicial.

Plaintiffs previously argued that State Farm's ACV methodology violated the Fair Claims Settlement Practices Regulations, Cal. Code Regs. Titl. 10, § 2695.9(f), which section 790.03 implements.  (ECF 183, p. 23, n. 5; ECF 156, p. 11; ECF 41, pp. 20-22, ¶¶ 70, 76).  However, Plaintiffs did not allege a cause of action for violation of that law because California law does not permit it.  *Moradi-Shalal v. Fireman's Fund Ins. Co.*, 46 Cal.3d 287, 305 (1988).  Section 790.03 merely provides the Department of Insurance with a means of assessing penalties for intentional violations resulting from general business practices.  *Id.*

Allowing plaintiffs, counsel and witnesses to mention potential violations of section 790.03(h) or the Regulations would allow evidence with no probative value, which the Court recognized when it declined to address those allegations in its order on the motions for summary judgment.  FRE 403.  Moreover, reference to section 790.03(h) and the Regulations will be unduly prejudicial to State Farm because there is a great danger that the jury would be confused and would mistakenly believe State Farm acted unreasonably because plaintiffs' witnesses suggest it failed to comply with one of the technical provisions of California Insurance Code section 790.03(h) or the Regulations.  The Court already found State Farm did not act unreasonably when it granted its motion for summary judgment on the breach of the implied covenant claim.  Such a result will taint any verdict in this case.

-18-

For the reasons stated above, the Court should issue an order barring plaintiffs, their attorneys and witnesses from making any reference to section 790.03(h) and the Regulations.

**H.**     **Motion *in Limine* No. 8 To Exclude Evidence or Argument Regarding the Unrelated CDI Enforcement Proceeding and Accusation**

Plaintiffs list as trial exhibits unauthenticated hearsay documents regarding a California Department of Insurance ("CDI") market conduct examination and enforcement proceeding involving State Farm's compliance with California regulatory procedures in handling some 2025 Southern California wildfire claims. Those proceedings and those documents have no bearing whatsoever on the issues remaining for trial in this case and only serve to inflame the jury. The Court should exclude them, and any reference to the CDI enforcement proceedings, at trial.

How State Farm handled other aspects of unspecified claims involved in the market conduct examination has nothing to do with how State Farm applied depreciation to the sales tax component of potential class members' personal property claims, or potential contract liability for the same. Courts exclude evidence of government regulatory proceedings in civil actions precisely because such evidence carries minimal probative value while inviting the jury to defer to or speculate about the views of a government agency on issues the jury must decide for itself. *United States v. PG&E*, 178 F. Supp. 3d 927, 948 (N.D. Cal. 2016) ("admitting the NTSB's conclusions invites the jury to improperly substitute the NTSB's findings — under a different standard and for a different purpose — for its own findings about PG&E's alleged regulatory violations."). The Court should exclude evidence related to any CDI proceeding.

**The CDI Proceedings are Irrelevant:** Evidence is relevant only if it has "any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. The CDI's proceedings regarding compliance with regulatory procedures have no bearing on the elements of a breach of contract claim to be tried here, or State Farm's affirmative defenses to the same. The evidence therefore fails at the threshold of Rule 401 and must be excluded under Rule 402.

**Rule 403 Compels Exclusion**: Courts routinely exclude evidence of government investigations and regulatory proceedings because its probative value is minimal and the prejudice

-19-

is great. *See, e.g., Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 480 F. Supp. 3d 1000, 1012 (N.D. Cal. 2020) (Orrick, J.) ("No evidence regarding government investigations, referrals, or prosecutions. . . will be admitted" because "the minimal relevance of this evidence to each side's narrative about this case is significantly outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and waste of time."); *United States v. Sullivan*, 2022 WL 3716594, at *4 (N.D. Cal. Aug. 28, 2022) (Orrick, J.) (excluding evidence of other breaches under 403 as prejudicial and confusing to jurors about scope of present case); *Ake v. General Motors Corp.*, 942 F. Supp. 869, 879–80 (W.D.N.Y. 1996) (excluding evidence of government investigation of manufacturer in product defect case); *THK America, Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 575–76 (N.D. Ill. 1996) (excluding evidence of government investigation of "dumping" in patent infringement case); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt*, 867 F. Supp. 686, 692 (N.D. Ill. 1994) (excluding evidence of government investigation of discrimination in wrongful termination case); *Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.*, 783 F.2d 159, 165 (10th Cir. 1986) (excluding evidence of government antitrust investigation in civil antitrust action); *Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164, 1176 (3d Cir. 1977) (excluding evidence of government investigation of wage discrimination in wrongful termination action).

**The Evidence is Hearsay:**  To the extent Plaintiffs seek to introduce documents, correspondence, transcripts, or findings generated in CDI proceedings for the truth of the matters asserted, such materials are hearsay.  Fed. R. Evid. 801, 802.  The public-records exception does not rescue them: Rule 803(8) does not extend to preliminary, tentative, or interlocutory regulatory materials, and even factual findings from an investigation are inadmissible where "the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). Submissions and positions taken in an adversarial regulatory process addressed to a different subject entirely bear none of the indicia of reliability the exception contemplates.

I.    **Motion *in Limine* No. 9 To Exclude Garza Deposition**

Plaintiffs have designated the deposition transcript of Robert Garza, a former State Farm claim specialist, for use at trial.  Mr. Garza was never deposed in this case.  His testimony was taken in *Ramyead v. State Farm General Ins. Co.*, Los Angeles Sup. Ct., Case No. 20STCV06274,

-20-

an action involving different parties.  Federal Rule of Civil Procedure 32(a)(8) permits use of a deposition from an earlier action only where the later action involves "the same subject matter between the same *parties*."  No class member here was a party to the *Ramyead* Action.

Plaintiffs cannot salvage the transcript through the Federal Rules of Evidence.  Offered for the truth of the matters asserted, Mr. Garza's prior deposition testimony is hearsay.  Fed. R. Evid. 801(c), 802.  The former-testimony exception does not apply.  Mr. Garza appeared as an individual and former State Farm employee.  Plaintiffs cannot establish that Mr. Garza is "unavailable" under Rule 804(a).

Even setting aside the hearsay problem, Mr. Garza's testimony is irrelevant.  Evidence is relevant only if the fact it tends to prove is "of consequence in determining the action."  Fed. R. Evid. 401(b).  Plaintiffs here have offered Mr. Garza's testimony only to support that actual cash value estimates generated before this lawsuit applied depreciation to replacement cost (including sales tax), a practice both the Court and plaintiffs acknowledge is "admitted" and " not disputed." (ECF 183, p. 5; ECF 156, p. 9).  Plaintiffs' characterization binds them in this case.  *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir.2003) (court has discretion to treat "statement made in briefs to be a judicial admission").  Plaintiffs cannot describe a fact as undisputed to obtain summary judgment and then present evidence of the same fact to the jury as though it remained contested.  Mr. Garza was not deposed about any class member's claim and he offers no testimony about any class member's actual cash value payment, repair or replacement costs, policy limits, or recovery.  Testimony that proves only an established, uncontested fact does not make any fact of consequence at trial more or less probable.  Fed. R. Evid. 401, 402.

Even if Mr. Garza's testimony had probative value, it should be excluded under Rule 403.  Whatever slight value the testimony has is limited to supporting a fact that is already established.  Evidence offered to prove a conceded and adjudicated point is the paradigm of "needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *cf. Old Chief v. United States*, 519 U.S. 172, 184-85 (1997) (probative value of evidence must be assessed in light of available evidentiary alternatives, including stipulation).

Presenting the testimony would also confuse the issues and mislead the jury.  Reading

-21-

liability-focused testimony invites jurors to believe that State Farm's practice remains contested and that their task includes deciding whether the practice occurred or was wrongful.  That confusion carries a real risk of unfair prejudice: dwelling on the mechanics of a practice already found unlawful serves no purpose other than to inflame the jury against State Farm on an issue it will not decide, at the expense of the injury and damages questions it must decide.  Finally, reading or playing designated excerpts from an out-of-case deposition—and the responsive counter-designations, objections, and context State Farm would be forced to present—would consume trial time on an issue with no bearing on the verdict.  Each of these dangers substantially outweighs whatever minimal probative value the testimony could have.

For the foregoing reasons, State Farm respectfully requests that the Court exclude from trial the deposition transcript and testimony of Robert Garza.  If the Court allows the testimony over State Farm's objections, State Farm requests the opportunity to present counter-designations.

**J.**        **Motion *in Limine* No. 10 To Exclude Claims Administrator, Cameron Azari**

Plaintiffs intend to call a witness affiliated with the class notice administration firm in this case, Cameron Azari, to testify at trial.  (ECF 119-5, 179).  Mr. Azari's only involvement in this case is administrative.  He is not a fact witness, and not an expert witness that Plaintiffs designated in this case.  (Hoffman Dec., ¶ 4 & Ex. 2).  He has no personal knowledge related to any issue relevant to any element of Plaintiffs' breach of contract claim or State Farm's affirmative defenses.  He previously submitted a declaration describing the implementation and adequacy of the class notice plan: that a postcard and an email were sent to the potential class members identified by Greg Regan.

Class notice is not a jury issue.  Whether notice was adequate and whether it satisfied due process and Rule 23(c)(2) are questions for the Court, not facts for the jury to weigh.  *Roes, 1-2 v. SFBSC*, 944 F.3d 1035, 1043 (9th Cir. 2019) (explaining that class notice is an issue of law).  Federal Rule of Civil Procedure 23(c)(2)(B) directs that "[t]he court must direct to class members the best notice that is practicable under the circumstances," and the sufficiency of that notice is a legal question the court decides. Fed. R. Civ. P. 23(c)(2)(B); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77 (1974).

To the extent Plaintiffs intend to frame Mr. Azari as an expert on class action claims administration, Plaintiffs never disclosed him as such. (Hoffman Dec.,¶ 3 & Ex. 1). That alone supports exclusion. *Unicolors, Inc. v. H&M*, 52 F.4th 1054, 1072-73 (9th Cir. 2022); *Yeti by Molly*, 259 F.3d at 1105-07.

Mr. Azari's purported knowledge of class notice and claims administration also has nothing to do with the elements of the breach of contract claim that Plaintiffs bear the burden to establish as to each potential class member, or to State Farm's affirmative defenses. Only relevant evidence is admissible, and evidence is relevant only if the fact it tends to prove is "of consequence in determining the action." FRE 401(b). *See In re Vaxart, Inc. Sec. Litig.*, 824 F. Supp. 3d 971, 980 (N.D. Cal. 2026) (granting motion in limine to "preclude evidence about 'the nature of modern class action litigation'").

The administrator knows nothing about the terms of potential class member insurance policies, the facts of potential class member claims, the items potential class members claimed were damaged, the payments each class member received from State Farm, payments each class member may still receive as a limits or replacement cost payment, or anything else of consequence to the breach of contract claim and State Farm's affirmative defenses. Testimony that notice was mailed to a list of names does not make it more or less probable that any person on that list was actually damaged by the challenged practice. It is therefore irrelevant. Fed. R. Evid. 401, 402.

Plaintiffs' apparent purpose in calling the administrator confirms why the testimony must be excluded. Plaintiffs want to assuage the jury into being comfortable awarding a *multi-million dollar* verdict against State Farm without Plaintiffs meeting their burden at trial. They want the jury to believe that Mr. Azari can sort everything out "on the back end" and effectively do the jury's job for them. Mr. Azari, not the jury, Plaintiffs will argue, can identify actual, injured class members after trial. Mr. Azari, not the jury, Plaintiffs will claim, can determine if actual class members suffered injury and damages as a result of an actual cash value estimate prepared at some point in the life of their claim. Plaintiffs will argue that the jury should be confident that Mr. Azari will "do the right thing" and that they can leave it to him to decide whether, even if a class member was injured and had damages, one of State Farm's affirmative defenses applies to bar

-23-

liability.  That is not the law, as State Farm exhaustively briefed in its Motion to Decertify and Response to Trial Plan.  (ECF 187, 188).  Due process, the Seventh Amendment, the Rules Enabling Act, and controlling Supreme Court and Ninth Circuit law require the jury, not a claims administrator, to make those determinations.  *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011); *In re Asacol*, 907 F.3d 42, 57 (1st Cir. 2018); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274-5 (11th Cir. 2019); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998).

Allowing Plaintiffs to present Mr. Azari to support a patently improper argument designed to assuage the jury's rightful and well-founded concerns with delegating its function to a claims administrator would not only confuse the jury, but be incredibly and incurably prejudicial to State Farm.  Fed. R. Evid. 403; *United States v. Sullivan*, 2022 WL 3716594, at *4 (N.D. Cal. Aug. 28, 2022) (Orrick, J.) (excluding evidence of another breach as prejudicial and confusing to jurors about what they "need to decide. . . in this circumstance.").  Plaintiffs cannot cure their evidentiary gap and inability to meet their trial burden by their eleventh-hour designation of Mr. Azari as a trial witness.  The Court should exclude any testimony from Mr. Azari at trial.

**K.**     **Motion *in Limine* No. 11 to Permit Testimony of Attorney Jack Weaver if Needed**

State Farm has produced evidence of at least three separate settlement and release agreements entered into by potential class members regarding their subject personal property claims.  (ECF 164-2, p. 11, ¶ 39; p. 1145).  Plaintiffs did not object to that evidence at summary judgment.  State Farm maintains that these documents are also admissible at trial, and qualify as business records.  FRE 803(6).  *If* Plaintiffs contest the admissibility of these documents as business records, however, then State Farm requests leave to subpoena Jack Weaver, whose firm Welty, Weaver & Currie was counsel of record for two of these claimants, to provide the testimony necessary to authenticate these agreements and lay the foundation for their admission. *Mass. Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 478 (N.D. Cal. 1998); *ATS Prods. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 532 (N.D. Cal. 2015) ("concerns 'are less pronounced when . . . the subject matter of the deposition of opposing counsel is. . . *his percipient knowledge of the events surrounding a prior concluded litigation*.") (emphasis in original).  Here, State Farm seeks leave not to question Mr. Weaver on strategy in this litigation, but to authenticate documents.

-24-

**L.        Motion *in Limine* No. 12 to Permit Jay Thorpe to Testify Remotely**

Plaintiffs previously agreed to this request but, on the evening of July 27, 2026, advised that they do not stipulate to it.  State Farm accordingly moves for leave of court to permit fact witness Jay Thorpe to testify remotely at trial.  Jay Thorpe is an important fact witness in this case. He is a Technology Analyst within the P&C Claims Technology Group at State Farm Mutual Automobile Insurance Company.  (ECF 76-4).  Mr. Thorpe's team queried and compiled the ECS data contained in the dataset referred to by the parties as the "Combined *Pitkin* Dataset".  Both sides' experts in this case formed opinions based on that dataset that they intend to offer at trial.

Mr. Thorpe resides in the State of Illinois and outside this Court's subpoena power.  Mr. Thorpe appeared remotely for deposition in this case, and continues to experience significant health issues that limit his ability to travel to Northern California and appear in-person for proceedings in this matter.  He is currently working remotely pursuant to an ADA exception.

The Court has discretion to permit remote testimony at trial with appropriate safeguards. FRCP 43 (a); *Beltran-Tirado v. I.N.S.,* 213 F.3d 1179, 1186 (9th Cir. 2000) (affirming use of telephonic testimony subject to cross-examination for out-of-state witness); *Aoki v. Gilbert*, 2019 WL 1243719, at *2 (E.D. Cal. Mar. 18, 2019) (finding good cause and compelling circumstances to permit videoconference testimony from multiple witnesses outside the court's subpoena power). Geographic distance alone may support an order permitting remote testimony.  *Warner v. Cate*, 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015) (collecting authority).  "Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately."  *Aoki*, 2019 WL 1243719, at *1 (quoting *Warner,* 2015 WL 4645019, at *1).

Dated:  July 27, 2026              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____/s/ Jennifer M. Hoffman_____
JENNIFER M. HOFFMAN
ANDRE J. CRONTHALL
ANNA S. McLEAN
Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY