SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JENNIFER M. HOFFMAN, Cal. Bar No. 240600
ANDRE J. CRONTHALL, Cal. Bar No. 117088
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone:    213.620.1780
Facsimile:    213.620.1398
E-mail:        jhoffman@sheppard.com
               acronthall@sheppard.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ANNA S. McLEAN, Cal. Bar No. 142233
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E-mail:        amclean@sheppard.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JEFFREY S. CROWE, Cal. Bar No. 216055
KATHERINE C. SAMPLE, Cal. Bar No. 259325
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
Telephone:    714.424.8231
Facsimile:    714.428.5997
E-mail:        jcrowe@sheppard.com
               ksample@sheppard.com

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MELISSA PITKIN and DAN GROUT, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>      v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation,<br><br>           Defendants. | Case No. 3:23-cv-00924-WHO<br>Judge:    Hon. William H. Orrick<br><br>**CLASS ACTION**<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE** |

Case No. 3:23-cv-00924-WHO

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................................1

    A.  Opposition To MIL 1 (Seeking Vague, One-Sided Order) ......................................2

    B.  Opposition to MIL 2 (Seeking Trial by Exclusion) ...............................................3

        1.  Due Process Bars Plaintiffs' Trial By Exclusion Request ...........................5

        2.  Plaintiffs Do Not, and Cannot, Dispute Substantial Justification on this Record.......................................................................................................6

        3.  Plaintiffs Waived Any Timing Objection ....................................................8

    C.  Opposition to MIL 3 (Improper Reconsideration Motion Seeking to Exclude Suit Limitations Defense Based on Specious Arguments).......................................8

    D.  Opposition to MIL 4 (Seeking to Bar any Defense to Liability in this Case)..........13

    E.  Opposition to MIL 5 (Seeking Preemptive Exclusion of Business Records and Related Expert Testimony that the Court Already Found Admissible).............15

    F.  Opposition to MIL 6 (Seeking One-Sided Order on Moot Industry Custom Issue) ......................................................................................................................17

    G.  Opposition to MIL 7 (Seeking to Exclude Individualized Evidence of Potentially and Actually Fraudulent, Uncovered Claims) ......................................17

    H.  Opposition to MIL 8 (Seeking One-Sided Order on Moot UCL Remedies Issue) ......................................................................................................................20

    I.  Opposition to MIL 9 (Seeking to Bar State Farm from Cross Examining Regan) .....................................................................................................................20

    J.  Opposition to MIL 10 (Seeking Order Approving Untenable Trial Plan) ...............21

    K.  Opposition to MIL 11 (Seeking to Bar Evidence of Release Defense and Agreements Potential Class Members and Plaintiffs' Own Counsel Signed) .........24

Case No. 3:23-cv-00924-WHO

SMRH:4913-7459-0658.6

STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albano v. Shea Homes Ltd. P'ship*
634 F.3d 524 (9th Cir. 2011)................................................................................................ 10

*Altair Instruments, Inc. v. Telebrands Corp.*
2021 WL 5238787 (C.D. Cal. Feb. 18, 2021)....................................................................... 2, 5

*Ambrosio v. Progressive Preferred Ins. Co.*
154 F.4th 1107 (9th Cir. 2025)............................................................................................ 13, 23

*Apple, Inc. v. Samsung Elecs. Co.*
2012 WL 3536797 (N.D. Cal. Aug. 13, 2012)..................................................................... 19

*April Enterprises, Inc. v. KTTV*
147 Cal.App.3d 805 (1983)................................................................................................. 11

*In re Asacol Anti. Litig.*
907 F.3d 42 (1st Cir. 2018) ................................................................................................. 22, 24

*Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*
595 F. App'x 670 (9th Cir. 2014)......................................................................................... 16

*Aydin Corp. v. First State Ins. Co.*
18 Cal.4th 1183 (1998)........................................................................................................ 18

*Bender v. City of Rialto*
2022 WL 1502514 (C.D. Cal. Mar. 21, 2022) ..................................................................... 2

*Briseno v. ConAgra Foods, Inc.*
844 F.3d 1121 (9th Cir. 2017).............................................................................................. 23

*Brown v. DirecTV*
562 F.Supp.3d 590 (C.D. Cal. Dec. 1, 2021) ...................................................................... 23

*Caldwell v. City of San Francisco*
2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) ..................................................................... 17

*Camenisch v. Umpqua Bank*
763 F. Supp. 3d 871 (N.D. Cal. 2025) ................................................................................. 5

*Carrera v. Bayer Corp.*
727 F.3d 300 (3d Cir. 2013)................................................................................................. 5

*Cassino v. Reichhold Chems., Inc.*
817 F.2d 1338 (9th Cir. 1987).............................................................................................. 24

SMRH:4913-7459-0658.6

STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
  2015 WL 13756254 (N.D. Cal. Aug. 13, 2015)........................................................................7

*China Agritech, Inc. v. Resh*
  584 U.S. 732 (2018) ...............................................................................................................9

*City of Pomona v. SQM N. Am. Corp.*
  866 F.3d 1060 (9th Cir. 2017)................................................................................................1

*Comcast Corp. v. Behrend*
  569 U.S. 27 (2013) ...............................................................................................................14

*Daubert v. Merrell Dow Pharms., Inc.*
  509 U.S. 579 (1993) .............................................................................................................20

*Ebert v. Cnty. of San Bernardino*
  2026 WL 1647370 (C.D. Cal. May 7, 2026)..........................................................................7

*Erie R. Co. v. Tompkins*
  304 U.S. 64 (1938) ..........................................................................................................21, 22

*Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co.*
  953 F.2d 478 (9th Cir. 1991)..................................................................................................8

*Fierro v. Landry's Restaurant Inc.*
  32 Cal. App. 5th 276 (2019)...................................................................................................9

*Finjan, Inc. v. Blue Coat Sys., Inc.*
  2015 WL 4129193 (N.D. Cal. July 8, 2015) ..........................................................................2

*Finjan, Inc. v. Sophos, Inc.*
  2016 WL 4560071 (N.D. Cal. Aug. 22, 2016)........................................................................2

*Gibbs v. State Farm Mut. Ins. Co.*
  544 F.2d 423 (9th Cir. 1976)................................................................................................16

*Gonzalez v. City of Bakersfield*
  2018 WL 2463866 (E.D. Cal. June 1, 2018)..........................................................................1

*Grace v. Apple, Inc.*
  2020 WL 227404 (N.D. Cal. Jan. 15, 2020) ................................................................1, 9, 24

*Guaranty Trust Co. v. York*
  326 U.S. 99 (1945) ...............................................................................................................10

*Guifu Li v. A Perfect Day Franchise, Inc.*
  281 F.R.D. 373 (N.D. Cal. 2012) ........................................................................................19

*Healy v. Milliman, Inc.*
  164 F.4th 701 (9th Cir. 2026)....................................................................................22, 23, 24

*Hildebrandt v. Staples the Office Superstore LLC*
58 Cal. App. 5th 128 (2020)..............................................................................................10

*Hoffmann-La Roche Inc. v. Sperling*
493 U.S. 165, (1989) ..........................................................................................................12

*Hui Cai v. CMB Exp. LLC*
2024 WL 4796318 (C.D. Cal. Oct. 31, 2024) .....................................................................17

*Huynh v. Chase Manhattan Bank*
465 F.3d 992 (9th Cir. 2006)..............................................................................................12

*Hynix Semiconductor Inc. v. Rambus Inc.*
250 F.R.D. 452 (N.D. Cal. 2008) ................................................................................. 3, 6, 8

*Jimenez v. Allstate Ins. Co.*
2019 WL 13088814 (C.D. Cal. May 13, 2019)............................................................. 23, 24

*John Doe 1 v. Univ. of San Fran.*
2026 WL 1959119 (N.D. Cal. July 6, 2026) ......................................................................10

*Johnson v. Gen. Mills Inc.*
2012 WL 13015023 (C.D. Cal. May 7, 2012)..................................................................1, 13

*Jolly v. Eli Lilly & Co*.
44 Cal. 3d 1103 (1988)..........................................................................................................9

*Kardly v. State Farm Mut. Auto. Ins. Co.*
31 Cal. App. 4th 1746 (1995)................................................................................................3

*Liberty Ins. Corp. v. Brodeur*
41 F.4th 1185 (9th Cir. 2022)................................................................................................7

*Long v. Paulson*
349 F. App'x 145 (9th Cir. 2009).................................................................................. 11, 12

*Makaeff v. Trump Univ., LLC*
2014 WL 688164 (S.D. Cal. Feb. 21, 2014) .......................................................................23

*Meyer Intell. Props. Ltd. v. Bodum, Inc.*
690 F.3d 1354 (Fed. Cir. 2012)..........................................................................................22

*Netlist Inc. v. Samsung Elecs. Co.*
2021 WL 6103543 (C.D. Cal. Nov. 17, 2021), *aff'd*, 2023 WL 6820683 (9th Cir. Oct.
17, 2023)......................................................................................................................... 9, 24

*Nitsch v. Dreamworks Animation SKG Inc.*
315 F.R.D. 270 (N.D. Cal. 2016) .......................................................................................23

-iv-

*O'Donnell v. Vencor, Inc.*
465 F.3d 1063 (9th Cir. 2006), *as amended* 466 F.3d 1104 (2006) ........................................ 12

*Partlow v. Jewish Orphans' Home of S. California, Inc.*
645 F.2d 757 (9th Cir. 1981) ..................................................................................... 12

*Payne v. City of Los Angeles*
2023 WL 6850045 (C.D. Cal. Aug. 30, 2023) .............................................................. 19

*Pickern v. Pier 1 Imports (U.S.), Inc.*
457 F.3d 963 (9th Cir. 2006) ..................................................................................... 10

*Prescott v. Reckitt Benckiser LLC*
2022 WL 3018145 (N.D. Cal. July 29, 2022) ............................................................... 17

*R & R Sails, Inc. v. Ins. Co. of Pa.*
673 F.3d 1240 (9th Cir. 2012) ...................................................................................... 7

*Sidibe v. Sutter Health*
103 F.4th 675 (9th Cir. 2024) .............................................................................. 19, 21

*Small v. Allianz Life Ins. Co. of N. Am.*
122 F.4th 1182 (9th Cir. 2024) ................................................................................... 18

*Sprint/United Mgmt. v. Mendelsohn*
552 U.S. at 387 (2007) ............................................................................................... 21

*State Farm Fire & Cas. Co. v. Sup. Ct.*
206 Cal. App. 3d 1428 (1988) .................................................................................... 18

*Stoll v. Runyon*
165 F.3d 1238 (9th Cir. 1999), *as amended* (Mar. 22, 1999) ....................................... 12

*SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*
2026 WL 1309293 (N.D. Cal. May 12, 2026) ......................................................... 3, 13

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) ............................................................................ 14, 18, 22, 23, 24

*Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*
16 Cal. App. 5th 1026 (2017) ..................................................................................... 18

*Tyler v. Travelers Com. Ins. Co.*
499 F. Supp. 3d 693 (N.D. Cal. 2020) ........................................................................ 13

*U.S. ex rel. O'Connell v. Chapman Univ.*
245 F.R.D. 652 (C.D. Cal. 2007) .................................................................................. 7

*U.S. v. Alisal Water Corp.*
431 F.3d 643 (9th Cir. 2005) ...................................................................................... 17

SMRH:4913-7459-0658.6                    STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

*United States v. Childs*
    5 F.3d 1328 (9th Cir. 1993)................................................................................................ 16

*United States v. Curtin*
    489 F.3d 935 (9th Cir. 2007).............................................................................................. 19

*United States v. Pac. Gas & Elec. Co.*
    178 F. Supp. 3d 927 (N.D. Cal. 2016) ............................................................................... 14

*United States v. Vera*
    770 F.3d 1232 (9th Cir. 2014)....................................................................................... 16, 17

*Van v. LLR, Inc.*
    61 F.4th 1053 (9th Cir. 2023)............................................................................................. 13

*Walker Prods., Inc. v. Cong*
    No. 8:23-CV-02201-JVS-ADS, 2026 WL 790758 (C.D. Cal. Jan. 8, 2026) ...................... 7, 15

*Waller v. Truck Ins. Exch.*
    11 Cal.4th 1 (1995).............................................................................................................. 18

*Walmart Stores, Inc. v. Dukes*
    564 U.S. 338................................................................................................................... 5, 13

*Wasco Prods., Inc. v. Southwall Techs., Inc.*
    435 F.3d 989 (9th Cir. 2006).............................................................................................. 10

*Yokoyama v. Midland Nat. Life Ins. Co.*
    594 F.3d 1087 (9th Cir. 2010)............................................................................................ 23

**Statutes**

Cal. Ins. Code § 2051 .............................................................................................................. 2

Rules Enabling Act............................................................................................................. 12, 21

**Other Authorities**

Seventh Amendment ...................................................................................................... 1, 12, 21

FRCP Rule 23................................................................................................................... 23, 24

FRCP Rule 26.............................................................................................................. 4, 5, 6, 8

FRCP Rule 37(c)(1) ........................................................................................................... 6, 8

FRCP Rule 403................................................................................................................ 14, 19

FRCP Rule 408....................................................................................................................... 24

FRCP Rule 602.................................................................................................................. 15, 16

STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

FRCP Rule 703.................................................................................................................... 15, 16

FRCP Rule 802........................................................................................................................... 15

FRCP Rule 803(6) ............................................................................................................ 15, 16, 25

SMRH:4913-7459-0658.6

STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

## PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS

State Farm General Insurance Company ("State Farm") opposes these Motions in Limine as a result of the Court's class certification order, summary judgment order, and Amended Civil Pretrial Order, notwithstanding and subject to its objections that this case cannot proceed as a class action under controlling law as detailed in its Motion to Decertify (ECF 187) and Response to Plaintiffs' Trial Plan (ECF 188), all of which objections and rights are expressly reserved.

## I. INTRODUCTION

While motions in limine may be "useful tools to resolve issues which would otherwise clutter up the trial," *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017), "a party cannot use a motion in limine to sterilize the other party's presentation of the case." *Johnson v. Gen. Mills Inc.*, 2012 WL 13015023, at *1 (C.D. Cal. May 7, 2012). But that is precisely what Plaintiffs seek to do with their Motions in Limine ("MILs"). Plaintiffs' MILs raise due process, Seventh Amendment, and other issues separately framed by State Farm's Motion to Decertify, ask the Court to weigh the evidence State Farm intends to present, and ultimately aim to prevent State Farm from putting forth *any* evidence in its defense at trial. Motions in limine, however, "should not be used to resolve factual disputes or weigh evidence," *Gonzalez v. City of Bakersfield*, 2018 WL 2463866, at *1 (E.D. Cal. June 1, 2018), or as "a substitute for summary judgment." *Grace v. Apple, Inc*., 2020 WL 227404, at *4 (N.D. Cal. Jan. 15, 2020) (MILs are "not the appropriate venue to determine whether the defendant has sufficient evidence to succeed on its defense."). That is what trial is for. It is the jury's job to weigh the evidence; it is not for Plaintiffs with their vague MILs unsupported by the Federal Rules of Evidence or case law to bar State Farm from presenting admissible evidence at trial negating Plaintiffs' claim that actual cash value estimates prepared at some point in the life of a claim actually injured Plaintiffs or potential class members, or that Plaintiffs have met their burden of demonstrating the fact and amount of damages to each actual class member by a preponderance of the evidence.

Plaintiffs also did not exchange MIL Nos. 3, 9, 10, and 11 during the pretrial meet-and-confer process, and have no justification for their failure to do so. ECF 181, p. 1. The Court may separately deny those Motions on that ground alone, without even reaching the merits.

-1-

Case No. 3:23-cv-00924-WHO

STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

**A.    Opposition To MIL 1 (Seeking Vague, One-Sided Order)**

Plaintiffs' MIL 1 should be denied as framed.  In addition to arguments challenging the Court's summary judgment Order interpreting California Insurance Code section 2051, it asks the Court to exclude various categories of evidence, including evidence that Plaintiffs intend to rely on at trial.  The order plaintiffs seek is redundant of the Court's summary judgment order, impermissibly broad and vague, and entirely one-sided.  For those reasons, it should be denied.

As to rearguing the summary judgment Order (ECF 183), "[t]he parties do not need a motion in limine ruling to know that they must comply with the Prior Order[s] and other relevant law." *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at * 11 (N.D. Cal. Aug. 22, 2016) (Orrick, J.) (denying MIL as "redundant and unnecessary").  The Court's Order resolved the statutory interpretation question for purposes of these proceedings.  (ECF 183).  State Farm will not reargue it at trial.[1]  Plaintiffs also should not reargue it because their position is that it is irrelevant.  ECF 194, p. 7 ("the jury's role at trial is simply to determine damages—not to revisit the legality of State Farm's business practice or the statute's meaning.").

There are at least three more reasons MIL 1 should be denied.  First, the MIL identifies no specific exhibits or testimony Plaintiffs seek to exclude, which alone is a basis for denial.  *See Altair Instruments, Inc. v. Telebrands Corp.*, 2021 WL 5238787, at *1 (C.D. Cal. Feb. 18, 2021) ("[M]otions in limine must identify the evidence at issue and state with specificity why such evidence is inadmissible.").  It is framed so broadly that it appears to apply even to the Plaintiffs' policy.  (ECF 194, p. 1:9).  Far from simplifying trial, the motion in limine would leave the parties squabbling over its scope and application.  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4129193, at *2 (N.D. Cal. July 8, 2015) (denying motion in limine that "sweeps too broadly" and "preclude[s] Defendant from introducing generalized background information about its business.").

Second, it ignores that relevance is not exclusive to a single issue.  *Cf. Bender v. City of Rialto*, 2022 WL 1502514, at *5 (C.D. Cal. Mar. 21, 2022) ("[Plaintiff's] argument is a classic

---

[1] State Farm notes that its compliance with the Order for purposes of these proceedings does not waive its rights to challenge the Order on appeal, which rights State Farm expressly reserved.

strawman.  Irrelevance to one claim does not mean irrelevance for all.")  For example, categories (g) through (i) ("generalized inflation materials," "pricing-strategy literature," and "marketing or economics publications") bear on whether State Farm may have paid more to Plaintiffs than Plaintiffs were entitled to receive under their contract, irrespective of the statutory interpretation question.  State Farm will show that its homeowners' policies generally provide for actual cash value of personal property at the time of a covered loss.  State Farm will also show that Plaintiffs did not present an actual cash value claim until 2023, three years after their loss.  Evidence regarding inflation during that three-year time period will support that State Farm's actual cash value estimate exceeded what Plaintiffs were entitled to receive, even under the challenged estimating approach.  If State Farm offers any such material at trial, Plaintiffs can raise a specific objection in context, and the Court can rule with the benefit of knowing what the exhibit is and why it is offered.  *SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*, 2026 WL 1309293, at \*2 (N.D. Cal. May 12, 2026) (denying motion in limine because it is "so broad in scope that the Court cannot give a ruling that makes sense prior to the presentation of evidence.").

Third, this MIL seeks to exclude State Farm from referring to evidence that Plaintiffs themselves intend to offer at trial.  Category (e) asks the Court to bar State Farm from referencing the *Ramyead* case.  (ECF 194, p. 1:12).  Yet, Plaintiffs have identified a witness in the *Ramyead* case and designated portions of deposition testimony from the *Ramyead* case to be read to the jury at trial.  (ECF 189-1, Ex. 75).  Barring State Farm from referencing evidence that Plaintiffs intend to raise would raise fundamental unfairness concerns and severely prejudice State Farm.  *Hynix Semiconductor Inc. v. Rambus Inc.*, 250 F.R.D. 452, 458 (N.D. Cal. 2008)  (denying motion in limine to exclude deposition testimony because "in effectively managing cases, a court must be mindful of the potential for opportunism"); *Kardly v. State Farm Mut. Auto. Ins. Co.*, 31 Cal. App. 4th 1746, 1752–53 (1995) (where plaintiffs "took tactical advantage of the exclusion of evidence" regarding claim settlement, State Farm was deprived of the ability to present probative evidence on its defense, resulting in a denial of due process and a miscarriage of justice.").

**B.      Opposition to MIL 2 (Seeking Trial by Exclusion)**

MIL 2 asks the Court to order a trial by exclusion based on the same arguments raised in

Case No. 3:23-cv-00924-WHO

STATE FARM'S OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE

their Trial Plan (184). State Farm detailed the reasons why Plaintiffs' arguments failed in its Response to Plaintiffs' Trial Plan (ECF 188) and incorporates that briefing in full by reference here. The Court should deny the MIL 2, which effectively complains about discovery Plaintiffs did not do and information State Farm produced to Plaintiffs months ago and could not have produced sooner, either because it did not exist or because Plaintiffs had not yet identified even potential class members. In particular, Plaintiffs complain about State Farm's production of an updated dataset, known as the February 2026 ECS Update, last winter, and expert supplementation and document production regarding potential class claims that State Farm relied on at summary judgment. Plaintiffs raised *no* objection then. (*See* ECF 156).

Plaintiffs do not, and cannot, argue that State Farm had the February 2026 data sooner, because it did not exist before February 2026. That is because the data is live, changing every day as individual claims continue to develop, individual insureds continue to make replacement cost claims, and State Farm continues to issue replacement cost payments, among any number of other things that may happen on a particular claim over time. Plaintiffs also disregard that State Farm prepared and produced the February 2026 ECS Update consistent with the Court's February 5, 2026 order approving Plaintiffs' class notice plan. (ECF 164-1, ¶ 9).

Nor can Plaintiffs argue that State Farm could have produced, but failed to produce, evidence regarding potential class member claims before the fact discovery cutoff, because no one knew who Plaintiffs contended was in the class then. Fact discovery closed under the Court's Scheduling Order on May 8, 2025 (ECF 55), the Court certified the class in July 2025 (ECF 102), Plaintiffs' expert first identified *potential* class members in late September 2025 (ECF 127, Ex. B), and Plaintiffs have still failed to identify *actual* class members with Article III standing.

Plaintiffs also knew that State Farm was actively investigating potential class member claims once Plaintiffs disclosed whom they contended *might* be in the class. State Farm repeatedly amended its Rule 26 Disclosures after class certification—each time identifying potential class members as potential witnesses, identifying potential class member claim files as they were identified in its investigation and produced to Plaintiffs, and reserving the right to rely on documents regarding other potential class member claims identified in its investigation. (ECF

164-1; ECF 187-1 & Ex. A). Plaintiffs' motion mischaracterizes both the record and the law, as State Farm produced this evidence pursuant to Court order and its mandatory supplementation obligation under Rule 26(e).

MIL 2 should be denied on its merits, or simply on procedural grounds as it fails to specify any particular item of evidence, instead opting for broad references to State Farm's evidence. (ECF 194) (seeking exclusion of a "very large number of undisclosed claim-file documents and data"); *Altair*, 2021 WL 5238787, at *1 ("motions in limine must identify the evidence at issue and state with specificity why such evidence is inadmissible."); *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 894 (N.D. Cal. 2025) ("Motions in limine that seek exclusion of broad and unspecific categories of evidence are generally disfavored.").

### 1.    Due Process Bars Plaintiffs' Trial By Exclusion Request

A class action defendant "has a due process right to raise individual challenges and defenses to claims." *Carrera v. Bayer Corp*., 727 F.3d 300 (3d Cir. 2013). "A defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of a plaintiff's claim." *Id*.; *See, e.g. Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 367. Barring State Farm from challenging potential class member claims with evidence that did not exist or which it could not reasonably gather before the May 2025 discovery cutoff would fundamentally violate State Farm's due process rights, especially where: (1) Plaintiffs did not even identify potential class members until months *after* the discovery cutoff, and (2) the evidence Plaintiffs seek to exclude for the first time on the eve of trial goes directly to class membership, injury, liability and damages—the only issues remaining to be tried in this case.

As to the February 2026 ECS Update, that data was not available in May 2025, or in August 2025. It existed in February 2026. State Farm produced it to Plaintiffs consistent with the Court's February 5, 2026 order directing State Farm to provide current data to the class notice administrator for notice purposes. (ECF 145, 164-1 ¶ 9). Because the February 2026 data did not exist before February 2026, State Farm's experts could not review the data before then either.

Similarly, State Farm did not have a fair opportunity to investigate potential class member claims before May 2025, because Plaintiffs did not identify potential class member claims until late September 2025.  (ECF 127, Ex. B).  In his September 25, 2025 report, Regan identified about 40,000 *potential* class members from an August 2025 dataset that included approximately 133,000 rows of claims data.  (ECF 127, Ex. C, p. 286).  Regan identified potential class members by applying seven, previously undisclosed, exclusion criteria to the August 2025 dataset.  (*Id*.).

Upon learning who Plaintiffs contended might be in the class, State Farm expeditiously investigated potential class claims.  State Farm also disclosed its investigation to Plaintiffs, and repeatedly supplemented its Rule 26 disclosures.  In each supplemental disclosure served after class certification, State Farm identified potential class member claimants as witnesses, identified potential class member claim documents found in its investigation as of that time that it may rely on at trial, and reserved the right to rely on other potential class members' claims identified during its investigation, as the investigation continued.  (ECF 164-1, 187-1).  State Farm produced all of the evidence Plaintiffs now complain about by the summary judgment stage.  Plaintiffs cite *nothing* to support that State Farm's updates to claims data and associated testimony are not proper supplemental disclosures under Rule 26(e), given these timing considerations, not subject to exclusion under 37(c)(1).  Indeed, State Farm timely supplemented its Rule 26 disclosures *five times* after class certification.  (ECF 164-1; ECF 187-1).  Plaintiffs raised no objection until now.

Given the procedural posture of this case, State Farm's diligence and inability to produce the challenged evidence sooner or before the May 2025 fact discovery cutoff, and due process implications, the motion in limine should be denied.  *Hynix*, 250 F.R.D. at 458 (denying motion in limine to exclude deposition where counsel claimed that they had not understood said deposition transcript would be admissible at trial because "[f]ailing to review the case management order's plain text, consider the order's implications, or raise a timely objection ensures later chaos.").

**2.    Plaintiffs Do Not, and Cannot, Dispute Substantial Justification on this Record**

Plaintiffs rely on Rule 37(c)(1), but ignore that its exclusion remedy does not apply if the disclosure was *either* "substantially justified" *or* "harmless."  Fed. R. Civ. P. 37(c)(1).  Notably absent from Plaintiffs' MIL 2 is *any* argument disputing substantial justification based on the

-6-

Case No. 3:23-cv-00924-WHO
STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

timing and procedural posture of this case.  A disclosure is substantially justified where the producing party has a compelling reason it could not have previously produced the evidence.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756254, at *4 (N.D. Cal. Aug. 13, 2015).  Harmlessness is assessed by weighing prejudice, surprise, bad faith, and disruption to trial.  *See Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022).  And where a requested exclusion order would operate as a dismissal of a party's claim or defense, the Court must consider whether the noncompliance involved willfulness, fault, or bad faith, and must consider lesser sanctions.  *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012).[2]

No such evidence exists here.  Plaintiffs also raise no cogent argument disputing substantial justification or supporting harm under the applicable standard.  Plaintiffs suggest that the February 2026 ECS Update existed during the discovery period, but this makes no sense. (ECF 194, p. 5:23-24).  Neither the updated data nor the declarations derived from it existed before February 2026 because, as even Plaintiffs' recognize, the data is live and constantly changing.  Once the February 2026 data became available, State Farm disclosed it to Plaintiffs in February 2026, as Plaintiffs concede.  (ECF 184, p. 3:20).  Plaintiffs also do not, and cannot, claim that State Farm knew who Plaintiffs contended might be in the class before September 2025 because Mr. Regan did not identify potential class members until then and only after culling down a dataset containing more than 130,000 rows of claims data to about 40,000 claims.  (ECF 127, Ex. C, p. 286).

The evidence is also harmless.  Plaintiffs cannot credibly claim prejudice or surprise.  They never moved to reopen fact discovery of State Farm (even though they did not identify potential

---

[2] *See also Walker Prods., Inc. v. Cong*, No. 8:23-CV-02201-JVS-ADS, 2026 WL 790758, at *3 (C.D. Cal. Jan. 8, 2026) (imposing lesser sanctions, finding that exclusion "would be overly harsh" and alternative sanctions would "adequately ameliorate the harm" caused by late disclosures); *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 652, 655 (C.D. Cal. 2007) (declining to exclude untimely evidence, even where it appeared to be a trial strategy, as lesser sanctions could adequately remedy any prejudice); *Ebert v. Cnty. of San Bernardino*, 2026 WL 1647370, at *2 (C.D. Cal. May 7, 2026) (declining to exclude witness declarations despite untimely disclosure where the record reflected no bad faith or prejudice to the objecting party); *Liberty Ins. Corp.*, 41 F.4th at 1192 (reversing decision by the district court to exclude evidence, in part, where it failed to adequately analyze whether the untimely disclosures were willful or in bad faith).

class members until months after the fact-discovery cut-off).  They have had the evidence for months.  They responded to the evidence at summary judgment.  And they failed to object until now.  The data will have no disruptive effect on the proceedings, as Plaintiffs are not asking for a continuance or more fact discovery.  To the contrary they "vigorously oppose reopening discovery or delaying trial." (ECF 194, p. 6:24).  Instead, they want to proceed to a class action trial based simply on their own claim and Mr. Regan's aggregate damages model and, in violation of State Farm's rights, have a claim administrator resolve class membership, injury, affirmative defenses, and damages.

### 3.    Plaintiffs Waived Any Timing Objection

Finally, Plaintiffs have waived any objections to the updated data and supplemental disclosures.  The Court's prior orders anticipate supplemental productions, Rule 26(e) required it, and plaintiffs concede they have had all of the challenged evidence for months.  Yet, they never sought to re-open discovery of State Farm.  All challenged evidence was produced at or before the summary judgment stage, and Plaintiffs repeatedly cited and engaged with it in their reply brief without raising any objection.  (ECF 167, pp. 1:15–17; 10:13–15; 12:10–11; ECF 187-1, Ex. C p. 14:8–22).  Their belated objections contravene this Court's local rules and Ninth Circuit precedent.  Civil L.R. 7-2(c) ("[A]ny evidentiary and procedural objections to the opposition must be contained in the reply brief or memorandum."); *Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 484–85 (9th Cir. 1991); *Hynix*, 250 F.R.D. at 458 ("the court considers any objection to the provision of the order treating some depositions as though they were taken in this case waived and the Manufacturers have not shown good cause for relief" on motion in limine).

The Court should deny MIL 2, whether based on waiver, failure to satisfy Rule 37(c)(1), due process grounds, or procedural grounds given the broad, unspecified order it requests.

### C.    Opposition to MIL 3 (Improper Reconsideration Motion Seeking to Exclude Suit Limitations Defense Based on Specious Arguments)

MIL 3 asks the Court to hold that equitable tolling and *American Pipe* tolling defeat State Farm's suit limitations defense across the class.  It fails for at least three reasons.

SMRH:4913-7459-0658.6

**Improper Motion for Reconsideration:**  First, it amounts to an improper Motion for Reconsideration of the Court's summary judgment Order.  The Court's Order recognized the factual dispute regarding application of the suit limitation defense to particular class member claims, among other factual disputes, when it denied summary judgment on Plaintiffs' breach of contract claim.  (ECF 183, p. 20:10-16 (discussing State Farm's suit limitations defense) & p. 21:11-13 ("But who among [the potential class members] has actually suffered economic damage is hotly in dispute, and plaintiffs have not shown yet how they will meet all of State Farm's challenges to Regan's methodology *or the affirmative defenses* …").  Plaintiffs' request that the Court now "exclude" the suit limitations defense is an improper motion for reconsideration of the Order on that point.   (ECF 194, p. 14).  Motions in limine are not motions for reconsideration or "a substitute for summary judgment."  *Grace*, 2020 WL 227404, at *4 (MILs are "not the appropriate venue to determine whether the defendant has sufficient evidence to succeed on its defense."); *Netlist Inc. v. Samsung Elecs. Co.*,  2021 WL 6103543, at *6 (C.D. Cal. Nov. 17, 2021), *aff'd*, 2023 WL 6820683 (9th Cir. Oct. 17, 2023) (denying motion in limine because it required deciding element of plaintiff's case as matter of law and "motions in limine should not be disguised motions for summary adjudication of issues.").

**_American Pipe_ Tolling Inapplicable_:_**  Second, controlling authority that Plaintiffs ignore bars their argument that *American Pipe* tolling applies to follow-on class actions.  It does not, as both the United States Supreme Court and the California Supreme Court have squarely held.  *China Agritech, Inc. v. Resh*, 584 U.S. 732, 736 (2018) ("*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations."); *Fierro v. Landry's Restaurant Inc*., 32 Cal. App. 5th 276, 297 (2019) ("*American Pipe* tolling does not apply to any later class claims.").  Plaintiffs do not, and cannot, justify their failure to acknowledge this controlling authority in their MIL given their duty of candor to this Court.

*American Pipe* tolling can only apply to extend the limitations period for subsequent *individual* actions brought by putative class members after denial of class certification.  *Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1119 (1988) (*American Pipe* holds that "under limited circumstances, if class certification is denied, the statute of limitations is tolled from the time of

-9-

commencement of the suit to the time of denial of certification for all purported members of the class who . . . timely file their *individual* actions.") (emphasis added).  This is a diversity case, so California law supplies the limitations period and the tolling rules.  *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945); *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).  However, California and federal courts agree: *American Pipe* tolling does not apply to follow-on class actions.  Absent class members who did not timely file individual actions cannot borrow *Ramyead*'s filing date to save untimely claims here.

Plaintiffs' authority all involved later individual claims, *not* follow-on class claims.  *John Doe 1 v. Univ. of San Fran.*, 2026 WL 1959119 (N.D. Cal. July 6, 2026), applied *American Pipe* tolling to individual claims filed after class certification was denied, not to successive class actions.  *Id.* at **2–5.  *Hildebrandt v. Staples the Office Superstore LLC*, 58 Cal. App. 5th 128, 145 (2020), likewise addressed whether *American Pipe* tolled an individual plaintiff's later suit. *Id.* at 142 n.5.

Plaintiffs' suggestion that State Farm's class certification briefing somehow bears on this issue is wrong.  Plaintiffs' bolded-and-italicized quotation (that *Ramyead* was potentially "broader" than this case) is true: *Ramyead* was potentially broader precisely because, as an earlier filed suit, it could have swept in claims barred by the suit limitations provision in this case.

The posture of *Ramyead* also makes *American Pipe* inapplicable to any claim here. *Ramyead* did not end in a denial of class certification.  It ended with judgment for State Farm on the merits.  Plaintiffs identify no authority holding that *American Pipe* tolling applies where the prior class action was resolved in the defendant's favor on the merits.

**Equitable Tolling Inapplicable and Fact Sensitive**:  Third, Plaintiffs' discovery rule and equitable tolling arguments fail on the merits.  But, even if the Court found that those theories could apply here, they only serve to raise more individualized issues that cannot be determined across the class, further supporting that this case cannot proceed to trial as a class action.

The pleadings frame the issues in this case.  *See, e.g., Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006).  Nowhere does the operative Complaint allege *facts* supporting that

-10-

State Farm somehow concealed or failed to disclose to Plaintiffs or potential class members that it estimated actual cash value by applying depreciation to replacement cost, which includes retail price and applicable sales tax. (ECF 41). Nowhere do Plaintiffs offer any *evidence* to support either theory, which they bear the burden to establish. *Long v. Paulson*, 349 F. App'x 145, 147 (9th Cir. 2009) (equitable tolling not supported where plaintiff failed to "allege, much less offer evidence to show" facts supporting the defense); *April Enterprises, Inc. v. KTTV*, 147 Cal.App.3d 805, 832 (1983) ("the plaintiff bears the burden of proof on the discovery issue").

Nor can they meet their burden, as Plaintiffs' briefing, Plaintiffs' sworn declarations, and the Court's Orders conclusively negate any equitable estoppel or delayed discovery here—they universally maintain that State Farm's estimating approach was apparent from the claim documentation they received from State Farm. (ECF 61) (Plaintiffs' Motion to Certify Class asserting that State Farm's application of depreciation to replacement cost, including sales tax, "is also apparent from the written estimate it provided Plaintiffs"); (ECF 64, ¶ 9) (Declaration of named plaintiff Melissa Pitkin recounting that her review of the Payment Tracker Worksheet that State Farm provided with its payments reflected that it applied depreciation to replacement cost, including sales tax, in estimating actual cash value); (ECF 65, ¶ 9) (Declaration of named plaintiff Dan Grout making the same assertion); (ECF 102, p. 3:8-13, p. 7:7-8) (Order recounting that State Farm sent Plaintiffs worksheets "that showed their ACV benefits for their personal property" and Plaintiffs' contention that the approach "is further evidenced by the written estimate provided to them"). Given Plaintiffs' sworn declarations and judicial admissions, their new assertion that it was "impossible" for class members to know how State Farm estimated actual cash value, or that State Farm's approach was "secret", such that the discovery rule or equitable tolling could apply here, is specious. (ECF 194, p. 8:15, 27).

Second, even if the discovery rule or equitable tolling could apply to potential class members, notwithstanding Plaintiffs' contrary judicial admissions, application of either doctrine is inherently fact-sensitive and individualized, and each class member bears the evidentiary burden to establish the doctrine as to their individual claim. Plaintiffs' authorities all recognize that tolling turns on particularized facts that the party asserting the theory bears the burden to prove

and all involved individual plaintiffs, not class actions. *See, e.g., Long v. Paulson*, 349 F. App'x 145, 147 (9th Cir. 2009) (tolling not supported where plaintiff failed to produce evidence supporting it); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006) (affirming dismissal of claim because plaintiffs alleged no facts to support that any "extraordinary circumstances beyond [their] control made it impossible to file the claims on time"); *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006), *as amended* 466 F.3d 1104 (2006) ("Equitable estoppel is not warranted here because there is no 'evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct.'") (citation omitted); *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22, 1999) (tolling applied where plaintiff "produced more than sufficient evidence" of extraordinary circumstances beyond her control).[3]  Thus, even if the Court found that equitable tolling could apply here, its application would have to be decided on a claim-by-claim basis as to each of the approximately 40,000 potential class members.  Plaintiffs' new assertion of these individualized, fact-sensitive theories only adds to the reasons why a class action trial is inappropriate here, and why State Farm's Motion to Decertify should be granted.

**Claim Administrator Cannot Resolve Affirmative Defenses:** Finally, Plaintiffs' fallback position that State Farm's suit limitations defense "should not be presented to the jury, and instead "handled during the claims process" concedes State Farm's point that this case cannot be tried as a class action consistent with due process, the Seventh Amendment, the Rules Enabling Act, or controlling Supreme Court authority.  (ECF 194, p. 11:9-11).  As detailed in State Farm's Motion to Decertify (ECF 187) and Response to Plaintiffs' Trial Plan (ECF 188), State Farm is entitled to a jury trial on its affirmative defenses.  The case cannot proceed to a class action trial without providing State Farm with that right.  Plaintiffs' continued suggestion that a claims administrator, not a jury, resolve State Farm's affirmative defenses only underscores that Plaintiffs have no plan

---

[3] The only case Plaintiffs cite in the class action context is inapposite.  It contemplated tolling for certain members based on an improper "solicitation" by named plaintiffs' counsel, not any purported concealment by the defendant. *Partlow v. Jewish Orphans' Home of S. California, Inc.*, 645 F.2d 757, 760 (9th Cir. 1981), abrogated by *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, (1989) ("we do not believe that the consenting employees in this case should be assigned the responsibility for the actions of named plaintiffs' counsel in soliciting their participation.")

to try this case as a class action consistent with controlling law.[4]  MIL 3 should be denied and the Motion to Decertify should be granted.

**D.    Opposition to MIL 4 (Seeking to Bar any Defense to Liability in this Case)**

MIL 4 contains a hodgepodge of arguments that collectively seek to deprive State Farm of any defense to liability.  The Court should deny it.  *Johnson,* 2012 WL 13015023, at *1.

**"Mitigation Defense" Misnomer.**  Plaintiffs' first argument mislabels State Farm's evidence negating injury-in-fact as a "mitigation defense" and then attacks the label.  State Farm does not assert an affirmative defense contending that class members had a duty to replace their property or to shop for bargains.  Rather, State Farm maintains that evidence that a class member replaced property and then never made a replacement cost claim, negates injury and causation, which Plaintiffs bear the burden to prove.  As the Court has already found, an insured's decision to replace property but not make a replacement cost claim under the contract may relate directly to injury and standing by breaking any causal chain flowing from an initial actual cash value payment.  (ECF 117) ("[I]f Plaintiffs replaced their property for more than their received ACV payment and yet choose not to make an RC claim, such a choice could show that their damages are attributable to their decision to not make an RC claim.").  Where a claimant replaces property, but chooses not to make a replacement cost claim, any claimed injury may be due to the insured's choice, *not* State Farm's estimating approach.  *See, e.g.*, *Tyler v. Travelers Com. Ins. Co*., 499 F. Supp. 3d 693, 699-700 (N.D. Cal. 2020) (insured, not insurer, had caused any alleged underpayment where insured purchased home in another location for less than actual cash value of destroyed home).

Reframing this causation dispute as a "defense" does not support exclusion.  *SVB Fin. Tr.*, 2026 WL 1309293, at *5 (defendant's "framing of its MIL No. 1 that the Trust should be barred from presenting undisclosed 'defenses to affirmative defenses' is unpersuasive and unhelpful" and

---

[4] *See, e.g. Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims."); *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025) (insurer "is entitled to 'invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims. . . .'"); *Van v. LLR, Inc*., 61 F.4th 1053, 1067 (9th Cir. 2023).

-13-

Case No. 3:23-cv-00924-WHO

STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

denying motion in limine to preclude evidence challenging causation notwithstanding prior ruling barring presentation of a mitigation affirmative defense).

**No Basis to Exclude Evidence of Plaintiffs' Replacement Cost Claim**: Plaintiffs also ask that the Court exclude any evidence or argument regarding their own replacement cost claim. They cite no authority in support of their request, nor can they. This Court previously ordered the reopening of discovery specifically regarding Plaintiffs' replacement cost claim, finding "whether Plaintiffs intend to make a RC claim and, if not, why" relevant to their claimed injury and damages. (ECF 117, p. 2:6-10). The Court also found that Plaintiffs had conceded the same point. (ECF 117) ("As Plaintiffs acknowledge, Plaintiffs' RC claim 'may impact class standing and total damages.'").

Replacement cost matters to not only injury and damages, but also class membership, because a claimant settling their claim on a replacement cost basis is not in the class. Thus, evidence of replacement cost settlements is central to the existence of class membership and injury, or standing, which Plaintiffs and every absent class member must have in order to obtain any relief from this Court. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages."); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Moreover, *Plaintiffs* put their own replacement cost claim at issue by making it in November 2025. Cross-examination on claims made and documents provided by a party is not a "sideshow"; it is trial. Whether any particular question strays into undue prejudice is a matter for a contemporaneous Rule 403 objection, not advance categorical exclusion. *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) ("Rulings on admissibility of evidence normally should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.") (Orrick, J.) (quotation omitted).

**Claim Development Evidence is Relevant and Admissible, Not "Speculation":** Next, Plaintiffs ask the Court to exclude *all* evidence of *any* replacement cost claim. (ECF 194, pp. 12:26-14:6). They appear to equate claim development –which they concede exists, and their own evidence supports—with "speculation." That is a false comparison.

-14-

SMRH:4913-7459-0658.6

State Farm produced significant evidence of claim development that it intends to present at trial through fact and expert witnesses and documentary evidence. (ECF 164-2, 164-7, and 164-8). It is the same evidence that it presented on summary judgment, without objection from Plaintiffs, and which supported denial of summary judgment based on the hotly disputed question of injury-in-fact. (ECF 183, p. 21). Claim development relates directly to what even Plaintiffs' acknowledge matters: "current" injury and damage. (ECF 194, p. 13:10).

Plaintiffs' argument that evidence of what may happen on any particular claim is irrelevant also fails in light of the class definition, which they wrote. The definition limits class claims to those that not only involved covered losses and actual cash value payments, but that are also "*reasonably certain to be paid* benefits in an amount that is less than the applicable policy limits." (ECF 41, ¶ 46). Reasonable certainty requires a present determination regarding future facts.

Finally, and contrary to Plaintiffs' suggestion, the Court's certification Order does not control the measure of damages—the evidence does. When the Court certified the class, there was no executed damages model. Now there is. The Court has determined that it will be admissible at trial, over State Farm's objections. State Farm has a due-process right to challenge that evidence, and cast doubt on its reliability whether through cross-examination or its own presentation of evidence. The Court should deny MIL 4 in its entirety.

**E.      Opposition to MIL 5 (Seeking Preemptive Exclusion of Business Records and Related Expert Testimony Already Found Admissible)**

MIL 5 asks the Court to rule, in the abstract, that unidentified testimony from State Farm's witnesses about business records produced in this case will violate Rules 602, 703, and 802. The motion is premature and overbroad: whether a particular witness has personal knowledge of a particular matter, and whether a particular record satisfies Rule 803(6), can only be assessed question by question and exhibit by exhibit. *Walker Prods., Inc. v. Cong*, 2026 WL 790758, at *11 (C.D. Cal. Jan. 8, 2026) ("Because of the contextual nature of hearsay exceptions, the Court is hesitant to place a blanket exclusion on Walker introducing third-party statements about Defendants doing business with their customers.").

-15-

In addition to being premature, it is also wrong.  Claim files and claims-system records maintained in the ordinary course of State Farm's business are classic business records under Rule 803(6), and the foundation may be laid by any "qualified witness" familiar with the recordkeeping practices.  *Gibbs v. State Farm Mut. Ins. Co.*, 544 F.2d 423, 428 (9th Cir. 1976) ("memorandum fits within the business records exception to the hearsay rule.  (citation omitted.)  The testimony of several witnesses established State Farm's 'regular practice' of preparing memoranda relating to a claim and of circulating them among its departments. . . .")  The witness "does not have to be the custodian of documents. . . to establish Rule 803(6)'s foundational requirements."  *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993); *see also Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, 595 F. App'x 670, 672 (9th Cir. 2014) (insurance company's payment ledgers were admissible as business records).

Donna Blazewich need only "understand [the business's] record-keeping system."  She need not have adjusted a claim to testify that claim records were made and kept in the regular course of business and to explain what those records show; that is precisely what a records witness does.  (ECF 164-2, p. 2, ¶¶ 2-3).  Rule 602's personal knowledge requirement is satisfied by her knowledge of the records and systems themselves.

As for Dr. Steffey, Rule 703 expressly permits an expert to base opinions on facts and data he "has been made aware of" if experts in the field would reasonably rely on them—and statisticians analyzing insurer claims data rely on exactly this type of evidence.  His opinions result from "applying his extensive experience and a reliable methodology", which Ninth Circuit law requires and which the Court has already found.[5]  *United States v. Vera*, 770 F.3d 1232, 1237-38 (9th Cir. 2014); (ECF 183, p. 53:17-18) ("Dr. Steffey properly critiqued Regan's assumptions in the Combined Pitkin Dataset, a topic which he, as a statistician, may opine.").

Plaintiffs' authority does not assist them.  *Vera* was a criminal case that analyzed admission of evidence in light of the Confrontation Clause, which has no application to business

---

[5] For this reason, too, MIL 5 amounts to an improper reconsideration motion of the Court's Order on Plaintiffs' Motion to Exclude Dr. Steffey's testimony.  (ECF 183, p. 54:2) ("In sum, I will not exclude Steffey's testimony.").

-16-

records in a civil damages trial. *Vera*, 770 F.3d at 1238; *U.S. v. Alisal Water Corp.*, 431 F.3d 643, 658 (9th Cir. 2005). Similarly, *Caldwell v. City of San Francisco*, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021), recounts that "expert witnesses may not simply repeat hearsay without bringing their expertise to bear" on it. That does not apply here, as the Court already found that Dr. Steffey applied his expertise to form his opinions, which "raise[] important questions about Regan's methodology that go to the heart of this dispute—questions regarding standing, injury, and how to identify class membership. His opinions are relevant. They can be tested. And they may assist the trier of fact in resolving the question of damages and standing in this case." (ECF 183, p. 53:1-4); *see also Prescott v. Reckitt Benckiser LLC*, 2022 WL 3018145, at *8 (N.D. Cal. July 29, 2022) (explaining that *Caldwell* is inapplicable where expert has undertaken his own analysis based on his expertise); *Hui Cai v. CMB Exp. LLC*, 2024 WL 4796318, at *15 (C.D. Cal. Oct. 31, 2024) (denying motion in limine based on *Caldwell* because expert's "robust report is much more than a conduit for otherwise inadmissible hearsay.").

If, at trial, Plaintiffs believe a specific question calls for inadmissible hearsay, the objection can be raised then with the context the Court needs to rule. MIL 5 should be denied.

## F.    Opposition to MIL 6 (Seeking One-Sided Order on Moot Industry Custom Issue)

State Farm does not intend to argue that industry custom made its estimating approach lawful at trial; the Court's summary judgment order controls these proceedings. However, Plaintiffs should also be barred from suggesting that State Farm's estimating approach was *not* industry standard. The Court should deny MIL 6 as moot, or order that neither party can present evidence of industry custom regarding actual cash value estimating approach. If no reciprocal order enters, and Plaintiffs raise the issue at trial, State Farm reserves the right to respond.

## G.    Opposition to MIL 7 (Seeking to Exclude Individualized Evidence of Potentially and Actually Fraudulent, Uncovered Claims)

Plaintiffs concede that "[t]o the extent that any specific claim was proven to be actually fraudulent, it would fall out of the class." (ECF 194 at 16:17-18). A fraudulent claim is not a covered claim, and a covered claim is a requirement of class membership in this case. (ECF 102). Plaintiffs bear the affirmative evidentiary burden of demonstrating that each class member

-17-                                    Case No. 3:23-cv-00924-WHO

presented a covered claim, which State Farm maintains they cannot meet. But even if they had evidence supporting their threshold burden, State Farm's particularized evidence supporting potential and actual fraud would tend to negate coverage. The Court should deny this MIL as such evidence is highly probative of not only class membership, but also injury, standing, and damages.

**State Farm's Evidence is Highly Probative of the Issues to be Tried:** A class damages award may not sweep in members with no cognizable injury. *TransUnion LLC*, 594 U.S. at 431 ("plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."). The policies here cover direct physical loss to personal property resulting from specified perils. (ECF 164-6, p. 13). Fraud is not a specified peril and fraud is not accidental. (*Id.*); *Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*, 16 Cal. App. 5th 1026, 1041 (2017) (finding no covered loss where loss resulted from "fraudulent scheme").

Plaintiffs' argument that an SIU referral "is not proof of fraud" misunderstands the purpose of motions in limine and Plaintiffs' burden. Plaintiffs must demonstrate, with evidence, that each member of the class is in fact in it and has standing to seek relief from this Court. To have standing, class members must have, among other things, presented a *covered* claim. To establish coverage, Plaintiffs must show that each class member suffered a property loss caused by a specified peril in the class member's policy. *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1198 (9th Cir. 2024); *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1188 (1998). Plaintiffs cannot meet their burden by excluding evidence, or assuming injury to absent class members—they must *produce evidence* to meet their burden at trial. *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 34 (1995); *State Farm Fire & Cas. Co. v. Sup. Ct.*, 206 Cal. App. 3d 1428, 1431 (1988) ("Because insurance companies often adjust claims for reasons entirely unrelated to their merits, State Farm's decision to pay money to the Blacks may not be construed either as an admission of liability or as the substantive equivalent of accepting its obligations under the policy.").

Plaintiffs are free to argue an SIU referral for investigation of potential fraud does not conclusively negate coverage at trial. But that argument is no basis for exclusion. "[E]vidence

-18-

STATE FARM'S OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE

need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. All that is required is a 'tendency' to establish the fact at issue." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007); *see also Sidibe v. Sutter Health*, 103 F.4th 675, 701 (9th Cir. 2024) ("Relevance considers how each 'brick' of evidence can, together, form a wall, not whether each 'witness can make a home run.'"). Nor does it minimize Plaintiffs' affirmative evidentiary burden to demonstrate that each class member presented a covered loss, which they cannot meet.

And, State Farm's evidence consists of more than just evidence supporting potential fraud: its evidence includes a potential class member *actually convicted* of arson. (ECF 164-2, p. 9, ¶ 32). Plaintiffs remain free to cross-examine State Farm's witnesses regarding the arsonist's claim, and the difference between a referral to SIU for investigation of potential fraud and a finding of fraud. "Both parties are equally free to point out the alleged deficiencies in the opposing party's case, to the extent permitted by law." *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3536797, at *1 (N.D. Cal. Aug. 13, 2012) (denying MIL seeking blanket prohibition on argument). What Plaintiffs may *not* do is convert a weight of the evidence argument into an admissibility bar.

**Evidence of Potential Fraud Is Not Unduly Prejudicial Evidence:** Rule 403 guards against *unfair* prejudice, not against evidence that damages a party's case. Evidence that thousands of potential class claims were referred to SIU for investigation of potential fraud, or that specific claims were adjudicated fraudulent, or subject to criminal restitution orders, is directly relevant to the issues remaining for trial. State Farm has made every effort to minimize the prejudice to class members, redacting identifying information from claim documents and requesting Plaintiffs' agreement to present their claims with pseudonyms. Wholesale exclusion is the bluntest available instrument and the least justified here. *Payne v. City of Los Angeles*, 2023 WL 6850045, at *7 (C.D. Cal. Aug. 30, 2023) (denying motion in limine to exclude "embarrassing" telephone calls).

Plaintiffs' Motion is also notably devoid of case law supporting it. They cite only one case, *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373 (N.D. Cal. 2012), which granted lesser, evidentiary sanctions in response to a motion for default after defendants violated at least seven orders to produce information in response to discovery requests and apparently lied under oath during their depositions. *Id.* at 390, 392, n. 19. No such facts exist here.

-19-

Plaintiffs' complaints about State Farm's proposed voir dire and special verdict form are not evidentiary objections at all; they are disputes about trial structure that belong to the pretrial conference.  And their discovery arguments fail for the same reasons as their MIL 2.  *See above.*

**H.      Opposition to MIL 8 (Seeking One-Sided Order on Moot UCL Remedies Issue)**

State Farm agrees that equitable UCL remedies, and the UCL claim generally, are for the Court to decide after trial.  It does not intend to ask the jury to decide UCL remedies or to argue equitable-remedy standards to the jury. For the same reason, and as discussed in response to MIL 1, any reference to the Court's "unlawful" finding for purposes of the UCL should also be barred at trial.  The Court should grant MIL 8 on a reciprocal basis, and extend it to apply not only to UCL remedies, but UCL findings and the UCL generally.

**I.      Opposition to MIL 9 (Seeking to Bar State Farm from Cross Examining Regan)**

In effect, MIL 9 asks the Court to forbid State Farm from cross-examining Plaintiffs' damages expert Greg Regan about the limitations of the Combined *Pitkin* Dataset that he based his opinions on.  That request is irreconcilable with the trial process. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).  The Court has already found that State Farm's criticisms of Regan's opinions go to weight and "may be persuasive to a factfinder."  (ECF 183, p. 34).  Plaintiffs now ask the Court to protect Regan from the cross-examination that the Court's prior order expressly contemplated.  (*Id.*) (denying motion to exclude Regan's opinions as "subject to cross-examination and presentation of contrary expert testimony").

"The data" is not a monolith.  Nor is it all State Farm's.  The Combined *Pitkin* Dataset includes data from both State Farm's ECS system and from third-party Verisk's XactContents® tool.  Those systems record different things at different stages: estimate-level figures, payment-level figures, status codes, and free-text entries of varying provenance.  (ECF 76-4, p. 3).  The "Sales Tax Depreciation" field, for example, is a static field, reflecting estimate values, not claim payments.  (ECF 127, Ex. I, 39:4-50:15; 42:3-13; Ex. C, 303:7-304:2)  Similarly, the limits field does not capture all potentially applicable limits information.  (ECF 127, Ex. E, p. 10).  State Farm

-20-

intends to raise these issues at trial, and ask Regan during cross-examination how his opinions account for those limitations in the data, if at all.

As the Court recounted, State Farm's position is not that the data is wrong; it is that Regan's assumptions regarding the data are wrong and unsupported. (ECF 124; ECF 183, p. 33:6-15). And as the Court already found, State Farm's position "is best understood as an attack on the assumptions underlying Regan's analysis." (*Id*. at p. 33:16-17). Plaintiffs' Motion asking the Court to bar the attack the Court already contemplated amounts to another improper motion for reconsideration wholly unsupported by law and contrary to the very nature of an adversarial trial.

Plaintiffs' reliance on *Sprint/United* and *Sidibe* is also misplaced.[6] Neither support that State Farm should not be allowed to cross-examine their expert on his assumptions. Like the data in *Sidibe*, it is probative and plaintiffs identify no specific prejudice. MIL 9 should be denied.

**J.**      **Opposition to MIL 10 (Seeking Order Approving Untenable Trial Plan)**

Plaintiffs' MIL 10 asks the court to exclude all evidence of individualized damages and allow "[a] jury determination of aggregate damages" so that a claims administrator, and not the jury, can decide class membership, injury, application of affirmative defenses, and damages. It echoes Plaintiffs' flawed trial plan: the jury hears a single expert-derived aggregate number that includes damages calculations for all potential class members (including injured and uninjured claimants), hears no evidence about the actual claims supporting the number, returns a lump-sum verdict, and a claims administrator then sorts out who was in the class, who was injured, whose claim is barred by an affirmative defense, and what damages each claimant should receive after the jury has entered its verdict. As State Farm explained in its Motion to Decertify and Response to Plaintiffs' Trial Plan, that cannot be reconciled with due process, the Rules Enabling Act, the Seventh Amendment, the *Erie* doctrine, or controlling Supreme Court or California authority.

---

[6] *Sprint/United* explicitly held that District Courts should eschew "*per se* rule[s] excluding" testimony of other employees in an age discrimination and "assess the admissibility of the evidence in the context of the particular case before it." *Sprint/United Mgmt.*, 552 U.S. at 387. The section of *Sidibe* on which plaintiffs rely appears in a dissent, arguing that the exclusion of "marginally relevant" evidence of defendant's statements from before the class period was harmless. The majority in *Sidibe* instead found that the district court's decision to exclude the evidence was error because the excluded evidence was probative, "more persuasive," and the prejudice was "minimal."

(ECF 187, 188) (and cited authority); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

The Court should deny MIL 10 as procedurally improper. Motions in limine are "not the appropriate vehicle for weighing the sufficiency of the evidence." *Meyer Intell. Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012). Plaintiffs ask that the Court "allow aggregate damages" here does not raise an admissibility question—the Court already ruled that Plaintiffs' damages model would be admissible at trial. Instead, Plaintiffs appear to use this motion to pre-argue the propriety of class treatment, issues raised by State Farm's pending Motion to Decertify. Plaintiffs' MIL 10 should be denied for that procedural reason alone. The Court should resolve these questions in the context of State Farm's Motion to Decertify, once fully briefed.

If the Court nonetheless reaches the merits of MIL 10, it still fails. First, Plaintiffs claim that State Farm's particularized evidence demonstrating the unreliability and inaccuracy of Mr. Regan's "aggregate damages model", whether via expert or fact witness testimony, is "irrelevant." State Farm's expert, Dr. Steffey, offered extensive opinions regarding the flaws in Mr. Regan's approach. The Court has already found that Dr. Steffey's opinions on those issues, including his particular examples of Mr. Regan reaching incorrect results as to particular potential class members, are "relevant" and admissible at trial. (ECF 183, pp. 52-53).

Second, it offers no law supporting the "aggregate damages model" they propose. As detailed in State Farm's Motion to Decertify, controlling authority rejects that an aggregate damages model can proceed to trial where it includes damages for absent, uninjured class members. (ECF 187) (citing, inter alia, *In re Asacol Anti. Litig.*, 907 F.3d 42, 56 (1st Cir. 2018) (no federal court has "affirmed a damages judgment in a class action against a defendant who was precluded from raising genuine challenges at trial to the assertion of liability by individual members of a class that was known to have members who could not be presumed to be injured."); *TransUnion*, 594 U.S. at 425; *Healy v. Milliman, Inc.*, 164 F.4th 701, 707 (9th Cir. 2026)).

Plaintiffs' authority predates *TransUnion* and *Healy* and does not address *In re Asacol*. *Healy* recognized that "*TransUnion* made clear that 'in a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence adduced at trial.'" *Healy*, 164 F.4th at 707 (quoting *TransUnion*, 594 U.S. at 431).

-22-

Plaintiffs' proposal to "allow aggregate damages" and sort out standing after trial squarely conflicts with *Healy* and *TransUnion*.

Plaintiffs devote the bulk of their argument to *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).  But *Briseno* preceded *TransUnion*.  It also did not involve a class trial with an aggregate damages model including damages for both injured and uninjured members.  To the extent Plaintiffs suggest that *Briseno* supports their plan, *TransUnion* proves that they are wrong.

Their bolded and italicized quote to *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010), also does not assist them, because they ignore that only a class member who has measurable damages can meet the essential elements of their breach of contract claim (injury in fact and causation).  The Ninth Circuit just addressed this distinction in finding class treatment inappropriate in *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1111-12 (9th Cir. 2025) ("This is not a dispute over the amount of any individual's damages, which would be insufficient to prevent class certification, [citation], but over an essential element of each individual Appellant's claim.").

Plaintiffs identify no case, whether before or after *TransUnion*, adopting their proposal to proceed to trial on liability and damages on behalf of a *potential* class including injured *and* uninjured members, present an aggregate damages model including damages for the *entire* potential class, and then resolving class membership, injury, affirmative defenses and damages in a post-trial claim administration process.  Their cases involved the class certification or summary judgment stage, not trial.[7]  The unpublished district court case of *Jimenez v. Allstate Ins. Co.*, 2019 WL 13088814 (C.D. Cal. May 13, 2019), preceded *TransUnion* and involved a bifurcated trial which separated the issue of liability and damages to "preserve Allstate's opportunity to raise any

---

[7] *See generally Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010); *Brown v. DirecTV*, 562 F.Supp.3d 590, 604 n. 17 (C.D. Cal. Dec. 1, 2021) (summary judgment; contemplating due process concerns in connection with claim administration to determine class membership, but declining to decide the issue "at this stage", and not discussing *Transunion*); *Makaeff v. Trump Univ., LLC*, 2014 WL 688164, at *18 (S.D. Cal. Feb. 21, 2014) (certifying a class under Rule 23(b)(3) for violations of section 17200, but denying class certification for common law breach of contract claim because it "would make trial unmanageable"); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 315 (N.D. Cal. 2016) (certifying class in labor antitrust action because plaintiffs had set forth a methodology for calculating damages, not that barring defendants from interrogatory that methodology at trial).

SMRH:4913-7459-0658.6

individualized defense it might have at the damages phase of the proceedings." *Id.* at *25. To the extent *Jimenez* suggested that a damages model including damages for uninjured class members could possibly proceed to trial, it conflicts with *TransUnion* and should be disregarded.

State Farm's authority, in contrast, is directly on point and controls. The Court of Appeals decision in *In re Asacol* squarely rejected a similar aggregate damages proposal and is consistent with *TransUnion* and *Healy*, as detailed in State Farm's Motion to Decertify. (ECF 187).

The Court should deny MIL 10 as procedurally improper and address the Rule 23 issues it raises in the context of State Farm's Motion to Decertify, which the Court should grant.

## K.    Opposition to MIL 11 (Seeking to Bar Evidence of Release Defense and Agreements Potential Class Members and Plaintiffs' Own Counsel Signed)

As Plaintiffs concede, release has been a pleaded affirmative defense since State Farm's answer (ECF 42), and the Court's summary judgment order recognized a genuine dispute as to whether some class members released their claims. (ECF 183, p. 1:25-27). Evidence that specific class members executed releases resolving the claims asserted here and received settlement compensation for them bears on whether those members may recover and, therefore, on the reliability and accuracy of Plaintiffs' expert's class membership and damages opinions. Plaintiffs' MIL 11 effectively seeks reconsideration of that ruling, and summary adjudication of an affirmative defense that the Court recognized. The Court should deny it on that basis. *Grace*, 2020 WL 227404, at *4; *Netlist Inc.*, 2021 WL 6103543, at *6.

Plaintiffs' Rule 408 argument also misses the mark. Rule 408 does not apply to settlement and release agreements reached by absent class members outside the context of this litigation. The agreements released any claim related to the handling of their personal property loss claim included in this litigation. Rule 408 only applies once a controversy exists. *See Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1342 (9th Cir. 1987) (affirming trial court's conclusion that Rule 408 did not bar admission of a settlement agreement and release since plaintiff "had not asserted any claim at the time (defendant) asked for the release"). The subject agreements here were signed in 2022, before Plaintiffs filed this suit. (ECF 164-2, Blazewich Dec., Ex. 22).

-24-

Plaintiffs' late-production argument rehashes the same arguments as MIL 2, and fails for the same reasons: the agreements reside in potential class member claim files, and potential class members were not even identified by Plaintiffs until September 2025 after fact discovery had already closed.  *See* Opposition to MIL 2, *supra.*

Finally, State Farm would prefer not to call Mr. Weaver to authenticate the agreements. State Farm asked Plaintiffs to stipulate to admissibility of the agreements, and Plaintiffs refused. State Farm maintains that Ms. Blazewich can authenticate the agreements as business records. Fed. R. Evid. 803(6).  However, if Plaintiffs continue to challenge their admissibility, and the Court sustains a hearsay objection by Plaintiffs, then State Farm may seek to call Mr. Weaver as a witness to authenticate the documents.

To the extent the Court is not inclined to affirmatively permit State Farm to call Mr. Weaver as a witness at this time, it should reserve ruling on the issue pending further meet and confer on a stipulation as to admissibility, or resolution of any hearsay objection that Plaintiffs may raise at trial.

Dated:  August 3, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
    */s/ Jennifer M. Hoffman*
    JENNIFER M. HOFFMAN
    ANDRE J. CRONTHALL
    JEFFREY S. CROWE
    ANNA S. McLEAN
    KATHERINE C. SAMPLE
    Attorneys for Defendant
    STATE FARM GENERAL INSURANCE COMPANY

SMRH:4913-7459-0658.6