FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
TYSON C. REDENBARGER (SBN 294424)
tredenbarger@cpmlegal.com
ANDREW W. BRITTON (SBN 340052)
abritton@cpmlegal.com
GIA JUNG (SBN 340160)
gjung@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

JACK W. WEAVER (SBN 278469)
jack@weavercurrie.com
**WEAVER CURRIE, PC**
3554 Round Barn Boulevard, Suite 300
Santa Rosa, CA 95403
Telephone: (707) 433-4842
Fax: (707) 473-9778

STEPHEN B. MURRAY, JR. (*pro hac vice*)
smurrayjr@murray-lawfirm.com
ARTHUR M. MURRAY*
amurray@murray-lawfirm.com
JESSICA W. HAYES*
jhayes@murray-lawfirm.com
THOMAS M. BEH (*pro hac vice*)
tbeh@murray-lawfirm.com
**MURRAY LAW FIRM**
Hancock Whitney Center
701 Poydras Street, Suite 4250
New Orleans, LA 70139
Telephone: (504) 525-8100
Fax: (504) 584-5249

WILLIAM H. HEDDEN (SBN 88608)
adjustbill@aol.com
1838 15th Street
San Francisco, CA 94103
Telephone: (415) 850-0042

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MELISSA PITKIN and DAN GROUT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation,<br><br>Defendants. | Case No. 3:23-cv-00924-WHO<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION TO DECERTIFY THE CLASS**<br><br>Date:  August 26, 2026<br>Time:  2:00 p.m.<br>Ctrm.:  2 (17th Floor)<br><br>Judge:  Hon. William H. Orrick<br>Courtroom:  2 – 17th Floor<br>Trial Date:  September 9, 2026 |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION.................................................................................................................6

II.    STATEMENT OF RELEVANT FACTS ...........................................................................7

III.   LEGAL STANDARD ..........................................................................................................8

IV.    ARGUMENT .......................................................................................................................9

     A.    No Changes Warrant Decertification ........................................................................9

     B.    The Class Continues to Meet Rule 23(b)(3) Standards............................................12

          1.    Superiority....................................................................................................12

          2.    Predominance ...............................................................................................15

     C.    Class Action Procedures are not Prejudicial ...........................................................16

          1.    Claims Administration is a Routine Class Action Device ...........................16

          2.    Aggregate Damages are Proper Here...........................................................19

          3.    There Are No Violations of Due Process, *Erie*, the Seventh
              Amendment, or the Rules Enabling Act.......................................................21

     D.    The UCL Class Remains Proper ..............................................................................22

V.     CONCLUSION ..................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple iPod iTunes Antitrust Litig.*
  2014 WL 6783763 (N.D. Cal. Nov. 25, 2014)........................................................................ 13

*In re Asacol Antitrust Litig.*
  907 F.3d 42, 52-55 (1st Cir. 2018) ................................................................................. 18, 19

*Bally v. State Farm Life Ins. Co.*
  2022 WL 594798 (N.D. Cal. Feb. 24, 2022)........................................................................ 10

*Bernstein v. Virgin Am., Inc.*
  2018 WL 3344316 (N.D. Cal. July 9, 2018) ................................................................... 17, 22

*Bowerman v. Field Asset Services, Inc.*
  60 F.4th 459 (9th Cir. 2023)................................................................................................. 19

*Brice v. Haynes Invs., LLC.*
  2021 WL 1916466 (N.D. Cal. Apr. 23, 2021) ................................................................ 18, 20

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017).......................................................................................*passim*

*Brown v. DirecTV, LLC*
  562 F. Supp. 3d 590 (C.D. Cal. 2021)...........................................................................*passim*

*Comcast Corp. v. Behrend*
  569 U.S. 27 (2013) ......................................................................................................... 11, 20

*Erica P. John Fund, Inc. v. Halliburton Co.*
  573 U.S. 258 (2014) .............................................................................................................. 12

*Etter v. Allstate Ins. Co.*
  323 F.R.D. 308 (N.D. Cal. 2017) ......................................................................................... 19

*Frasco v. Flo Health, Inc.,*
  2025 WL 2680068 (N.D. Cal. Sept. 17, 2025)............................................................7, 11, 17

*Healy v. Milliman, Inc.*
  164 F.4th 701 (9th Cir. 2026)......................................................................................... 11, 16

*Jimenez v. Allstate Ins. Co.*
  2019 WL 13088814 (C.D. Cal. May 13, 2019)............................................................... 15, 21

*Jones v. United Behav. Health,*
  2025 WL 4772058 (N.D. Cal. Apr. 26, 2025) ...................................................................... 19

*Krueger v. Wyeth, Inc.*
310 F.R.D. 468 (S.D. Cal. 2015) ........................................................................................... 22

*Lao v. H&M Hennes & Mauritz, L.P.*
2019 WL 7312623 (N.D. Cal. Dec. 30, 2019) ....................................................................... 10

*Lara v. First Nat'l Ins. Co.*
25 F.4th 1134 (9th Cir. 2022)................................................................................................. 11

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*
791 F.2d 1356 (9th Cir. 1986)................................................................................................ 21

*Makaeff v. Trump Univ., LLC*
2014 WL 688164 (S.D. Cal. Feb. 21, 2014) .......................................................................... 18

*Marsu, B.V. v. Walt Disney Co.*
185 F.3d 932 (9th Cir.1999)................................................................................................... 21

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*
501 F. Supp. 3d 965 (D. Or. 2020)........................................................................................ 10

*McPhail v. First Command Fin. Plan., Inc.*
247 F.R.D. 598 (S.D. Cal. 2007)........................................................................................... 22

*In re Melridge, Inc. Sec. Litig.*
837 F. Supp. 1076 (D. Or. 1993)...................................................................................... 18, 20

*Morgan v. Rohr, Inc.*
2023 WL 8813171 (S.D. Cal. Dec. 20, 2023)........................................................................ 13

*Nitsch v. Dreamworks Animation SKG Inc.*
315 F.R.D. 270 (N.D. Cal. 2016) ..................................................................................... 16, 21

*O'Connor v. Boeing N. Am., Inc.*
197 F.R.D. 404 (C.D. Cal. 2000) .......................................................................................... 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
31 F.4th 651 (9th Cir. 2022)................................................................................ 12, 14, 17, 20

*Pampena v. Musk*
2026 WL 1948057 (N.D. Cal. July 6, 2026) ......................................................................... 17

*Parsons v. Ryan*
754 F.3d 657 (9th Cir. 2014).................................................................................................. 23

*Phan v. Transamerica Premier Life Ins. Co.*
2026 WL 1763859 (N.D. Cal. June 18, 2026) ....................................................................... 23

*Pulaski & Middleman, LLC v. Google, Inc.*
802 F.3d 979 (9th Cir. 2015)............................................................................................... 7, 21

*In re Salomon Analyst Metromedia Litig.*
    544 F.3d 474 (2d Cir. 2008) ........................................................................................... 10

*In re SanDisk SSDs Litig.*
    2026 WL 1243509 (N.D. Cal. May 6, 2026) ................................................................. 24

*Small v. Allianz*
    122 F.4th 1182 (9th Cir. 2024) ..................................................................................... 11

*Stearns v. Ticketmaster Corp.*
    655 F.3d 1013 (9th Cir. 2011) ....................................................................................... 9

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009) .................................................................................................. 23

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) ......................................................................................... 11, 16, 17

*True Health Chiropractic, Inc. v. McKesson Corp.*
    896 F.3d 923 (9th Cir. 2018) ....................................................................................... 13

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*
    593 F.3d 802 (9th Cir. 2010) ....................................................................................... 10

*Utne v. Home Depot U.S.A., Inc.*
    2022 WL 1443338 (N.D. Cal. May 6, 2022) ................................................................. 10

*Van v. LLR, Inc.*
    61 F.4th 1053 (9th Cir. 2023) ................................................................................. 13, 16

*Vaquero v. Ashley Furniture Indus., Inc.*
    824 F.3d 1150 (9th Cir. 2016) ..................................................................................... 18

*Victorino v. FCA US LLC*
    2020 WL 2306609 (S.D. Cal. May 8, 2020) ................................................................. 23

*Victorino v. FCA US LLC*
    2021 WL 4124245 (S.D. Cal. Sept. 9, 2021) ................................................................. 11

*Walker v. Life Ins. Co. of the Sw.*
    953 F.3d 624 (9th Cir. 2020) ................................................................................. 15, 23

*Walmart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ............................................................................................... 11, 19

*Williams v. PillPack LLC*
    343 F.R.D. 201 (W.D. Wash. 2022) ............................................................................. 17

*Wolin v. Jaguar Land Rover N. Am., LLC*
   617 F.3d 1168 (9th Cir. 2010) ........................................................................................... 10

*Zinser v. Accufix Research Inst., Inc.*
   253 F.3d 1180 (9th Cir. 2001) ........................................................................................... 15

**Other Authorities**

F.R.C.P. Rule 23 ................................................................................................................*passim*

## I.    INTRODUCTION

Plaintiffs, on behalf of the certified class, respectfully submit this opposition to Defendant State Farm's Motion to Decertify Class Action.  ECF 187.

State Farm continues to try to improperly limit recovery by its policyholders by any means necessary, hoping with this motion to force the litigation of 41,153 individual trials on standing, injury-in-fact, and damages.  But it offers no valid grounds to do so.  State Farm attempts to decertify the class without any changes in law or fact warranting decertification, without any evidence defeating predominance or superiority, and without any showing of prejudice to its rights.  Instead, State Farm rehashes its summary judgment arguments regarding standing and affirmative defenses, misstates the applicable burdens of proof and requirements of Rule 23, takes issue with common class action procedures, and disregards the Court's Orders.  None of State Farm's arguments constitute a basis to decertify the class.

Meanwhile, "plaintiffs' prior demonstration of grounds for certification of a Rule 23(b)(3) class continues to hold true." *Frasco v. Flo Health, Inc.,* 2025 WL 2680068, at *8 (N.D. Cal. Sept. 17, 2025) (denying decertification based on "speculation" and unsupported by the evidence). Plaintiffs have offered a feasible methodology for calculating damages classwide, have demonstrated that the class is identifiable, and the issue of classwide injury remains a common question as to whether the entire class has suffered damage and by how much.  Summary judgment did not diminish the suitability of class certification here.  It bolstered it.  The Court found "that the class has standing at this stage" and further denied both parties' motions to exclude, finding that each expert's testimony was admissible to assist the jury for questions regarding "whether damages can be calculated on a classwide basis" and "standing, injury, and how to identify class membership."  ECF 183 at 15-16, 27, 36, 51, 53.

This case can and should proceed to trial as a class action for the jury to determine the common question of injury and damages after presentation of evidence supporting Plaintiffs' classwide damages methodology.  *Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 989 (9th Cir. 2015).  Following a verdict on classwide damages, it is well-established that a claims administrator can address any remaining individualized issues.  *Briseno v. ConAgra Foods, Inc*.,

844 F.3d 1121, 1131 (9th Cir. 2017) ("At the claims administration stage, parties have long relied" on tools "tailored by the parties and the court to validate claims") (citations omitted).

For the foregoing reasons, there is no basis to decertify the class, and State Farm's motion should be denied.

## II.    STATEMENT OF RELEVANT FACTS

On July 15, 2024, this Court certified the following class (ECF 102):

> All persons who, between March 1, 2019, and the present, were or are a named insured under a property insurance policy issued in California by Defendant, who suffered a covered loss to personal property for which they received payment of actual cash value (ACV) benefits that were reduced due to depreciation of sales tax, and who were paid or are reasonably certain to be paid benefits in an amount that is less than the applicable policy limits.

In that Order, the Court found that "[t]he plaintiffs are challenging an ACV calculation policy used to calculate the putative class members' benefits that State Farm admits it employs uniformly.  If, as the plaintiffs contend, the depreciation of sales tax is prohibited by section 2051, then the plaintiffs and the putative Class Members are entitled to relief under all four pending causes of action awarding damages for the improper reduction of ACV benefits,"  ECF 102 at 25.  At summary judgment, Plaintiffs established that the depreciation of sales tax is prohibited by section 2051.  Order on Motion for Summary Judgment and Motions to Exclude, ECF 183.

On August 14, 2025, State Farm produced the "2025 Combined Dataset," which contained data related to the class and class damages in this case.  Plaintiffs' expert, Greg Regan, used the data produced by State Farm to identify 41,153 claims (out of more than 70,000 potential claims) that fall within the Class and suffered damages from State Farm's policy of depreciating sales tax and not including those amounts in ACV payments.  ECF 156, Ex. 8.  Mr. Regan also calculated the aggregate damages for the class.  State Farm's expert did not dispute Mr. Regan's aggregate number nor provide an alternative damages amount or methodology.  ECF 156 at 6.  Mr. Regan's analysis is supported by Plaintiffs' class identification expert, David Melzer, who opined that the "total number of impacted claims can be readily derived from the available data."  ECF 127, Melzer Supp. ¶4.  Similarly, Plaintiffs' XactContents® expert, Eugene Peterson, opined that "it is feasible to efficiently determine where depreciation was taken and calculate and prove what damages" were

suffered by insureds like the class.  ECF 62-2, Peterson Rep. at 4.

Months after the discovery cutoff and expert cutoff dates in February and April 2026, State Farm produced a significant amount of new information and submitted new expert declarations with new opinions to the Court that were not properly nor timely disclosed during discovery.  This late-produced information includes new anecdotal factual assertions about a handful of individual claim files that were not produced during years of discovery, despite State Farm's access to them throughout.  Plaintiffs have moved to exclude this improper material.  ECF 194.  However, even if considered, these cherry-picked claim files regarding potential fraud or subsequent claims do not support State Farm's motion, because they do not disprove the common issue of sales tax depreciation or that any class member's injury from sales-tax depreciation was legally eliminated, let alone show a class-wide defect.

The sole issue for trial is whether "plaintiffs have established their injury and damages resulting from State Farm's depreciation of sales tax."  ECF 183 at 15.  Although State Farm attacked the class at summary judgment on largely the same grounds that it does now (ECF 164), the Court found "that the class has standing at this stage."  ECF 183 at 15-16.  The Court further denied both parties' motions to exclude, finding that each expert's testimony was admissible to assist the jury for questions regarding "whether damages can be calculated on a classwide basis" and "standing, injury, and how to identify class membership."  ECF 183 at 27, 36, 51, 53.

This case is proceeding to trial on September 9, 2026.  ECF 181.

## III.    LEGAL STANDARD

The standard for decertification is the same as the standard for certification: the court must be satisfied that the Rule 23 prerequisites are met.  *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 600 (C.D. Cal. 2021).  Rule 23 "give[s] the district court broad discretion over certification of class actions." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011).  District courts retain the authority to amend or decertify a class when information not available or circumstances not anticipated at the time of certification show that modification or decertification is warranted, and the court may consider subsequent developments in the litigation in reevaluating the basis for

certification. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.,* 593 F.3d 802, 809 (9th Cir. 2010).

However, "decertification is a 'drastic step,' not to be taken lightly." *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 501 F. Supp. 3d 965, 980 (D. Or. 2020); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010) ("When reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification.") (quoting *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008)) (internal quotation marks omitted). Therefore, a certification order will not typically be altered except for good cause. *See Bally v. State Farm Life Ins. Co.*, 2022 WL 594798, at *2 (N.D. Cal. Feb. 24, 2022) ("Because parties should be able to rely on a certification order, in the normal course of events it will not be altered except for good cause, such as discovery of new facts or changes in the parties or in the substantive or procedural law.") (internal quotations and citations omitted).

"Once a class is certified, the parties can be expected to rely on it, conduct discovery, prepare for trial, and engage in settlement discussion on the assumption that it will not be altered except for good cause." *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 409-10 (C.D. Cal. 2000). A "motion for decertification will generally only succeed where there has been some change in the law or facts that justifies reversing the initial certification decision." *See Utne v. Home Depot U.S.A., Inc.*, 2022 WL 1443338, at *5 (N.D. Cal. May 6, 2022). The party seeking decertification bears the burden of meeting this standard. *See, e.g., Bally*, 2022 WL 594798, at *2; *Lao v. H&M Hennes & Mauritz, L.P.*, 2019 WL 7312623, at *2 (N.D. Cal. Dec. 30, 2019).

## IV.    ARGUMENT

### A.    No Changes Warrant Decertification

Here, there has been no change in the law or facts. It remains true that "plaintiffs have offered a feasible methodology for calculating damages classwide, have demonstrated that the class is identifiable, and have shown that the common issue of whether State Farm's method of calculating ACV for personal property insurance policies like those held by the putative Class Members predominates over whatever individualized issues may arise." ECF 102 at 1-2. Summary judgment

did not change this reality—Plaintiffs and the class survived State Farm's challenges to the standing of the class and to their expert's methodology for calculating damages classwide. ECF 183 at 15 ("I find that the class has standing at this stage"); at 34 ("they do not show that Regan's methodology is unsound"); at 37 (Regan's damages scenarios can "be tested and applied to the Combined *Pitkin Dataset*"). Because "plaintiffs' prior demonstration of grounds for certification of a Rule 23(b)(3) class continues to hold true," there is no basis for decertification. *Frasco*, 2025 WL 2680068, at *8 (denying post-trial motion to decertify); *see also Victorino v. FCA US LLC*, 2021 WL 4124245, at *2 (S.D. Cal. Sept. 9, 2021).

State Farm does not raise any new law. The principal cases it relies on in its Motion have all been raised in prior briefing and considered by the Court. *Compare* Motion to Decertify, ECF 187 at 11-23 (*citing Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026); *Lara v. First Nat'l Ins. Co.*, 25 F.4th 1134 (9th Cir. 2022); *Small v. Allianz*, 122 F.4th 1182 (9th Cir. 2024); *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)) *with* State Farm's Opposition to Plaintiff's Motion for Class Certification ECF 76 at 19-35 and State Farm's Opposition to Plaintiffs' Motion for Summary Judgment ECF 164 at 4-9 (citing same). To the extent that State Farm argues that these cases should be reconsidered in light of the "current record and Order," those renewed arguments are unavailing. ECF 187 at 17. For example, it remains true that "The Ninth Circuit's recent decisions in *Lara* and *Small* do not contradict my analysis in *Johnson*, where I explained that even for plaintiffs whose property was repaired, damages attributable to the unlawful depreciation of sales tax were still calculable on a classwide basis." ECF 102 at 23. As set forth in the Court's Summary Judgment Order, Plaintiffs' expert's methodology calculating classwide damages is "reliable and admissible," and his testimony will be allowed to "assist a factfinder in determining whether damages can be calculated on a classwide basis in this case." ECF 183 at 27, 34.

State Farm does not identify any new facts. The "new facts" that State Farm points to—potential claim settlements, theoretical fraud, one arsonist who was known to State Farm throughout the case, and inapplicable statutes of limitations arguments—are neither new nor dispositive. ECF 187 at 15, 16, 19 (citing to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment,

ECF 164-2, 164-3, 164-7).

First, State Farm already raised, and the Court disregarded, arguments regarding claim settlement at class certification.  ECF 102 at 25 ("State Farm tries to compare itself to Allianz, arguing that it 'could have adjusted the report value, or settled the claim for more than the report, or the claimant could make a[] [Replacement Cost] claim.' Oppo. 21. Alternatively, it argues, it 'may have requested an XactContents[] report, but already paid an insured more than the ACV calculation in that report'…In so arguing, State Farm is ignoring the crux of the plaintiffs' claims").  That some class members may have claim settlements now or in the future is not a new fact, and does not change the class analysis.  *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 (9th Cir. 2022) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate") (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 573 U.S. 258, 276 (2014)).

Second, State Farm had unfettered and exclusive access to this information (internal State Farm records and the class list) throughout the case and in fact refused to provide the information when asked.  Indeed, the Court at class certification noted that "the records pertaining to class membership, breach, and damages are available in State Farm's records."  ECF 102 at 29.  When Plaintiffs requested information sufficient to identify the class and their damages, State Farm responded with the Combined *Pitkin* Dataset on August 14, 2025, which it represented reflected "State Farm's *best efforts* to gather putative class member information."  ECF 84.  In Mr. Regan's September 25, 2025 supplemental report, Plaintiffs *excluded* 32,543 claims on the basis that they did not fall into the class definition.  At no point while discovery was ongoing and subject to several targeted extensions did State Farm raise that they had further evidence responsive to Plaintiffs' initial request or that could inform Mr. Regan's analysis of the class.  *See* ECF 194 at 2-4.  Now, State Farm is claiming that certain claim files constitute "new facts" because State Farm did not produce them and Plaintiffs could not consider them.  ECF 187 at 15-16.  As a prime example, State Farm learned that the arsonist they now point to was ordered to repay State Farm in full ***in 2024***— well before the close of fact discovery and State Farm's production of the Combined *Pitkin* Dataset. ECF 164-2 ¶32.  State Farm nevertheless included that claimant as a class member in the Combined

*Pitkin* Dataset.  These are not "new" facts and at best show that State Farm might later challenge claims during the claims process using its own records.  *Briseno*, 844 F.3d at 1132 ("[I]t is not clear why requiring an administratively feasible way to identify all class members at the certification stage is necessary to protect [defendant's] due process rights" when defendant can challenge individual claims during the claims process).

Third, State Farm cannot point to its affirmative defenses to show changed circumstances or defeat the class.  State Farm bears the burden of proving its defenses and cannot defeat class certification by raising issues that have not been proven.  A defendant may not "support its invocation of individualized issues with mere speculation," which is all State Farm offers until either the Court or the jury rules on its asserted affirmative defenses.  *Van v. LLR, Inc.*, 61 F.4th 1053, 1068 (9th Cir. 2023); *see True Health Chiropractice, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) (courts considering predominance "do not consider…defenses that [the defendant] might advance or for which it has presented no evidence"); *Morgan v. Rohr, Inc.*, 2023 WL 8813171, at *1 (S.D. Cal. Dec. 20, 2023).  Attorney argument and declarations based on assumptions rather than evidence are insufficient to establish that individual issues will predominate.  *Van*, 61 F.4th at 1068.

State Farm has not shown any new law or fact that would merit reconsideration on the eve of trial.  The motion can be denied on that basis alone.  *See In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 6783763, at *6 (N.D. Cal. Nov. 25, 2014) (denying motion to decertify made "so soon before trial especially where no intervening events have led to changed circumstances.").

**B.    The Class Continues to Meet Rule 23(b)(3) Standards**

**1.  Superiority**

Rule 23(b)(3) requires that the class action vehicle be superior to any other method of adjudication and "calls for a comparative assessment of the costs and benefits of class adjudication, including the availability of 'other methods' for resolving the controversy."  *Briseno*, 844 F.3d at 1128.  To determine whether a class action is superior, courts consider four factors: (i) class members' individual interests in controlling the prosecution of separate actions; (ii) whether other litigation has already commenced; (iii) the desirability of concentrating claims in one forum; and

(iv) the difficulties likely to be encountered in managing a class action.  FRCP 23(b)(3).  Each of the factors enumerated in Rule 23(b)(3) weighs in favor of *continued* class certification in this case.

Foremost, the Court already found superiority was established, and nothing has changed to call that determation into question.  *See* ECF 102 at 29-30.  State Farm nevertheless attacks "whether the class definition is sufficiently definite and whether identification of class members is manageable or administratively feasible," making sweeping arguments that because the class must exclude non-members and class membership cannot be demonstrated without evidence, the Court must engage in over 40,000 mini-trials.  ECF 187 at 13-16.  This argument conflates and confuses the law and the facts of this case.

The class definition here is clear, and class members are easily identifiable through State Farm's own records.  *See* ECF 102 at 30.  Indeed, that is the purpose of the Combined *Pitkin* Dataset, which State Farm's confirmed was State Farm's "*best efforts* to gather putative class member information."  ECF 84.  Plaintiffs dutifully winnowed that dataset from more than 70,000 to approximately 41,000 to exclude non-injured class members and to adhere with the class definition.  In attempting to muddy superiority, State Farm essentially argues that the Combined *Pitkin* Dataset provides absolutely no basis for class membership and is not evidence of anything.  ECF 187 at 14.  That conflicts both with State Farm's prior positions that the dataset is reliable and the law of the case that Plaintiffs' expert properly relied on the Combined *Pitkin* Dataset to establish identification of class members.  *See* ECF 183 at 32-36 (addressing and allowing reliance on the Combined *Pitkin* Dataset by Plaintiffs' expert, including for class identification).

State Farm's further argument can be understood as alleging that Plaintiffs did not winnow the class *enough*, and the *possibility* of any single uninjured class member is sufficient to defeat the class.  ECF 187 at 14-16.  Not so.  The Ninth Circuit has squarely rejected the "argument that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members….This position is inconsistent with Rule 23(b)(3)."  *Olean*, 31 F.4th at 669.  Nothing State Farm cites outweighs the immense benefit to proceeding as a class action here.

*Briseno* is instructive.  844 F.3d at 1123.  The class members in *Briseno* purchased the

defendant's cooking oil during the class period. *Id.* In that case, there was *no* meaningful method to identify class members because consumers usually do not save grocery receipts or remember individual low-cost purchases. *Id.* at 1125. Individualized notice or ascertainability was therefore impossible, and putative class members could file a claim with nothing more than a "self-serving affidavit." *Id.* at 1129-32. But even in that situation, the court held that certification was still appropriate because proceeding as class action was superior to individual litigation. *Id.* The Ninth Circuit has since reiterated that there is no standalone administrability requirement because of the concern that such a requirement "would improperly bar certification in cases like *Briseno*, where administrability is difficult to demonstrate but for which the class action remains the only realistic way to litigate the case." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 633 (9th Cir. 2020).

Here, the class *is* easily ascertained and *has been ascertained based on State Farm's own records.* The minor issues of ascertainability that are State Farm's own making do not overcome the fact that proceding with this case as a class action is far superior to individual litigation. *Briseno*, 844 F.3d at 1132. To the extent that there may be damages attributable to uninjured or improper class members included in the aggregate damages (which Plaintiffs do not concede), "the no independent ascertainability requirement, adopted by the Ninth Circuit in *Briseno*—applies to *all* class actions, not just those with concrete aggregate damages unaffected by claims administration." *Brown,* 562 F. Supp. 3d at 604.

The remainder of the factors continue to weigh heavily in favor of the class. ECF 102 at 29-30 (finding superiority). This case presents no unusual difficulties in the management of the trial or notification of Class members. There are no similar cases proceeding to trial. There is no indication that any member of the Class would attempt to prosecute these claims individually. Given the prohibitive costs required to prosecute a case against a well-funded defendant like State Farm compared to the relatively small damages per class member, very few Class members could bring these claims on an individual basis, nor would it be economically prudent for them to do so. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190 (9th Cir. 2001). Finding damages for the class would benefit thousands of State Farm policyholders in one fell swoop. *Jimenez v. Allstate Ins. Co.*, 2019 WL 13088814 at *25 (C.D. Cal. May 13, 2019) ("that there may be individual Class members

who were not harmed by [defendant]'s alleged policies does not present a per se issue as to establishing classwide liability or damages").

### 2. Predominance

Under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The damages sought here are the result of a common classwide injury—the unlawful depreciation of sales tax. *See Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 304 (N.D. Cal. 2016).

State Farm rehashes arguments made at summary judgment regarding standing and injury-in-fact. ECF 187 at 16-18 (relying on *Healy v. Millman, Inc.*, 164 F.4th 701 (9th Cir. 2026) and *TransUnion v. Ramirez*, 594 U.S. 413 (2021)). The conclusion remains the same: Plaintiffs have presented substantial evidence "sufficient to establish standing"—at trial, plainiffs will address "State Farm's challenges to Regan's methodology or the affirmative defenses." ECF 183 at 17-21 (applying *Healy* and *TransUnion*). Indeed, State Farm itself acknowledges that the evidentiary record only "suggests" that some number of potential class members were uninjured. ECF 187 at 16; *see Van*, 61 F.4th at 1068 (defendant may not "support its invocation of individualized issues with mere speculation").

State Farm can argue to the jury that it disagrees with how Plaintiffs' experts identified class members. ECF 183 at 27-53 (denying the parties' motions to exclude, allowing Plaintiffs' experts to testify "subject to cross-examination and presentation of contrary expert testimony"). But "under this Circuit's binding precedent, no matter how…imperfect the process of identifying Class Members is, it does not present a predominance issue." *Brown*, 562 F. Supp. 3d at 602.

Injury and causation here are simple and classwide. As a matter of practice in California, State Farm violates the law by applying sales tax depreciation on ACV payments, thereby breaching Plaintiffs' insurance contracts. State Farm's conduct is directly connected to the class' injury and is uniform—"it *always* reduces their ACV benefits from what they might otherwise be, *regardless* of whether those ACV benefits are later, varyingly increased or decreased by other sublimits or special limits." ECF 102 at 25. If the jury agrees that "many, if not all, of the 41,153 insureds [Mr.

Regan] has identified as the class appear to have suffered underpayments resulting from State Farm's depreciation methodology", classwide injury, causation, and damages will be established. ECF 183 at 21; *see also Williams v. PillPack LLC*, 343 F.R.D. 201, 208 (W.D. Wash. 2022) (quoting 2 Newberg § 4:50) ("Common issues will predominate if 'individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim'"). Because "impact on a class-wide basis—is sufficient to show an injury-in-fact traceable to the defendants and redressable by a favorable ruling, the [plaintiffs] have adequately demonstrated Article III standing." *Olean*, 31 F.4th at 682 (citing *TransUnion*, 141 S.Ct. at 2208 n.4.).

The common question—if "class members were paid benefits in an amount less than the applicable policy limits"—continues to predominate over State Farm's speculative individual issues. ECF 183 at 21.

### C.    Class Action Procedures are not Prejudicial

#### 1.  Claims Administration is a Routine Class Action Device

Plaintiffs' claims administration process, as indicated in their trial plan, and as explained to State Farm, does not deviate from the claims administration procedures that have long been considered proper in the Ninth Circuit and take place in nearly every class action that has ever settled or been successful at trial. *See Briseno*, 844 F.3d at 1129-1131 (explaining the "claims administration stage," including tools such as claim administrators, auditing processes, sampling for fraud detection, notice by publication, follow-up notices, cy pres awards, etc., is sufficient to protect a defendant's right to "validate claims"); *Brown*, 562 F. Supp. 3d at 604 (where proposed claims administration procedure allowed defendant "to challenge the class membership of claimants during class administration," decertification denied) (internal citation omitted); *Bernstein v. Virgin Am., Inc.,* 2018 WL 3344316, at *7 (N.D. Cal. July 9, 2018), *aff'd in part, rev'd in part and remanded*, 990 F.3d 1157 (9th Cir. 2021) ("Individual issues can be raised in claims administration"); *Pampena v. Musk*, 2026 WL 1948057, at *18 (N.D. Cal. July 6, 2026) (approving post-verdict claims administration plan); *Frasco*, 2025 WL 2680068 at *9 (denying post-trial motion to decertify where defendant would have the opportunity to individually challenge the claims of absent class members).

The "district court has discretion to shape the proceedings" to accommodate individual issues "such as the use of individual claim forms or the appointment of a special master, which plainly would allow Defendants to raise any defenses they may have to individual claims." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1156 (9th Cir. 2016). "***The fact that these challenges would arise during the claims process, as opposed to at trial, does not run afoul of…due process***." *Brown*, 562 F. Supp. 3d at 604 (citations omitted) (emphasis added).

Here, Plaintiffs and the class are seeking classwide recovery based on a reliable methodology using the data provided by State Farm. ECF 183 at 37. Once a verdict has been reached, Plaintiffs propose a post-trial claims process where State Farm's records will be used to determine the proper reimbursement to individuals within the class. *See Makaeff v. Trump Univ., LLC,* 2014 WL 688164, at *16 (S.D. Cal. Feb. 21, 2014) (approving substantially similar plan); *Brice v. Haynes Invs., LLC.*, 2021 WL 1916466, at *4 (N.D. Cal. Apr. 23, 2021) ("individual entitlement to recovery [can be] proved up post-trial (if plaintiffs are successful) in the claims administration process"); *In re Melridge, Inc. Sec. Litig.,* 837 F. Supp. 1076, 1080 (D. Or. 1993) ("the actual damages suffered by each plaintiff will be established during the claims process. The entry of judgment for a sum certain is supported by the verdict of the jury").

State Farm's argument against a claims administration procedure relies heavily on *In re Asacol Antitrust Litig.*, a First Circuit antitrust case in which plaintiffs there a) did not offer any proposal or evidence of a damages formula; b) had no means for the claims administrator to decide who suffered no injury; c) did not establish a process for defendants to have a meaningful opportunity to contest individual claims; d) attempted to rely on affidavits to identify who was and was not injured; and, e) given that they were claiming that ninety percent of class members were injured, had no representative evidence that could prove that any given individual class member was injured. 907 F.3d 42, 52-55 (1st Cir. 2018). This set of facts is about as far from this case as possible. Here, a) Plaintiffs' damages formula is a mechanical and uniform mathematical application; b) a claims administrator would verify the damages amount based on State Farm's own records; c) State Farm would be able to contest individual claims based on their own records if warranted; d) State Farm's records also contain the exact amount of ACV payments made and the

depreciation applied; and e) the representative evidence here is the remarkably straightforward analysis that State Farm unlawfully depreciated an ACV payment to Plaintiffs.

For all these reasons, this case remains a properly certified class action and does not conflict with the holdings in *Asacol* or State Farm's other cited cases. *Asacol,* 907 F.3d at 56 (predominance not met where challenges to absent class members were not "reasonably plausible"); *Dukes*, 564 U.S. at 367 (replacing known individualized issue procedure in employment case by multiplying the percentage of valid claims from a sample set of plaintiffs across the class improper); *Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459, 469-470 (9th Cir. 2023) (Damages required "[p]roof by the testimony of [individual] vendors" because "the documentary evidence maintained by the vendors...[is] scant at best."). In this case, the procedural tools confirm the appropriateness and efficiency of the class mechanism since any post-trial resolution of specific claims will largely be a matter of analyzing State Farm's records, not individual class member evidence. *See Jones v. United Behav. Health*, 2025 WL 4772058, at *7 (N.D. Cal. Apr. 26, 2025) (Records that defendant was "legally and internally required" to keep "are sufficient for the limited purpose of confirming that a class member experienced the harm caused by the alleged common issue").

Indeed, State Farm's own arguments confirm that its affirmative defenses and other issues can be resolved by review of common class records. *See, e.g.* ECF 187 at 19 (citing summary judgment declarations that, based on a common and rote method, "56% of proposed class claims include a date of loss implicating the defense"). "In a similar vein, Allstate contends the affirmative defense of an established business relationship will also require individualized inquiries…But Allstate's own argument explains how the reach of that affirmative defense can be determined by simply comparing defendants' business records to identify current and former customers among the alleged recipients of the offending fax…In other words, ***while the inquiry is about the statuses of individual recipients, it remains susceptible to a common method of proof***." *Etter v. Allstate Ins. Co.,* 323 F.R.D. 308, 314 (N.D. Cal. 2017) (emphasis added).

Consistent with the Court's Order, Plaintiffs will try this case as a class action by presenting the jury with evidence of classwide injury and damages. ECF 183 at 27-48 (denying State Farm's motions to exclude Plaintiffs' experts on class identification and damages). To the extent that

individualized damages calculations remain—such as a class member subsequently reaching their claim limit and thus falling out of the class definition—they should be dealt with in a claims administration process.   *Briseno*, 844 F.3d at 1131 (Defendant will have "opportunities to individually challenge the claims of absent class members if and when they file claims for damages").

### 2.   Aggregate Damages are Proper Here

A jury determination of aggregate damages is proper here given that the damages sought are the result of the class-wide injury and based on a reliable methodology.  *Brice v. Haynes Invs., LLC.*, 2021 WL 1916466 at *4 ("individual entitlement to recovery [can be] proved up post-trial (if plaintiffs are successful) in the claims administration process"); *In re Melridge, Inc. Sec. Litig.,* 837 F. Supp. at 1080 ("the actual damages suffered by each plaintiff will be established during the claims process.  The entry of judgment for a sum certain is supported by the verdict of the jury").

Consistent with *Comcast*, Plaintiffs have proffered a methodology that shows "that damages are susceptible of measurement across the entire class."  *Comcast*, 569 U.S. at 35; s*ee also Olean*, 31 F.4th at 682 (Plaintiffs' "proposal for calculating damages is a straightforward process of applying the class-wide overcharge to the [defendant's] net sales records….That proposal does not give rise to a concern about individualized mini-trials to determine each class member's damage award").  Mr. Regan's methodology for calculating damages is the same across all class members, and his application of that methodology to the Combined *Pitkin* Dataset calculates how much sales tax was illegally depreciated and withheld, which is the damages attributable to the injury in this case.  *Comcast*, 569 U.S. at 35 ("Calculations need not be exact…but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case.) (citations and quotations omitted); ECF 193 at 36-37.

To be clear, Mr. Regan calculated damages for the class members he identified based on State Farm's own representation that the Combined *Pitkin* Dataset constituted its "best efforts to gather putative class member information."  ECF 84.  The fact that he acknowledged that the unknowable future may bring changes, including members reaching their policy limits, is not a concession.  ECF 187 at 23 (arguing that Regan "concedes that any potential class member may not,

in fact, be in the class" and therefore "Plaintiffs effectively concede that this case cannot be tried as a class action"). To the extent that State Farm disclaims the accuracy of its own records as to a few individuals, courts have found that "[e]ven a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1366 (9th Cir. 1986). Moreover, State Farm's repeated arguments about the difference between the XactContents estimates it provided in the Combined *Pitkin* Dataset and a claim payment or settlement (ECF 187 at 22-23) has already been decided to be a matter for the jury. ECF 183 at 34 ("Those concerns may be persuasive to a factfinder. But they do not show that Regan's methodology is unsound. Nor do they show that Regan's opinions rest on nothing more than speculation.").

If Plaintiffs "can meet their burden of proof to show that the entire class has suffered damage," it follows that damages will be class-wide. ECF 183 at 16. The damages sought are the result of the class-wide injury that the suit alleges. *See Nitsch v. Dreamworks Animation*, 315 F.R.D. at 304. Even if State Farm were to prevail on showing that a small number of individuals should have their damage amount reduced or possibly precluded from the class, "that there may be individual Class members who were not harmed by [defendant]'s alleged policies does not present a per se issue as to establishing classwide liability or damages." *Jimenez v. Allstate*, 2019 WL 13088814 at *25. Because the jury will be shown Plaintiffs' damages methodology and ultimately determine damages based on that methodology, they will be equipped with an adequate basis on which to make an aggregate damages finding. "In calculating damages…California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation…[T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Pulaski & Middleman,* 802 F.3d at 989 (quotations omitted) (citing *Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932, 938–39 (9th Cir.1999)).

Contrary to State Farm's assertions, aggregate damages do not allow the class to improperly benefit from an excessive jury award or rob State Farm of due process. As explained above,

aggregate damages here are properly presented based on evidence and a sound methodology, and any issues as to individual class members' damages can be addressed during the claims process. "*In all cases*, the defendant has a right not to pay in excess of its liability and to present individual defenses…The fact that these challenges would arise during the claims process, as opposed to at trial, does not run afoul of…due process." *Brown*, 562 F. Supp. 3d at 604 (citations omitted) (emphasis in original). The jury will be presented with sufficient evidence—State Farm's own records—on which to reach a damage amount, and need not be forced to analyze 41,153 claims for each class member's individualized damages. This is clearly consistent with class action procedures. *See Bernstein v. Virgin Am., Inc.,* 2018 WL 3344316, at *7 (rejecting argument that classwide damages could not be calculated where the class could be ascertained through defendant's business records and individual issues could be raised in claims administration).

**3. There Are No Violations of Due Process, *Erie*, the Seventh Amendment, or the Rules Enabling Act**

Throughout its brief, State Farm raises the specter of due process, the *Erie* doctrine, the Seventh Amendment, and the Rules Enabling Act. *See* ECF 187 at 1, 2, 10, 11, 12, 15, 18, 21-23. None of these doctrines prevent this case from proceeding as a class action. *See McPhail v. First Command Fin. Plan., Inc.*, 247 F.R.D. 598, 613 (S.D. Cal. 2007) (finding "novel arguments that class certification would violate the Rules Enabling Act, the Seventh Amendment right to trial by jury, and the due process clause" including challenges to absent class members and a classwide jury verdict "***meritless***") (emphasis added).

State Farm's position that it is entitled to 41,153 individual trials on class membership and damages is wrong. *See Krueger v. Wyeth, Inc*., 310 F.R.D. 468, 476 (S.D. Cal. 2015) (finding "inability to absolutely confirm" each individual's class membership is not a bar to class certification and does not create due process issues). Rather, as multiple courts have recognized, due process is satisfied so long as State Farm can raise legitimate questions about who is a member of the Class through the claims process. *See Briseno*, 844 F.3d at 1132 ("[I]t is not clear why requiring an administratively feasible way to identify all class members at the certification stage is necessary to protect [defendant's] due process rights" when defendant can challenge individual

claims during the claims process); *Victorino v. FCA US LLC*, 2020 WL 2306609, at \*3 (S.D. Cal. May 8, 2020) ("[D]istrict courts are in agreement that the determination of class membership and protecting the defendant's due process rights can be done during the claims administration process."); *Brown*, 562 F. Supp. 3d at 604 ("[S]o long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected."). As explained above, this case is a proper class action, and does not violate State Farm's rights by proceeding as one.

### D.    The UCL Class Remains Proper

Plaintiffs seek relief to enjoin State Farm from continuing the practice that harmed them, and remain realistically threatened with future harm given State Farm's policy and practice of depreciating sales tax in ACV calculation.  ECF 183 at 26; *see also Walker v. Life Ins. Co. of the Sw.,* 953 F.3d at 630 ("'relief under the UCL is available without individualized proof of deception, reliance and injury…requiring all unnamed members of a class action to individually establish standing would effectively eliminate the class action lawsuit as a vehicle for the vindication' of rights under the UCL" (*citing In re Tobacco II Cases*, 46 Cal.4th 298 (2009)). This is consistent with an injunctive class under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  These requirements are "unquestionably satisfied" when as Plaintiffs do here as to the practices that harmed them, "members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole."  *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).

Contrary to State Farm's assertion, Plaintiffs' requested injunction to prevent future harms does not entitle them to recover both damages and restitution, nor do they require payment of claimed contract benefits.  ECF 183 at 26.  The requested injunctive relief only seeks to enjoin State Farm from continuing to depreciate sales tax in ACV payments, which benefits all State Farm policyholders, including the class.  *Cf Phan v. Transamerica Premier Life Ins. Co.,* 2026 WL 1763859 (N.D. Cal. June 18, 2026) (declining to certify a UCL class where "relief could also not be

used to enjoin any future unlawful conduct"); *In re SanDisk SSDs Litig.,* No. 23-CV-04152-RFL, 2026 WL 1243509, at *17 (N.D. Cal. May 6, 2026) (denying class where "individuals will not receive any benefit from the injunctive relief Plaintiffs request, they will nonetheless be bound without notice to the judgment in this case").

State Farm's request to decertify the UCL class and thereby void Plaintiffs' requested injunctive relief, should be denied.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that Defendant's motion to decertify the class be denied in its entirety.

Respectfully submitted,

Dated: August 5, 2026                    **COTCHETT, PITRE & McCARTHY, LLP**

                                         */s/ Gia Jung*
                                         FRANK M. PITRE
                                         TYSON C. REDENBARGER
                                         ANDREW W. BRITTON
                                         GIA JUNG

                                         **WEAVER CURRIE, PC**
                                         Jack W. Weaver
                                         3554 Round Barn Blvd, Suite 300
                                         Santa Rosa, CA 95403
                                         Tel: (707) 433-4842

                                         **MURRAY LAW FIRM**
                                         Stephen B. Murray, Jr.
                                         Thomas M. Beh
                                         701 Poydras Street, Suite 4250
                                         New Orleans, LA 70139

                                         *Attorneys for Plaintiffs Melissa Pitkin and Dan Grout and the Class*